1

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Shon Morgan (Bar No. 187736)

2

(shonmorgan@quinnemanuel.com)
865 South Figueroa Street, 10th Floor

3

Los Angeles, California 90017
Telephone: (213) 443-3000

4

Facsimile: (213) 443-3100

5

Victoria B. Parker (Bar No. 290862)
(vickiparker@quinnemanuel.com)

6

50 California Street, 22nd Floor
San Francisco, California 94111

7

Telephone: (415) 875-6600
Facsimile: (415) 875-6700

8

9

John F. O'Sullivan (Fla. Bar No. 143154)
(johnosullivan@quinnemanuel.com)
Jason D. Sternberg (Fla. Bar No. 72887)

10

(jasonsternberg@quinnemanuel.com)
Joshua T. Fordin (Fla. Bar No. 125219)

11

(joshuafordin@quinnemanuel.com)
2601 South Bayshore Drive, 15th Floor

12

Miami, Florida 33133
Telephone: (305) 402-4880

13

14

*Attorneys for Defendants Fenix International Limited,
Fenix Internet LLC, and Leonid Radvinsky*

15

UNITED STATES DISTRICT COURT

16

NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

17

18

DAWN DANGAARD, a/k/a ALANA
EVANS; KELLY GILBERT, a/k/a KELLY
PIERCE; JENNIFER ALLBAUGH, a/k/a

19

RUBY, and
on behalf of themselves

20

and all others similarly situated,

21

Plaintiffs,

22

vs.

23

24

INSTAGRAM, LLC; FACEBOOK
OPERATIONS, LLC; META PLATFORMS,

25

INC.; FENIX INTERNATIONAL INC.;
FENIX INTERNET LLC; LEONID

26

RADVINSKY, and JOHN DOES 1-10,

27

Defendants.

28

CASE NO. 3:22-cv-01101-WHA

**FENIX INTERNATIONAL LIMITED,
FENIX INTERNET LLC, AND LEONID
RADVINSKY'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED
COMPLAINT**

Date:        September 8, 2022
Time:        11:00 a.m.
Location:   Courtroom 12, 9th Floor
Judge:       Hon. William Alsup

First Amended Class Action Complaint Filed:
February 23, 2022

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 8, 2022 at 11:00 a.m., or as soon thereafter as this matter can be heard before the Honorable Judge William Alsup in Courtroom 12, Ninth Floor, United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Fenix International Limited ("Fenix International"), Fenix Internet LLC ("Fenix Internet"), and Leonid Radvinsky ("Mr. Radvinsky," and, collectively with Fenix International and Fenix Internet, the "Fenix Defendants") will and hereby do move pursuant to Federal Rules of Civil Procedure 12(b)(2) and (6) to dismiss Plaintiffs' claims against the Fenix Defendants in Plaintiffs' First Amended Complaint.   The Fenix Defendants' Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the proposed order submitted herewith, all exhibits and other papers on file in this action, such other evidence and argument as may be presented at or before the hearing on this motion, and all matters of which the Court may take judicial notice.

1  DATED:  June 30, 2022

2

QUINN EMANUEL URQUHART & SULLIVAN,
LLP

3  By:      */s/ Jason D. Sternberg*
        Shon Morgan (Bar No. 187736)
4       (shonmorgan@quinnemanuel.com)
        865 South Figueroa Street, 10th Floor
5       Los Angeles, California 90017
        Telephone: (213) 443-3000
6       Facsimile: (213) 443-3100

7       Victoria B. Parker (Bar No. 290862)
        (vickiparker@quinnemanuel.com)
8       50 California Street, 22nd Floor
        San Francisco, California 94111
9       Telephone: (415) 875-6600
        Facsimile: (415) 875-6700

10      John F. O'Sullivan (Fla. Bar No. 143154)
        (johnosullivan@quinnemanuel.com)
11      Jason D. Sternberg (Fla. Bar No. 72887)
        (jasonsternberg@quinnemanuel.com)
12      Joshua T. Fordin (Fla. Bar No. 125219)
        (joshuafordin@quinnemanuel.com)
13      2601 South Bayshore Drive, 15th Floor
        Miami, Florida 33133
14      Telephone: (305) 402-4880

15      *Attorneys for Defendants Fenix International*
        *Limited, Fenix Internet LLC, and Leonid*
16      *Radvinsky*

17

18

19

20

21

22

23

24

25

26

27

28

1

## **TABLE OF CONTENTS**

**Page**

2

3    I.      INTRODUCTION.................................................................................................1

4    II.     STATEMENT OF ISSUES TO BE DECIDED.................................................3

5    III.    FACTUAL BACKGROUND ...............................................................................4

6    IV.     ARGUMENT ........................................................................................................6

7            A.    Plaintiffs Cannot Establish Personal Jurisdiction Over The Fenix
                   Defendants.................................................................................................6

8

9                 1.    The Court Lacks Specific Jurisdiction Over The Fenix Defendants..............7

10                2.    Plaintiffs' Conspiracy Theory Of Personal Jurisdiction Fails....................12

11                3.    Fenix Internet Is Not Subject To Specific Jurisdiction ...............................15

12                4.    Plaintiffs Cannot Establish Personal Jurisdiction Through Veil-
                        Piercing..........................................................................................................15

13           B.    Plaintiffs Fail To State Any Viable Claims...............................................16

14                1.    Plaintiffs Fail To Properly Plead Any Claims.............................................16

15                2.    Plaintiffs Fail To Plead Intentional Interference Claims............................20

16                3.    Plaintiffs Fail To State A UCL Unlawful Prong Claim ...............................22

17   V.      CONCLUSION ...................................................................................................22

18

19

20

21

22

23

24

25

26

27

28

FENIX DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

# <u>TABLE OF AUTHORITIES</u>

**Page**

**Cases**

*19 Tao Vega LLC v. Holo Ltd.*,
   2019 WL 9607733 (N.D. Cal. Dec. 17, 2019) .................................................. 8

*Allen v. Shutterfly, Inc.*,
   2020 WL 5517170 (N.D. Cal. Sept. 14, 2020) ................................................. 8

*AM Tr. v. UBS AG*,
   78 F. Supp. 3d 977 (N.D. Cal. 2015) ............................................................ 12

*AMA Multimedia, LLC v. Wanat*,
   970 F.3d 1201 (9th Cir. 2020) ........................................................ 7, 8, 9, 11

*Artists Rights Enf't Corp. v. Feemster*,
   2017 WL 7079783 (C.D. Cal. Apr. 10, 2017) ................................................ 21

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
   874 F.3d 1064 (9th Cir. 2017) ..................................................................... 12

*Block v. eBay, Inc.*,
   747 F.3d 1135 (9th Cir. 2014) ..................................................................... 16

*BMA LLC v. HDR Glob. Trading Ltd.*,
   2021 WL 949371 (N.D. Cal. Mar. 12, 2021) ................................................ 20

*In re Boon Glob. Ltd.*,
   923 F.3d 643 (9th Cir. 2019) ................................................................... 8, 16

*BriteSmile, Inc. v. Discus Dental, Inc.*,
   2005 WL 1048701 (N.D. Cal. May 5, 2005) ................................................. 16

*Broidy Cap. Mgmt., LLC v. Qatar*,
   2018 WL 9943552 (C.D. Cal. Aug. 16, 2018) .............................................. 14

*Brown v. 140 NM LLC*,
   2019 WL 118425 (N.D. Cal. Jan. 7, 2019) ................................................... 13

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
   637 F.3d 1047 (9th Cir. 2011) ..................................................................... 18

*Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Rsch. Inst.*,
   2020 WL 7392909 (N.D. Cal. July 23, 2020) .......................................... 19, 20

*Chirila v. Conforte*,
   47 F. App'x 838 (9th Cir. 2002) ............................................................. 12, 14

*Clancy v. Allstate Ins. Co.*,
   2021 WL 3861421 (N.D. Cal. Aug. 30, 2021) ................................................ 9

1

*United States v. Corinthian Colleges,*
  655 F.3d 984 (9th Cir. 2011) ............................................................................................ 19

2

3
*Daimler AG v. Bauman,*
  571 U.S. 117 (2014) ........................................................................................................... 7

4
*Devore v. H&R Block Tax Servs. LLC,*
  2018 WL 1942384 (C.D. Cal. Mar. 29, 2018) ................................................................. 22

5

6
*Doe v. WebGroup Czech Republic, AS,*
  2022 WL 982248 (C.D. Cal. Jan. 13, 2022), *amended on reconsideration in part,* 2022 WL
  982245 (C.D. Cal. Feb. 25, 2022) ...................................................................................... 9

7

8
*Du Pont v. Prudential Ins. Co.,*
  2019 WL 4417494 (C.D. Cal. May 29, 2019) .................................................................. 14

9
*In re Dynamic Random Access Memory (Dram),*
  2005 WL 2988715 (N.D. Cal. Nov. 7, 2005) ................................................................... 14

10

11
*EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.,*
  711 F. Supp. 2d 1074 (C.D. Cal. 2010) ............................................................................ 13

12
*Fluidigm Corp. v. IONpath, Inc.,*
  2020 WL 408988 (N.D. Cal. Jan. 24, 2020) ..................................................................... 21

13

14
*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.,*
  141 S. Ct. 1017 (2021) ...................................................................................................... 10

15
*Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.,*
  905 F.3d 597 (9th Cir. 2018) ............................................................................................ 11

16

17
*Guidiville Band of Pomo Indians v. NGV Gaming, Ltd.,*
  531 F.3d 767 (9th Cir. 2008) ............................................................................................ 21

18
*Hadley v. Kellogg Sales Co.,*
  243 F.Supp. 3d 1074 (N.D. Cal. 2017) ............................................................................ 22

19

20
*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.,*
  328 F.3d 1122 (9th Cir. 2003) ............................................................................................ 7

21
*Kearns v. Ford Motor Co.,*
  567 F.3d 1120 (9th Cir. 2009) .................................................................................... 16, 17

22

23
*Koi Design, LLC v. Mark's Work Wearhouse,*
  2010 WL 11508546 (C.D. Cal. Mar. 26, 2010) ............................................................... 14

24
*Krypt, Inc. v. Ropaar LLC,*
  2020 WL 32334 (N.D. Cal. Jan. 2, 2020) ............................................................. 13, 14, 15

25

26
*LegalForce RAPC Worldwide P.C. v. Swyers,*
  2018 WL 3439371 (N.D. Cal. July 17, 2018) .................................................................... 8

27
*LNS Enterprises LLC v. Cont'l Motors, Inc.,*
  22 F.4th 852 (9th Cir. 2022) ............................................................................................. 10

28

*Magic Leap, Inc. v. Chi Xu*,
    2020 WL 3268659 (N.D. Cal. June 17, 2020) .................................................... 16

*Mansour v. Superior Ct.*,
    38 Cal. App. 4th 1750 (1995) ............................................................................ 1, 12

*MGA Ent., Inc. v. Dynacraft BSC, Inc.*,
    2018 WL 2448123 (C.D. Cal. May 30, 2018) .................................................... 19

*Moore v. Kayport Package Exp., Inc.*,
    885 F.2d 531 (9th Cir. 1989) ............................................................................. 19

*Mostowfi v. I2 Telecom Int'l, Inc.*,
    2004 WL 7338797 (N.D. Cal. May 27, 2004) .................................................... 18

*Neubronner v. Milken*,
    6 F.3d 666 (9th Cir. 1993) ................................................................................. 19

*Petrash v. Biomet Orthopedics, LLC*,
    2019 WL 8013939 (N.D. Cal. June 6, 2019) ....................................................... 6

*Picot v. Weston*,
    780 F.3d 1206 (9th Cir. 2015) ...................................................................... 10, 12

*Piedmont Label Co. v. Sun Garden Packing Co.*,
    598 F.2d 491 (9th Cir. 1979) ............................................................................. 13

*Precision Transducer Sys. v. STFO Trading LLC*,
    2009 WL 10700319 (C.D. Cal. Oct. 15, 2009) ................................................... 14

*QSG, Inc. v. Schlittler*,
    2012 WL 1493944 (D. Utah Apr. 27, 2012) ....................................................... 15

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015) ........................................................................... 15

*Reynolds v. Binance Holdings Ltd.*,
    481 F. Supp. 3d 997 (N.D. Cal. 2020) ............................................................... 16

*Sandoval v. Ali*,
    34 F. Supp. 3d 1031 (N.D. Cal. 2014) ............................................................... 16

*Shroyer v. New Cingular Wireless Servs., Inc.*,
    622 F.3d 1035 (9th Cir. 2010) ........................................................................... 22

*Soo Park v. Thompson*,
    851 F.3d 910 (9th Cir. 2017) ............................................................................. 20

*Stardock Sys, Inc. v. Reiche*,
    2019 WL 8333514 (N.D. Cal. May 14, 2019) .............................................. 21, 22

*Sunnyside Dev. Co., LLC v. Opsys Ltd.*,
    2005 WL 1876106 (N.D. Cal. Aug. 8, 2005) ..................................................... 15

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007)..................................................... 6, 8, 11, 14, 19

*Sybersound Recs., Inc. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008)................................................................. 22

*U.S. Colo, LLC v. CoreSite One Wilshire, L.L.C.*,
    2014 WL 12689269 (C.D. Cal. July 31, 2014) ...................................... 21

*U.S. Vestor, LLC v. Biodata Info. Tech. AG*,
    290 F. Supp. 2d 1057 (N.D. Cal. 2003) ................................................ 12

*UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*,
    2015 WL 12752879 (C.D. Cal. July 2, 2015) .................................... 13, 14

*United InvestexUSA 7 Inc. v. Miller*,
    2021 WL 4816826 (C.D. Cal. Aug. 25, 2021) ...................................... 18

*United Nat. Maint., Inc. v. San Diego Convention Ctr., Inc.*,
    766 F.3d 1002 (9th Cir. 2014)............................................................... 21

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003)..................................................... 16, 17, 18

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*,
    42 Cal. App. 4th 507 (1996)................................................................. 22

*Yeager v. Airbus Grp. SE*,
    2021 WL 750836 (C.D. Cal. Jan. 26, 2021) ........................................... 9

**Statutory Authorities**

Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ........................ 5, 22

**Rules and Regulations**

Fed. R. Civ. P. 9(b)............................................................... 2, 3, 16, 17, 19

Fed. R. Civ. P. 12(b)(2).................................................................... 1, 6

Fed. R. Civ. P. 12(b)(6).......................................................................... 1

## I.    INTRODUCTION

Plaintiffs' Complaint alleges that Fenix International Limited ("Fenix International"), Fenix Internet LLC ("Fenix Internet"), and Leonid Radvinsky ("Mr. Radvinsky," and, collectively with Fenix International and Fenix Internet, the "Fenix Defendants") engaged in a sensational, world-wide, "fraudulent" conspiracy with Facebook Operations, LLC, Meta Platforms, Inc., and Instagram, LLC (the "Meta Defendants") to brand thousands of adult entertainers associated with OnlyFans' competitors as terrorists and, consequently. blacklist them from social media and negatively impact their competitors' performance.  These "allegations" are not based on any cited evidence or well-pled allegations, but rather are supported by ***thirty-eight*** implausible assertions alleged on information and belief.  While this pleading fails to meet even the barest of pleading standards, let alone the exacting standard that applies here given the allegations of fraud, the Court does not have to consider those failures because the Complaint should be dismissed as to the Fenix Defendants for lack of personal jurisdiction.

Plaintiffs' claims against the Fenix Defendants, in particular, request that this California-based court impose liability on the Fenix Defendants domiciled in Florida, Delaware, and the United Kingdom for actions they allegedly—on information and belief—took in Hong Kong.  None of the Fenix Defendants reside in California, and none are alleged to have their principal place of business here.  The only connections any of the claims against the Fenix Defendants have to California are that (i) one of the three Plaintiffs, who is among over two million OnlyFans content creators around the world, is a California resident, and (ii) the Meta Defendants—who along with 10 unknown "Doe" entities are the Fenix Defendants' alleged "co-conspirators"—are headquartered in California.  But it is black-letter law that only a defendant's forum contacts—not a plaintiff's residence—can anchor jurisdiction.  And courts in this District, and the California Court of Appeal, have repeatedly held that conspiracy allegations cannot be used to impute personal jurisdiction over one alleged conspirator onto other purported co-conspirators (even where, unlike here, the elements of a conspiracy are adequately alleged).  *See Mansour v. Superior Ct.*, 38 Cal.App.4th 1750, 1760 (1995).  For these reasons alone, Plaintiffs' jurisdictional theories as to the Fenix Defendants are irreparably defective, and the claims against them should be dismissed.

1    In addition to this fatal defect, there are numerous other deficiencies in Plaintiffs'

2    jurisdictional allegations.  Plaintiffs do not allege that the Fenix Defendants purposefully directed

3    any of their alleged actions toward California, nor do they allege that their claims stem from any in-

4    state activities of the Fenix Defendants.  Instead, Plaintiffs appear to allege that the Fenix Defendants

5    are subject to jurisdiction in this Court because they operated a world-wide website that involved

6    the marketing, promotion, sale, and distribution of online entertainment that consumers in

7    California, among many other places domestically and internationally, could access.  But these

8    allegations fail for at least four reasons, all of which provide independent bases for dismissal under

9    well-established case law from within this jurisdiction.

10    *First*, Plaintiffs improperly lump the Fenix Defendants together and do not make

11    individualized jurisdictional allegations.  *Second*, Plaintiffs' jurisdictional allegations are boilerplate

12    and conclusory, and are almost verbatim the same language that courts in this District have held are

13    not entitled to any weight on a motion to dismiss.  *Third*, even if Plaintiffs' lumped and boilerplate

14    allegations were credited, the Ninth Circuit held as recently as 2020 that these same types of

15    allegations—in the context of an adult entertainment website—do not establish purposeful direction

16    where the relevant forum was not the "focal point" of the website, even where, unlike here, the

17    website directly marketed to the forum and derived a significant portion of its content from the

18    forum.  And *fourth*, regardless of whether the Fenix Defendants purposefully directed their actions

19    to California (they did not), Plaintiffs' claims are completely unrelated to the OnlyFans platform's

20    marketing and business efforts in California.  Plaintiffs' claims also fail as to Fenix Internet, in

21    particular, because Fenix Internet did not even exist when the alleged conspiracy began, and no

22    allegations explain when, whether, or how Fenix Internet ever joined this conspiracy.  Plaintiffs'

23    conclusory veil-piercing allegations fare no better: they do not come close to meeting the pleading

24    burden to pierce a corporate veil.

25    But even were this Court to find jurisdiction, Plaintiffs' claims against the Fenix Defendants

26    should *still* be dismissed for failure to state a claim.  Plaintiffs' complaint speaks of a "fraudulent"

27    and "corrupt" "conspiracy" based on "false[] represent[ations]."  Thus, the heightened standards of

28    Rule 9(b) govern the complaint.  But Plaintiffs come nowhere near alleging any of the who, what,

where, when, or how of this alleged conspiracy with the requisite particularity demanded by courts in this District—and in fact, the Ninth Circuit has affirmed dismissal of a complaint containing highly analogous and far more particular allegations for failure to meet Rule 9(b)'s heightened standards. Plaintiffs' allegations further fail Rule 9(b)'s test at a threshold level because all of the allegations as to the Fenix Defendants lump the defendants together, which violates Rule 9(b)'s particularity requirements.

Plaintiffs further fail to state a claim because virtually every substantive allegation against the Fenix Defendants is pleaded on information and belief. But information and belief allegations must be disregarded under Rule 9(b), and even under Rule 8, Plaintiffs have failed to allege sufficient facts to plausibly support the conspiracy such that their information and belief allegations could be credited under applicable case law.

Finally, Plaintiffs fail to state a claim against the Fenix Defendants because each of their three counts is defective. Plaintiffs' count for tortious interference with contract should be dismissed because Plaintiffs have not alleged that the purported conspiracy caused the breach of any contract, nor have they alleged disruption to anyone's ability to perform any contract. Plaintiffs' count for tortious interference with business relationship should be dismissed because Plaintiffs fail to allege the disruption of relations with any identifiable customers—they merely allege vague and speculative losses of potential customers, which is insufficient to state a claim under applicable case law. And lastly, Plaintiffs fail to state a claim under the unlawful prong of the UCL because they only allege common law violations, which are insufficient to satisfy the prong.

For these reasons, Plaintiffs' claims against the Fenix Defendants should be dismissed.

## II.     STATEMENT OF ISSUES TO BE DECIDED

1.     Whether Plaintiffs' claims against the Fenix Defendants should be dismissed for lack of personal jurisdiction.

2.     Whether Plaintiffs' claims against the Fenix Defendants should be dismissed for failure to state a claim.

III.     FACTUAL BACKGROUND

***The Fenix Defendants***.   Defendant Leonid Radvinsky is an entrepreneur and Florida resident who does not and never has resided in California.   Amended Complaint (Dkt. 4, the "Complaint" or "AC") ¶ 13.   Mr. Radvinsky indirectly owns Defendant Fenix International, which is a U.K. corporation that also has its principal place of business in the U.K.  *Id.* ¶¶ 11, 13.  Fenix International owns and operates OnlyFans, a leading global social media platform.  *Id.* ¶ 11, 39.  The third Fenix Defendant, Fenix Internet, was formed in March 2019 to process payments by OnlyFans's U.S. customers and to OnlyFans's content providers.  *Id.* ¶ 12; Declaration of Lee Taylor ("Taylor Decl.") ¶¶ 2, 7.  Fenix Internet is organized under Delaware's laws and is alleged to have its principal place of business in Florida.[1]  AC ¶ 12.  None of the Fenix Defendants are California residents, *id.* ¶¶ 11-13, and neither Fenix International nor Fenix Internet has bank accounts, offices, or employees in California or engages in marketing, sales, or commercial activity targeted specifically at residents of California or related to the alleged wrongdoing in the Complaint, Taylor Decl. ¶¶ 9-12.

***Plaintiffs***.   Plaintiffs Dawn Dangaard, Kelly Gilbert, and Jennifer Allbaugh are adult entertainment performers ("AE Performers") who post content on both OnlyFans and other adult entertainment focused platforms ("AE Platforms").  AC ¶¶ 2, 47-48, 51.  Only Ms. Dangaard resides in California, and Ms. Gilbert and Ms. Allbaugh reside in other states.  *Id.* ¶¶ 8-10.  Plaintiffs maintain social media accounts on platforms operated by the Meta Defendants, including Facebook and Instagram, *id.* ¶¶ 43, 48, 52, and use those accounts to advertise and "drive traffic to their accounts on the AE Platforms," *id.* ¶ 31.  Starting in 2018 or 2019, Plaintiffs allege that fewer of their social posts were received by their followers, that certain posts were deleted, and, in the case of Ms. Dangaard and Ms. Gilbert, that their Instagram accounts or sites were deleted.  *Id.* ¶¶ 44-46, 49-50, 52.  These takedowns were allegedly part of an industry-wide phenomenon that affected AE

---

[1]   Fenix Internet in fact has its principal place of business in Delaware and the Fenix Defendants dispute Plaintiffs' allegation that it is headquartered in Florida, Taylor Decl. ¶ 3, but the Court need not resolve this dispute to dismiss the Complaint because it is undisputed that Fenix Internet's principal place of business is *not* California.

Performers who advertised both OnlyFans content and content from other AE Platforms on social media platforms.  *Id.* ¶¶ 61, 65.  After contacting Instagram, both Ms. Dangaard and Ms. Gilbert were able to reinstate their Instagram account or open a new account.  *Id.* ¶¶ 45, 49.

***Plaintiffs' Allegations.***  Plaintiffs have brought a three-count complaint for tortious interference with contract and business relationships and violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* (the "UCL").  The Complaint attributes Plaintiffs' social media account difficulties to a "fraudulent" and "corrupt" conspiracy between the Fenix Defendants, the Meta Defendants, and 10 unknown "Doe" entities, the aim of which was purportedly to "blacklist" Plaintiffs, non-OnlyFans AE Platforms, and AE Performers who post content to non-OnlyFans AE Platforms by providing classification data to social media platforms that "falsely represent[]" them as "terrorists."  AC ¶¶ 1, 21-22, 61, 66, 68-72, 96, 115.  Plaintiffs' conspiracy allegations are based solely on "information and belief," a phrase that is repeated ***thirty-eight*** times in the Complaint.  *Id.* at 1, ¶¶ 12-13, 17-18, 25, 34-36, 40, 53, 55-57, 61-64, 67-71, 73, 76-77, 82, 85-87, 89.  The only concrete allegations concerning the Fenix Defendants' conduct are background facts such as Mr. Radvinsky's acquisition of Fenix International and subsequent profits.  *Id.* ¶¶ 33-34, 39, 41, 61.  The Complaint does not attempt to address the myriad reasons why OnlyFans may have achieved more success in the market as compared to competing AE Platforms— including, among other reasons, OnlyFans' first mover advantage in the fan social platform space, OnlyFans' memorable and effective business name, and OnlyFans' superior product and platform.

In asserting their claims, Plaintiffs' allegations lump the Fenix Defendants together and fail to differentiate between their respective alleged roles.  AC ¶¶ 71, 74, 85.  Notably, the Complaint does not contain any allegations of wrongdoing by Fenix Internet—nor could it, since Fenix Internet had not even been formed at the time the purported conspiracy occurred.  Taylor Decl. ¶ 2.  All Fenix Internet is alleged to have done is process customer payments (subsequent to the alleged conspiracy), AC ¶ 12, while indefinite allegations claim that either Fenix Internet or Fenix International performed unspecified acts to further the conspiracy.  *Id.* ¶¶ 71, 85.  Plaintiffs attempt to evade their failure to allege that Fenix Internet did anything wrong by including boilerplate allegations of conspiracy and veil-piercing without any supporting facts.  *Id.* ¶¶ 21-23.

1    Lastly, Plaintiffs allege that personal jurisdiction exists because the Fenix Defendants "have

2    sufficient minimum contacts with California" and "engaged in substantial and not isolated activity

3    within this district."  AC ¶ 15, 25.  Plaintiffs further allege in a conclusory manner that the Fenix

4    Defendants "carry on business in California," *id*. ¶ 15, and "intentionally avail themselves of the

5    markets within California" by marketing OnlyFans, *id*. ¶ 25.  Plaintiffs also allege that the Fenix

6    Defendants "caused injury to Plaintiffs and to Class Members in California arising out of activities

7    in California."  *Id*. ¶ 15.  But Plaintiffs' only allegations that the Fenix Defendants performed any

8    acts in furtherance of the purported conspiracy concern actions allegedly taken in various countries

9    in Asia—the Amended Complaint does not allege any acts the Fenix Defendants performed, whether

10   in California or elsewhere, that resulted in injury to the Plaintiffs.  *Id*. ¶¶ 77-85.  Instead, Plaintiffs

11   attempt to impute the ***Meta Defendants'*** supposed California-based activities at their "offices" to

12   the Fenix Defendants through conclusory conspiracy allegations.  *Id*. ¶ 25; see *id*. ¶¶ 21-22.

13   Plaintiffs further assert in conclusory fashion that each Fenix Defendant should be liable for the

14   purported actions of other Fenix Defendants due to the legal conclusion that they are alter egos of

15   one another, but those assertions are unsupported by any alleged facts.  *Id*. ¶ 23.

16   **IV.    ARGUMENT**

17        **A.    Plaintiffs Cannot Establish Personal Jurisdiction Over The Fenix Defendants**

18        The claims against the Fenix Defendants—all of whom are domiciled outside of

19   California—should be dismissed under Rule 12(b)(2) because the Fenix Defendants are not subject

20   to personal jurisdiction in this Court.  Plaintiffs bear the burden to "make out a prima facie showing

21   of personal jurisdiction to overcome a 12(b)(2) motion."  *Swartz v. KPMG LLP*, 476 F.3d 756, 766

22   (9th Cir. 2007).  They must plead the facts necessary to establish jurisdiction: "[m]ere 'bare bones'

23   assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual

24   allegations will not satisfy a plaintiff's pleading burden."  *Id*.; *see also Petrash v. Biomet*

25   *Orthopedics, LLC*, 2019 WL 8013939, at *3 (N.D. Cal. June 6, 2019) (rejecting "unpled … theory

26   of personal jurisdiction" because the Complaint fails to allege "any facts that would support such a

27   conclusion").  Further, Plaintiffs must establish "[p]ersonal jurisdiction over each defendant . . .

28

separately." *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1130 (9th Cir. 2003).

## 1. The Court Lacks Specific Jurisdiction Over The Fenix Defendants

On June 25, 2022, following a telephonic conferral between the parties, Plaintiffs confirmed that they are not asserting that the Fenix Defendants are subject to general jurisdiction.  Plaintiffs could not establish general jurisdiction even if they attempted to because Mr. Radvinsky is domiciled in Florida, not California, Compl. ¶ 11, neither Fenix Internet nor Fenix International is incorporated or has its principal place of business in California, *id*. ¶¶ 9-10, and Plaintiffs have not alleged that the Fenix Defendants' California contacts present an "exceptional case" such that they should be held to general jurisdiction, *see Daimler AG v. Bauman*, 571 U.S. 117, 139 & n.19 (2014).

The Fenix Defendants are also not subject to specific jurisdiction in California because (i) Plaintiffs have not sufficiently alleged that the Fenix Defendants purposefully directed any of their activities towards California, and (ii) Plaintiffs' claims do not arise out of or relate to any of the Fenix Defendants' purported California-related activities.  Courts conduct a three-part inquiry to determine whether a defendant's contacts with the forum give rise to specific jurisdiction:

> (1) "the defendant must either 'purposefully direct his activities' toward the forum or 'purposefully avail himself of the privileges of conducting activities in the forum;'"
>
> (2) "the claim must be one which arises out of or relates to the defendant's forum related activities;" and
>
> (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."

*AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020) (alteration in original).  The plaintiff "bears the burden to establish the first two prongs." *Id*.

### a. *The Fenix Defendants' Alleged Non-Tortious Business Activities Cannot Ground Specific Jurisdiction*

Plaintiffs first attempt to allege specific jurisdiction through the Fenix Defendants' non-tortious business activities in California, alleging that "Defendants Fenix [International], Fenix Internet, and [Mr.] Radvinsky intentionally avail themselves of the markets within California

through the promotion, sale, marketing, and distribution of their adult entertainment platforms." AC ¶ 25.  That attempt fails because Plaintiffs fail to allege purposeful direction or that the purported business activities relate to Plaintiffs' claims.  *Wanat*, 970 F.3d at 1208.

**_Plaintiffs Fail To Allege Purposeful Direction_**.  To show purposeful direction, Plaintiffs must allege that *each* Fenix Defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that [it] knows is likely to be suffered in the forum state."  *Wanat*, 970 F.3d at 1209.  Plaintiffs fail to make that showing for at least the following reasons.

*First*, Plaintiffs' allegation that the Fenix Defendants "intentionally avail themselves of the markets within California" (AC ¶ 25) must be disregarded because it does not provide "an individualized jurisdictional analysis for each" Fenix Defendant.  *In re Boon Glob. Ltd.*, 923 F.3d 643, 651 (9th Cir. 2019).  Dismissal is necessary because Plaintiffs "lumped all [Fenix] Defendants' together" instead of identifying how each Fenix Defendant's distinct activities allegedly triggered jurisdiction.[2]  *19 Tao Vega LLC v. Holo Ltd.*, 2019 WL 9607733, at *4 (N.D. Cal. Dec. 17, 2019); *Allen v. Shutterfly, Inc.*, 2020 WL 5517170, at *4 (N.D. Cal. Sept. 14, 2020) (similar).

*Second*, that same allegation must be disregarded because it is a "'bare bones' assertion[]."  *Swartz*, 476 F.3d at 766.  In fact, it is a near-carbon copy of personal jurisdiction allegations that the Ninth Circuit and courts in this District have routinely disregarded as conclusory.  *See id*. (disregarding allegations that defendants "directed communication into the [forum] and otherwise conducted business therein" as "conclusory"); *LegalForce RAPC Worldwide P.C. v. Swyers*, 2018 WL 3439371, at *4 (N.D. Cal. July 17, 2018) (disregarding allegation that defendants "purposefully directed their advertisements or promotions at consumers in California" as "conclusory").

*Third*, even if Plaintiffs' allegation *were* credited (and it should not be), it does not show that Fenix International's operation of OnlyFans was "expressly aimed" at California.  *Wanat*, 970 F.3d at 1209.  *Wanat* is instructive.  There, the Ninth Circuit held that a Polish citizen did not expressly aim his adult entertainment website at the U.S. even though the website (1) used "geotargeted

---

[2]   Even as alleged, each Fenix Defendant has a distinct role—Fenix International operates the OnlyFans group, Fenix Internet processes payments for OnlyFans's users, and Mr. Radvinsky owns Fenix International.  AC ¶¶ 11-13.

advertisements," (2) featured "a significant portion of U.S.-based content from . . . U.S.-based models," and (3) had a U.S. viewer base that "comprise[d] 19.21% of the site's total visitors." *Id.* at 1210.  The Ninth Circuit explained that the website's "content [was] primarily uploaded by its users, and the popularity or volume of U.S.-generated adult content [did] not show that [the defendant] expressly aimed the site at the U.S. market." *Id*.  The Court thus held that "the United States was not 'the focal point' of the website" even though the defendant "may have foreseen that [his website] would attract a substantial number of viewers in the United States." *Id*.

So too here.  As in *Wanat*, the OnlyFans website is available to the entire world of internet users.  AC ¶ 38 (OnlyFans is "the 4th largest adult pay website in the world").  Further, as Plaintiffs admit, any content provider with an account can upload content.  *Id.* ¶¶ 88, 92 (alleging that class members of a worldwide class were able to open OnlyFans accounts); *see Wanat*, 970 F.3d at 1209.  Even Fenix International's contracts with Plaintiffs are not California-directed but instead point away from California because they contain a forum selection clause selecting the English courts.  AC ¶ 91; *see Clancy v. Allstate Ins. Co.*, 2021 WL 3861421, at *5 (N.D. Cal. Aug. 30, 2021) (New York forum selection clause weighs against purposeful availment finding).  As the Ninth Circuit recognized, "the market for adult content is global," such that adult websites like the ones here "lack[] a forum-specific focus."  *Wanat*, 970 F.3d at 1210; *see also Doe v. WebGroup Czech Republic, AS*, 2022 WL 982248, at *6-7 (C.D. Cal. Jan. 13, 2022) (holding that defendants did not expressly aim adult entertainment websites similar to the website at issue in *Wanat* at California), *amended on reconsideration in part*, 2022 WL 982245 (C.D. Cal. Feb. 25, 2022); *Yeager v. Airbus Grp. SE*, 2021 WL 750836, at *6 (C.D. Cal. Jan. 26, 2021) (concluding that airplane manufacturer did not expressly aim website at California because it was a "generalized informational website" that did not contain "any advertising materials or pages that are specific to California consumers").

***Plaintiffs Fail To Allege Relatedness*.**  Plaintiffs also fail the second prong of the specific jurisdiction test because their claims do not "arise[] out of or relate[] to [the Fenix Defendants'] forum related activities."  *Wanat*, 970 F.3d at 1208.

*First*, Plaintiffs' claims do not "arise out of" the Fenix Defendants' alleged forum-related business activities because those activities did not cause Plaintiffs' alleged injury.  *See LNS Enterprises LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 861 (9th Cir. 2022) (explaining that the phrase "arise out of" indicates a causal link).  Plaintiffs have not alleged that the Fenix Defendants' purported "promotion, sale, marketing, and distribution" of OnlyFans in this District, AC ¶ 25, caused the purported "blacklisting" conspiracy or interfered with Plaintiffs' contracts and/or business relationships.  *LNS Enterprises*, 22 F.4th at 863 (no specific jurisdiction because defendant's forum-based personnel did not "work[] on . . . the type of engine at issue").

*Second*, Plaintiffs' claims do not "relate to" the Fenix Defendants' purported marketing activities because such marketing has no "affiliation . . . [with] the underlying controversy."  *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021).  Unlike in *Ford Motor*, where the product that caused injury was the same product the defendant marketed in the forum, *id*. at 1028, Plaintiffs allege here that their injury is ***not*** a product of the marketed platform, OnlyFans, but instead arises from alleged blacklisting that targeted *other* AE Platforms, none of which is alleged to have occurred in this forum.  *See* AC ¶ 42.  Indeed, Plaintiffs ***expressly disavow*** that their injury has any nexus to the OnlyFans platform by alleging that the forum selection clause in the OnlyFans Terms of Service does not apply because "this dispute does not arise … in connection with Class Members' use of OnlyFans."  *Id*. ¶ 91.  Because specific jurisdiction is only satisfied if the "allegedly tortious action was expressly aimed at the forum," *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (citation omitted), Plaintiffs cannot use non-tortious marketing and distribution activities to establish specific jurisdiction.[3]

        b.    *The Fenix Defendants' Allegedly Tortious Conduct Also Cannot Ground Specific Jurisdiction*

Plaintiffs next attempt to establish specific jurisdiction through injuries allegedly caused by the Fenix Defendants' purportedly tortious conduct, pleading that the Fenix Defendants "caused

---

[3]  Further, Plaintiffs' conclusory allegations do not even attempt to allege marketing "to the extreme degree that Ford advertised, [and] sold" and that supported specific jurisdiction in *Ford Motor*.  *See LNS Enterprises*, 22 F.4th at 863 (citing *Ford Motor*, 141 S. Ct. at 1028).

1  injury to Plaintiffs and to Class Members in California arising out of activities in California."  AC

2  ¶ 15.  That attempt fails because Plaintiffs have not made any non-conclusory allegations that the

3  Fenix Defendants committed a tort in, or expressly aimed tortious conduct towards, California.

4       *First*, Plaintiffs fail to allege that the Fenix Defendants committed a tort in California, as

5  might support specific jurisdiction. *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d

6  597, 603 (9th Cir. 2018).  The only California-based activities that Plaintiffs allege that the Fenix

7  Defendants engaged in—marketing and distribution of OnlyFans (AC ¶ 25)—were not tortious (and

8  are unrelated to the allegations and claims).  *See supra* at 9-10.  Nor do Plaintiffs allege that Mr.

9  Radvinsky or representatives of the Fenix Defendants travelled to California to accomplish the

10  blacklisting.  *Cf. Freestream Aircraft*, 905 F.3d at 603.  Instead, Plaintiffs allege that the Fenix

11  Defendants' principal role in the scheme was to pay unidentified agents of the Meta Defendants

12  who caused the alleged blacklisting—payments that Plaintiffs expressly allege were made through

13  **Hong Kong**, not California.  AC ¶¶ 76-85.  Accordingly, Plaintiffs' bare bones allegation that their

14  injury "ar[ose] out of activities in California" by the Fenix Defendants (AC ¶ 15) are insufficient as

15  a matter of law.  *Swartz*, 476 F.3d at 766.

16       *Second*, Plaintiffs fail to allege any out-of-forum actions by the Fenix Defendants that were

17  expressly aimed at California.  *Wanat*, 970 F.3d at 1208.  Instead, Plaintiffs allege that the

18  blacklisting targeted *other* AE Platforms in the global adult industry, thus causing derivative harm

19  to Plaintiffs because they were "featured on those platforms."  AC ¶ 3.  Conduct aimed at those

20  competitor AE Platforms is not expressly aimed at California for the same reason that OnlyFans's

21  marketing is not—like OnlyFans, other AE Platforms compete in a "vibrant, competitive market,"

22  *id*. ¶ 4, are available to the entire world of internet users, *id*. ¶ 38, and any user with an account can

23  upload content, *id*. ¶ 3.  Because these global adult websites "lack[] a forum-specific focus," *Wanat*,

24  970 F.3d at 1210, allegedly interfering with their operation is not an act expressly aimed at

25  California simply because some of their content is provided by California-based users.  If it were,

26  Plaintiffs would theoretically be able to bring suit in any jurisdiction, in any country, where at least

27  one user uploads content to an AE Platform.  The law does not support such boundless jurisdiction.

28

Plaintiffs' allegation that the Fenix Defendants "caused injury to Plaintiffs and to Class Members in California" (AC ¶ 15) does no more to save their attempts at establishing specific jurisdiction because specific jurisdiction is determined by "the defendant's 'own contacts' with the forum, not [] the defendant's knowledge of a plaintiff's connections to a forum." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017). Even if it were foreseeable that a potential plaintiff might suffer injury in California, such an injury cannot ground specific jurisdiction because it "is entirely personal to [the plaintiff] and would follow [her] wherever [s]he might choose to live or travel." *Picot*, 780 F.3d at 1215. Moreover, only one of the Plaintiffs here— Ms. Dangaard—is even a California resident. Ms. Gilbert and Ms. Allbaugh both reside in other states and thus allegedly suffered injury in those states, not California. AC ¶¶ 9-10.[4] Thus, Plaintiffs' allegations concerning the Fenix Defendants' purportedly tortious conduct fail to establish a basis for the exercise of specific jurisdiction in this Court.

### 2.     Plaintiffs' Conspiracy Theory Of Personal Jurisdiction Fails

Plaintiffs' conspiracy allegations cannot salvage their personal jurisdiction allegations in light of their failure to allege any tortious conduct by the Fenix Defendants that was committed in or expressly aimed at California. Plaintiffs claim that the ***Meta Defendants'*** "acts in furtherance of the conspiracy occurred in this district at or through … the offices of defendant Meta and its subsidiaries," AC ¶ 25, where the Meta Defendants allegedly directed their employees to blacklist competing AE Platforms, *id*. ¶ 70. Plaintiffs then attempt to establish personal jurisdiction by imputing the Meta Defendants' actions to the Fenix Defendants by alleging conspiracy. *Id*. ¶¶ 22-23.

That attempt fails because "California does not recognize conspiracy as a basis for acquiring personal jurisdiction over a party." *Mansour*, 38 Cal.App.4th at 1760. Neither do courts in this District. *See U.S. Vestor, LLC v. Biodata Info. Tech. AG*, 290 F. Supp. 2d 1057, 1065 (N.D. Cal.

---

[4]   It is black-letter law that "claims of unnamed class members are irrelevant to … specific jurisdiction," *AM Tr. v. UBS AG*, 78 F. Supp. 3d 977, 986 (N.D. Cal. 2015), *aff'd*, 681 F. App'x 587 (9th Cir. 2017).

2003).[5]   Accordingly, Plaintiffs cannot establish personal jurisdiction via conspiracy theory by attributing the Meta Defendants' purported California-based actions to the Fenix Defendants.  *See EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1089 (C.D. Cal. 2010).  That is fatal because, "absent application of the conspiracy theory," Plaintiffs do not allege that the Fenix Defendants committed any torts in California, nor that they expressly aimed any torts at California.  *Brown v. 140 NM LLC*, 2019 WL 118425, at *5 (N.D. Cal. Jan. 7, 2019).

While California law's prohibition on conspiracy theories of personal jurisdiction is dispositive, Plaintiffs failed to properly plead such a theory even if the Court were to consider it. "More than conclusory allegations of the existence of a conspiracy" are required because otherwise it would be too easy for "plaintiffs [to] drag defendants to remote forums for protracted proceedings."  *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 2015 WL 12752879, at *9 (C.D. Cal. July 2, 2015).  Pleading a conspiracy theory of jurisdiction thus requires non-conclusory "supporting factual allegations as to the formation and operation of the alleged plan," including at a minimum "whether the plan was express or tacit," *Krypt, Inc. v. Ropaar LLC*, 2020 WL 32334, at *5 (N.D. Cal. Jan. 2, 2020), "who made the decisions on behalf" of the alleged co-conspirators, *id.*, and "that the conspiracy individually targeted a known forum resident," *UMG Recordings*, 2015 WL 12752879, at *9.  Plaintiffs come nowhere close to satisfactorily alleging these elements.  They do not allege whether the purported conspiracy was express or tacit.  They do not identify who made the decisions on behalf of the Fenix Defendants—or the other alleged co-conspirators—simply grouping together "Radvinsky and one or more other owners, officers, directors or managing agents of Fenix [International] and/or Fenix Internet." AC ¶ 71.  And they do not allege that the conspiracy individually targeted the only Plaintiff who resides in the forum, Ms. Dangaard.  Instead, Plaintiffs

---

[5]   The 9th Circuit has rejected a conspiracy theory of venue and has cast "a great deal of doubt surrounding the legitimacy of th[e] conspiracy theory of personal jurisdiction." *Chirila v. Conforte*, 47 F. App'x 838, 842 (9th Cir. 2002) (citing *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 492 (9th Cir. 1979)).

1  admit that the purported conspiracy targeted "the businesses of many competing AE Platforms" and

2  only harmed Ms. Dangaard indirectly because she used certain of those platforms. *Id*. ¶ 3.

3        Further still, the conspiracy allegations that Plaintiffs *did* make cannot even be credited

4  because they are conclusory and alleged on information and belief. *See Swartz*, 476 F.3d at 766;

5  *Chirila*, 47 F. App'x at 843 (rejecting "conclusory" conspiracy-based personal jurisdiction

6  allegations). "[A]llegations based upon information and belief are insufficient to demonstrate

7  personal jurisdiction," *Precision Transducer Sys. v. STFO Trading LLC*, 2009 WL 10700319, at *4

8  (C.D. Cal. Oct. 15, 2009), including where, as here, personal jurisdiction is based on conspiracy,

9  *Broidy Cap. Mgmt., LLC v. Qatar*, 2018 WL 9943552, at *6 (C.D. Cal. Aug. 16, 2018) (rejecting as

10 "conclusory" conspiracy-based personal jurisdiction allegations made on information and belief).

11 Here, Plaintiffs improperly alleged every required element of the purported conspiracy on

12 information and belief, including its timing, AC ¶¶ 61, 86, the agreement, *id*. ¶¶ 70-71, its

13 participants and their motives, *id*. ¶¶ 70-75, the unlawful act of blacklisting and how it was executed,

14 *id*. ¶¶ 67-71, the tools employed to blacklist, *id*. ¶ 67, the alleged cover-up, *id*. ¶¶ 75-77, 82, 85, 87,

15 and damage causation, *id*. ¶¶ 62-63. *Koi Design, LLC v. Mark's Work Wearhouse*, 2010 WL

16 11508546, at *7 (C.D. Cal. Mar. 26, 2010) (establishing elements of conspiracy); *Krypt*, 2020 WL

17 32334, at *5 (same); *UMG Recordings*, 2015 WL 12752879, at *9 (same). Plaintiffs' allegation

18 that the Meta Defendants performed acts to further the conspiracy in this District, which acts

19 Plaintiffs impute to the Fenix Defendants, is also alleged on "information and belief." AC ¶ 25.

20 Even the core inference Plaintiffs ask the Court to draw—that the takedowns at issue can only be

21 explained by conspiracy—is alleged on "information and belief." *Id*. ¶ 64. These "overly

22 generalized" allegations are insufficient, *In re Dynamic Random Access Memory (Dram)*, 2005 WL

23 2988715, at *8 (N.D. Cal. Nov. 7, 2005), and are devoid of "any facts supporting [Plaintiffs']

24 belief," *Du Pont v. Prudential Ins. Co.*, 2019 WL 4417494, at *8 (C.D. Cal. May 29, 2019).

25       Once those information and belief allegations are stripped away, Plaintiffs fail to even allege

26 any conspiracy. Plaintiffs' only allegations that are not based on information and belief are that Mr.

27 Radvinsky acquired Fenix International and that it prospered under his leadership while the revenues

28 of other AE Platforms declined, due in part to content removals by the Meta Defendants and other,

non-party social media companies.  AC ¶¶ 33-34, 39, 41, 61.  Plaintiffs can only speculate that there must be a conspiracy because the Fenix Defendants wanted to make profits and did so.  *Id.* ¶¶ 64, 74.  But that is not how the law works.  Such speculation that parties participated in a conspiracy merely because they ultimately received some benefits is insufficient to state a claim because "conspiracies cannot be established by suspicions."  *Krypt*, 2020 WL 32334, at *5.

### 3. Fenix Internet Is Not Subject To Specific Jurisdiction

Plaintiffs have failed to establish specific jurisdiction over any of the Fenix Defendants for numerous reasons.  But specific jurisdiction over Fenix Internet in particular does not exist for the simple and independent reason that Fenix Internet did not exist at the time the conspiracy allegedly began.  *See*, *e.g.*, *QSG, Inc. v. Schlittler*, 2012 WL 1493944, at *5 (D. Utah Apr. 27, 2012) (granting personal jurisdiction motion to dismiss by entity that "did not even exist until after the vast majority of the alleged acts occurred" because jurisdiction would "offend due process").  Plaintiffs allege that the purported conspiracy began in late 2018, AC ¶ 61, but Fenix Internet was not even formed as an entity until March 2019, Taylor Decl. ¶ 2, and Plaintiffs fail to allege that Fenix Internet joined the supposed scheme after it began.

### 4. Plaintiffs Cannot Establish Personal Jurisdiction Through Veil-Piercing

Finally, even if Plaintiffs were to establish personal jurisdiction over any one of the Fenix Defendants, Plaintiffs' attempt (AC ¶ 23) to impute that defendant's acts to the other Fenix Defendants via veil-piercing fails.  Under California law, "[t]o satisfy the alter ego test, a plaintiff must make out a prima facie case "(1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice."[6]  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir.

---

[6]  Veil-piercing of Fenix International and Fenix Internet is governed by the law of each company's place of incorporation, namely England and Delaware, respectively.  *Sunnyside Dev. Co., LLC v. Opsys Ltd.*, 2005 WL 1876106, at *3 (N.D. Cal. Aug. 8, 2005).  Though it is the Fenix Defendants' position that California law does not apply, Plaintiffs' failure to plead veil-piercing under California law is dispositive, and the Court need not apply English or Delaware law because Plaintiffs have not alleged that either law is more favorable to them than California law.

2015) (alteration in original).  "Conclusory allegations of 'alter ego' status are insufficient to state a claim."  *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014).  "Rather, a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each."  *Id*.

Plaintiffs' conclusory allegations of a "unity of interest and ownership … among the [Fenix] Defendants" and that respecting separate corporate personality "would promote injustice" fail to properly allege veil-piercing.  AC ¶ 23.  Plaintiffs fail the first prong because they fail to allege any facts—much less plausible allegations—of "undercapitalization, failure to keep adequate records, or the free transfer of company assets" between the Fenix Defendants, factors without which personal "jurisdiction cannot lie."  *In re Boon Glob.*, 923 F.3d at 654.  Plaintiffs also fail the second prong because their assertion that respecting separate corporate personality "would promote injustice," AC ¶ 23, is "[c]onclusory" and "insufficient," *In re Boon Glob.*, 923 F.3d at 654.  Plaintiffs do not allege any "bad faith or fraudulent intent in forming" either Fenix International or Fenix Internet.  *Reynolds v. Binance Holdings Ltd.*, 481 F. Supp. 3d 997, 1009 (N.D. Cal. 2020).  Rather, as Plaintiffs themselves allege, Fenix International operates OnlyFans and Fenix Internet processes customer charges.  AC ¶¶ 11-12.  Neither is a "sham . . . formed for the purpose of committing fraud."  *BriteSmile, Inc. v. Discus Dental, Inc.*, 2005 WL 1048701, at *3 (N.D. Cal. May 5, 2005).

### B.    Plaintiffs Fail To State Any Viable Claims

#### 1.    Plaintiffs Fail To Properly Plead Any Claims

##### a.    *Plaintiffs Fail To Plead Conspiracy With Particularity*

All of Plaintiffs' claims against the Fenix Defendants should be dismissed because they have failed to plead their Complaint with particularity.  Where a complaint purports to state a "unified course of fraudulent conduct," *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009), Rule 9(b) requires the "entire complaint … [to] be pleaded with particularity."[7]  This is because "[i]f insufficiently pled averments of fraud are disregarded, as they must be, in a complaint or claim

---

[7]  Caselaw confirms that Rule 9(b) applies to unfair competition and intentional interference claims based on allegations of fraud.  *See Block v. eBay, Inc.*, 747 F.3d 1135, 1140 (9th Cir. 2014); *Magic Leap, Inc. v. Chi Xu*, 2020 WL 3268659, at *6–7 (N.D. Cal. June 17, 2020).

grounded in fraud, there is effectively nothing left of the complaint." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). Here, Plaintiffs have alleged a wide-ranging "fraudulent" (AC ¶ 96) and "corrupt" (*id*. ¶ 1) "conspiracy" (*id*. ¶¶ 21-22) based on "false[] represent[ations]" (*id*. ¶ 115), and involving the Fenix Defendants, the Meta Defendants, and 10 unknown "Doe" entities.

The crux of the Fenix Defendants' alleged involvement in that conspiracy is that the Fenix Defendants made payments to the Meta Defendants to facilitate the purported blacklisting scheme. AC ¶ 82.  The Ninth Circuit has addressed virtually identical allegations in the past and has explained that they fail to meet the requirements of Rule 9(b).  *See, e.g.*, *Vess*, 317 F.3d at 1106-7 (affirming dismissal where plaintiff alleged "that the APA received financial contributions from Novartis, but he offer[ed] scant specifics as to when or between whom the money changed hands"). More generally, Plaintiffs' claims against the Fenix Defendants fail to plead with particularity the "who, what, when, where, and how" of the purported scheme, *Kearns*, 567 F.3d at 1124, and instead offer "scant specifics" and sweeping allegations "unsupported by details," *Vess*, 317 F.3d at 1106-7, as set forth in greater detail below:

- **Who**: Plaintiffs rely on amorphous allegations concerning the actions of "unidentified participants." AC ¶ 61.  They fail to identify any of the alleged "co-conspirators … at a major social media service," *id*. ¶ 61, which "multiple online service providers" the blacklist data was provided to, *id*. ¶ 70, or which "agents of Meta and its subsidiaries" received payments from which Fenix Defendants, *id*. ¶ 76.

- **What**: Plaintiffs fail to allege virtually any supporting details of the purported scheme, including what "direction[s]" the Fenix Defendants purportedly provided to the Meta Defendants, AC ¶ 71, which "one or more shared databases or lists" the "false classifier/filtering information" was included in, *id*., and the amounts of the purported improper payments, *id*. ¶¶ 76-85.  Plaintiffs even fail to allege that parts of the scheme actually occurred, instead speculating that they "could have" or "must [have]" occurred.  *Id*. ¶¶ 73, 82.

- **When**: Plaintiffs fail to allege when the Fenix Defendants "provided the information" used for blacklisting, AC ¶ 71, the timing of the purported improper payments, *id.* ¶¶ 76-85, or which tools were used to perpetuate the scheme at which times, *id.* ¶ 86.

- **Where**: Plaintiffs merely speculate that unspecified acts occurred in the Meta Defendants' offices, AC ¶ 25, fail to allege the location of the "owners, officers, directors, or managing agents of Fenix [International] and/or Fenix Internet" who "provided the information" used for blacklisting, *id.* ¶ 71, and suggest that improper payments could have been made by OnlyFans staff in five different Asian jurisdictions based on nothing more than "online job posting," *id.* ¶ 83.

- **How**: Plaintiffs fail to allege how "unidentified participants" placed the AE Platforms in a "shared filtering database," AC ¶ 61, how the Fenix Defendants "provided the information" on blacklisting to the Meta Defendants, *id.* ¶ 71, and how the purported improper payments were made, *id.* ¶ 85. Plaintiffs again speculate only that certain tools "would have" or "may have" been used. *Id.* ¶¶ 66, 69.

The Ninth Circuit and courts in this District have repeatedly rejected similar conclusory allegations of fraudulent conspiracy that fail to identify the circumstances of the fraud, where and when it occurred, and its supporting details. *See, e.g., Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1057 (9th Cir. 2011) (rejecting allegations of improper charges because the complaint "specifies no particular circumstances" but instead merely "identifies a general sort of fraudulent conduct"); *Mostowfi v. I2 Telecom Int'l, Inc.*, 2004 WL 7338797, at *9-10 (N.D. Cal. May 27, 2004) (rejecting "generalized allegations" of fraud and conspiracy because plaintiffs failed to identify "specific statements" or their "time and place"); *United InvestexUSA 7 Inc. v. Miller*, 2021 WL 4816826, at *6 (C.D. Cal. Aug. 25, 2021) (rejecting "generalized" fraud allegations where plaintiff alleged only an "example transaction" and admitted that "details of the scheme can vary significantly from transaction to transaction"). Those pleading defects are fatal because, once Plaintiffs' allegations of fraudulent conduct are struck, "there is effectively nothing left" of Plaintiffs' claims beyond speculation that there must be a conspiracy because the Fenix Defendants wanted to make profits and did so, which is insufficient. *Vess*, 317 F.3d at 1107; *see* AC ¶¶ 64, 74.

1    Moreover, Plaintiffs fail Rule 9(b) for the independent reason that they "lump [the Fenix

2  [D]efendants together" instead of "inform[ing] each defendant separately of the allegations

3  surrounding his alleged participation in the fraud." *Swartz*, 476 F.3d at 764.  Despite claiming that

4  each Fenix Defendant has a distinct alleged role, AC ¶¶ 11-13, Plaintiffs simply refer generally to

5  "the Defendants," *id*. ¶ 68, or the "Radvinsky Defendants[]," *id*. ¶ 74, or group Mr. Radvinsky

6  together with Fenix Internet and Fenix International without differentiating their respective alleged

7  roles, *id*. ¶¶ 71, 85.  Rule 9(b) prohibits such "wholesale" attribution of allegations against defendant

8  groups to each Fenix Defendant.  *United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir.

9  2011).

10              b.    *Plaintiffs' Information And Belief Allegations Must Be Disregarded*

11    Plaintiffs also fail to state viable claims against any of the Fenix Defendants because their

12  allegations are based on unsupported speculation—specifically, thirty-eight "information and

13  belief" allegations—which are insufficient as a matter of law.  Plaintiffs allege every single required

14  element of the purported conspiracy on information and belief.  Plaintiffs' "heavy reliance" on

15  information and belief allegations "undermines the plausibility of [their] allegations" and "creates

16  an inference that [Plaintiffs] likely lack[] knowledge of the underlying facts …, and [are] instead

17  engaging in speculation." *Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Rsch. Inst.*,

18  2020 WL 7392909, at *4-5 (N.D. Cal. July 23, 2020).   As the Ninth Circuit has explained,

19  "allegations of fraud based on information and belief usually do not satisfy the particularity

20  requirements under rule 9(b)." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir.

21  1989).  Here, Plaintiffs' allegations clearly do not satisfy Rule 9(b) because they fail to "state the

22  factual basis for the belief[s]." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).  Instead,

23  Plaintiffs can only speculate that there must be a conspiracy because the Fenix Defendants wanted

24  to make profits and did so. AC ¶¶ 64, 74.  Such "conclusory … allegations are not enough" to state

25  a claim. *MGA Ent., Inc. v. Dynacraft BSC, Inc.*, 2018 WL 2448123, at *7 (C.D. Cal. May 30, 2018)

26

27

28

1   (dismissing conspiracy claims that were "all made on 'information and belief' without providing

2   any factual basis").[8]

3              c.   *Plaintiffs Fail To State A Claim Against Fenix Internet*

4         Even if Plaintiffs were able to state a claim against other of the Fenix Defendants (and they

5   cannot), Plaintiffs would still have failed to state any claim against Fenix Internet because Fenix

6   Internet did not exist at the time the purported conspiracy began, and Plaintiffs make no allegations

7   that Fenix Internet joined the conspiracy at a later date.  Plaintiffs allege that the conspiracy began

8   in spring 2018, AC ¶ 61, intensified in October 2018, *id.*, and continued into 2019, *id.* ¶¶ 65-66.  But

9   Fenix Internet was only formed in March 2019, *see* Taylor Decl. ¶ 2, and Plaintiffs never allege

10  when (or even that) Fenix Internet joined the conspiracy at a later date.  Further, the Complaint is

11  devoid of allegations that Fenix Internet did anything tortious.  Plaintiffs admit that Fenix Internet's

12  role is merely to process payments, AC ¶ 12, and use language such as "and/or" and "one of the

13  Fenix entities" to describe Fenix Internet's possible role, *id.* ¶¶ 71, 85.

14        The only way Plaintiffs could have stated a claim against Fenix Internet would be through

15  vicarious liability—by holding it liable for the alleged actions of others.  But as discussed above,

16  Plaintiffs' conspiracy claim fails because, *inter alia*, it is based on unparticularized, conclusory, and

17  information and belief allegations that cannot be credited, and Plaintiffs' veil-piercing theory (AC

18  ¶ 23) similarly fails because it is based on conclusory allegations.

19        **2.   Plaintiffs Fail To Plead Intentional Interference Claims**

20        The Court need not reach Plaintiffs' specific counts against the Fenix Defendants for reasons

21  addressed herein.  But if it did, Plaintiffs' intentional interference counts should be dismissed for

22  simply failing to allege the required elements of their claims.  *First*, Plaintiffs' failure to allege

23

24  _____

25  [8]   Even if the Court were to apply Rule 8, these allegations must still be disregarded because (1) the
    alleged facts are not "peculiarly within the possession" of the Fenix Defendants, and (2) Plaintiffs'

26  beliefs are not "based on factual information that makes the inference of culpability plausible."  *Soo
    Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017); *see also BMA LLC v. HDR Glob. Trading

27  Ltd.*, 2021 WL 949371, at *6-7 (N.D. Cal. Mar. 12, 2021) (refusing to credit claims pled entirely on
    information and belief); *Celgard*, 2020 WL 7392909, at *4-5 (dismissing claim that "qualifies nearly

28  all allegations [regarding purported agreement] … with the phrase 'upon information and belief'").

1  "actual breach or disruption" of the only contracts they claim were interfered with—their

2  agreements with other AE Platforms (AC ¶ 103)—doom their claims for intentional interference

3  with contract and existing business relationships in Counts One and Two. *Guidiville Band of Pomo*

4  *Indians v. NGV Gaming, Ltd.*, 531 F.3d 767, 774 (9th Cir. 2008) (explaining that claims for

5  interference with contract require showing of a "breach or disruption" of a contractual relationship).

6        Plaintiffs fail to plead breach because they do not allege that blacklisting caused other AE

7  Platforms to breach their obligation to split revenue with Plaintiffs.  AC ¶ 103; *see Fluidigm Corp.*

8  *v. IONpath, Inc.*, 2020 WL 408988, at *2 (N.D. Cal. Jan. 24, 2020) (Alsup, J.) (dismissing

9  intentional interference claim for failure to allege breach).  And Plaintiffs fail to allege contractual

10 disruption because they do not "articulate how [the Fenix Defendants'] acts rendered [their]

11 performance" of their contracts with the AE Platforms "more burdensome or costly." *Artists Rights*

12 *Enf't Corp. v. Feemster*, 2017 WL 7079783, at *3 (C.D. Cal. Apr. 10, 2017).  "[U]nderstand[ing]

13 whether [Plaintiffs'] performance was disrupted require[s] the district court to determine what

14 contractual rights [Plaintiffs] possessed," *United Nat. Maint., Inc. v. San Diego Convention Ctr.,*

15 *Inc.*, 766 F.3d 1002, 1009 (9th Cir. 2014), and whether those specific rights were disrupted.  Alleged

16 interference with advertising does not "impact … obligations" under Plaintiffs' contracts with any

17 AE Platforms.  *See U.S. Colo, LLC v. CoreSite One Wilshire, L.L.C.*, 2014 WL 12689269, at *5

18 (C.D. Cal. July 31, 2014) (dismissing intentional interference claim that "conflat[ed]" two distinct

19 contracts).  Indeed, Plaintiffs' pleading is bereft of any allegation that higher or lower visibility on

20 their pages might have impacted their ability to fulfill contractual obligations to the AE Platforms,

21 or vice versa.  Plaintiffs' real grievance is that blacklisting prevented them from effectively

22 advertising on social media platforms to "drive traffic to their accounts on the AE Platforms," AC

23 ¶ 31—or in other words, that it interfered with their relationships (not contracts) with potential

24 customers.

25        However, Plaintiffs' failure to allege relationships with identifiable customers dooms their

26 intentional interference with business relationships claim in Count Two.  Plaintiffs allege that

27 blacklisting "caused customers to avoid entering into business relationships with certain AE

28 Platforms." AC ¶ 110.  Those allegations are "vague and speculative," *Stardock Sys, Inc. v. Reiche*,

1  2019 WL 8333514, at *6-7 (N.D. Cal. May 14, 2019), and insufficient because Plaintiffs do not

2  allege an "existing relationship with an identifiable buyer," *Westside Ctr. Assocs. v. Safeway Stores*

3  *23, Inc.*, 42 Cal.App.4th 507, 527 (1996), or "disruption to negotiations or potential contracts" with

4  such customers, *Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008).

5           **3.      Plaintiffs Fail To State A UCL Unlawful Prong Claim**

6         Finally, Plaintiffs fail to state a claim under the unlawful prong of the UCL (*see* AC ¶ 115)

7  because they only allege common law violations.  Plaintiffs' "common law interference claim[s]

8  cannot serve as the predicate act for the 'unlawful' prong," *Devore v. H&R Block Tax Servs. LLC*,

9  2018 WL 1942384, at *8 (C.D. Cal. Mar. 29, 2018), because "common law violation[s] … [are]

10 insufficient," *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010).[9]

11 **V.      CONCLUSION**

12        For the foregoing reasons, the Fenix Defendants respectfully request that the Court dismiss

13 the First Amended Complaint with prejudice.

14

15

16

17

18

19

20

21

22

23

24

25

26

---

27 [9]   Plaintiffs' UCL unlawful prong claim also fails because Plaintiffs fail to state intentional

28 interference claims.  *Hadley v. Kellogg Sales Co.*, 243 F.Supp. 3d 1074, 1094 (N.D. Cal. 2017).

1    DATED:  June 30, 2022

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By:    _/s/ Jason D. Sternberg_____
       Shon Morgan (Bar No. 187736)
       (shonmorgan@quinnemanuel.com)
       865 South Figueroa Street, 10th Floor
       Los Angeles, California 90017
       Telephone: (213) 443-3000
       Facsimile: (213) 443-3100

       Victoria B. Parker (Bar No. 290862)
       (vickiparker@quinnemanuel.com)
       50 California Street, 22nd Floor
       San Francisco, California 94111
       Telephone: (415) 875-6600
       Facsimile: (415) 875-6700

       John F. O'Sullivan (Fla. Bar No. 143154)
       (johnosullivan@quinnemanuel.com)
       Jason D. Sternberg (Fla. Bar No. 72887)
       (jasonsternberg@quinnemanuel.com)
       Joshua T. Fordin (Fla. Bar No. 125219)
       (joshuafordin@quinnemanuel.com)
       2601 South Bayshore Drive, 15th Floor
       Miami, Florida 33133
       Telephone: (305) 402-4880

       *Attorneys for Defendants Fenix International Limited, Fenix Internet LLC, and Leonid Radvinsky*

FENIX DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule 5-1, I hereby certify that, on June 30, 2022, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system and email.


DATED:  June 30, 2022

By:   _/s/ Victoria B. Parker_
Victoria B. Parker