Michael P. Esser (SBN 268634)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
United States
Telephone: +1 415 439 1400
Facsimile: +1 415 439 1500
michael.esser@kirkland.com

K. Winn Allen, P.C. (admitted *pro hac vice*)
Devin S. Anderson (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
United States
Telephone: +1 202 389 5000
Facsimile: +1 202 389 5200
winn.allen@kirkland.com
devin.anderson@kirkland.com

*Attorneys for Defendants Instagram, LLC, Facebook Operations, LLC, and Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DAWN DANGAARD, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> INSTAGRAM, LLC, *et al.*, <br><br> Defendants. | Case No. 3:22-CV-01101-WHA <br><br> **SUPPLEMENTAL BRIEF PER COURT'S SEPTEMBER 8, 2022 ORDER (ECF NO. 65)** <br><br> Complaint Filed Date: February 22, 2022 <br> Judge: William Alsup |

**SUPPLEMENTAL BRIEF**

Defendants Instagram, LLC, Facebook Operations, LLC, and Meta Platforms, Inc. (collectively "Meta") submit this supplemental brief pursuant to the Court's invitation to brief "whether Section 230 of the Communications Decency Act can immunize a party against allegations of anti-competitive conduct." ECF No. 65. Before addressing that question, Meta wishes to bring a recent development to the Court's attention. As the Court is aware, there is a parallel putative class action pending in San Mateo Superior Court that is brought on behalf of adult-entertainment platforms and that asserts substantially similar allegations and identical causes of action to this case. *See JFF Publications LLC, d/b/a JustFor.Fans v. Facebook Operations, LLC*, Case No. 22-CIV-00782; *see also* Notice of Pendency of Other Action or Proceeding (ECF No. 22). A hearing on Meta's anti-SLAPP motion and demurrer in that case took place on September 9, 2022, the day after the motions hearing in this case. Plaintiffs' counsel here is also counsel for the plaintiff in that case. The state court (Foiles, J.) deferred ruling on the motions and ordered the parties to conduct limited, targeted discovery. This narrow discovery—the exact scope of which is to be negotiated by the parties—will evaluate the information that plaintiffs' counsel claimed to have received from one or more whistleblowers during the hearing that took place before this Court, and in particular the alleged banking transactions that plaintiffs claim to have occurred. *See* 9/8/22 Hr'g Tr. 10:10–11:17 (Plaintiffs' counsel describing the "pieces of . . . leaked information" received "through a whistleblower of some kind"). Meta therefore respectfully suggests that this Court could hold the pending motions in abeyance pending the completion of that discovery. Indeed, a response to the HSBC subpoena alone should be enough to determine whether plaintiffs' claims possess any potential merit or instead are a fishing expedition based on unsupported and unsubstantiated allegations by unnamed sources of uncertain reliability.

To the extent the Court is inclined to rule on the motions while that targeted discovery is proceeding, Meta is entitled to protection under Section 230(c)(1) because:

- There is no exception to the Ninth Circuit's test for a defense under Section 230(c)(1) when the plaintiff claims that the conduct was anticompetitive in some fashion. This Court should not be the first to so hold.

- Meta is *not* claiming a right in this case under the CDA to engage in anticompetitive conduct for the basic reason that plaintiffs have not adequately pleaded anticompetitive conduct as to Meta. Unfair, anticompetitive conduct under the UCL requires allegations showing a violation of the

antitrust laws. Plaintiffs' complaint does not and cannot allege that Meta is violating the antitrust laws because Meta is not in the adult-entertainment business at all.

**I.  Nothing In Text Or Precedent Removes Section 230 Immunity Based On Whether Plaintiffs Are Claiming The Conduct Is Anticompetitive**

The test for Section 230(c)(1) immunity is well-established: that provision protects from liability "(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100–01 (9th Cir. 2009). The Ninth Circuit in *Barnes* stressed that courts "must closely hew to the text of the statutory bar on liability in construing its extent." *Id.* at 1100. For the reasons explained in Meta's briefing, a straightforward application of the statutory text and binding precedent precludes plaintiffs' claims. At no point has the Ninth Circuit or any other court to the knowledge of counsel for Meta ever held that the protections of Section 230(c)(1) dissipate whenever a plaintiff claims that the conduct at issue is "unfair" or "anticompetitive." To the contrary, courts routinely apply Section 230(c)(1) to bar UCL claims, including claims alleging unfair or anticompetitive conduct. *See, e.g.*, *Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 932 (N.D. Cal. 2021); *Ginsberg v. Google Inc.*, 2022 WL 504166, at *2, *5 (N.D. Cal. Feb. 18, 2022) (applying Section 230 to bar "violation of the unfair prong of California's UCL"); *Calise v. Meta Platforms, Inc.*, 2022 WL 1240860, at *4 (N.D. Cal. Apr. 27, 2022) (applying Section 230 to bar UCL and tort claims because all claims were "premised on Meta's publication of . . . third-party advertisements"); *Caraccioli v. Facebook, Inc.*, 700 F. App'x 588, 590 (9th Cir. 2017) (affirming application of Section 230 to bar UCL claim); *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1121 (9th Cir. 2007) ("The district court's decision [granting] CDA immunity is affirmed as to the unfair competition and false advertising claims . . . ."); *Enhanced Athlete Inc. v. Google LLC*, 479 F. Supp. 3d 824, 828–30, (N.D. Cal. 2020) (applying Section 230(c)(1) to bar claim for "unfair competition, in violation of California's Unfair Competition Law"); *Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 836 (2002) (applying Section 230 to bar UCL claim).

The D.C. Circuit's decision in *Marshall's Locksmith Service Inc. v. Google, LLC*, 925 F.3d 1263 (D.C. Cir. 2019), is instructive. The plaintiff in *Marshall's* alleged that Google and other search engines had, for pecuniary motives, "flooded" their search-engine results with advertisements for "scam locksmiths." *Id.* at 1265. The plaintiff further alleged that this conduct caused "[l]egitimate locksmith

1  businesses" to suffer "significant economic losses due to competition from scam locksmiths." *Id.* at 1266. Based on this conduct, the plaintiff asserted a variety of state tort and unfair competition claims, and Sherman Act claims under both Section 1 and Section 2 of that Act. *Id.* Even though the complaint alleged anticompetitive harm in the market for locksmith services, the D.C. Circuit had no problem concluding that the search-engine defendants were entitled to protection under the CDA where the entire basis for liability rested on decisions made by the defendants regarding the publication of third-party advertising content. *Id.* at 1268–71.

So too here. As in *Marshall's*, plaintiffs here seek to impose liability on Meta for harms suffered in a market—the online adult entertainment industry—in which Meta does not compete. They do so, moreover, through claims that focus entirely on publication decisions that Meta allegedly made: publishing or promoting certain content, while not similarly publishing or promoting other content. As the D.C. Circuit concluded in *Marshall's*, Section 230(c)(1) bars such claims, despite plaintiffs' attempts to cloak their challenges to Meta's publication decisions in claims of "unfair" trade practices.

By contrast, in *Enigma Software Group USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040, 1047 (9th Cir. 2019), plaintiff and defendant were "direct competitors" in the market for software that helps "users identify and block" malware from their computers. The suit alleged that defendant had configured its software to block plaintiff's competing software programs—that is, that the defendant made publication decisions for the purpose of exacting anticompetitive harm *in the market in which it competed*. In such circumstances, the Ninth Circuit held that Section 230(c)(2)—the so-called "good faith" exemption that Meta did not invoke in its motion to dismiss—was unavailable to defendant, concluding "that if a provider's basis for objecting to and seeking to block materials" under Section 230(c)(2) "is because those materials benefit a competitor, the objection would not fall within any category listed in the statute and the immunity would not apply." *Id.* at 1052. The Ninth Circuit in *Enigma* also distinguished its prior decision in *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169 (9th Cir. 2009), which applied Section 230(c)(2) to bar claims alleging unfair competition based on allegations that defendant's malware detection software was systematically and wrongly blocking plaintiff's software programs. *Id.* at 1170–72. In *Enigma*, the Ninth Circuit explained that "[t]his case differs from *Zango* in that here the parties are competitors." *Enigma*, 946 F.3d 1040, 1045, 1050 (noting that the parties in *Zango* were not "direct

competitors"). To the extent these Section 230(c)(2) cases stand for anything here, it is that CDA protection remains available where, as here, the parties are not direct competitors.

Meta does not now, nor has it ever, competed in the market for online adult entertainment, and plaintiffs do not allege that Meta made publication decisions for the purpose or effect of gaining a competitive advantage in the markets in which it does compete. This case is thus nothing like *Enigma*, and instead falls squarely under *Marshall's*, in which the search-engine defendants' publication decisions were protected by Section 230(c)(1) notwithstanding plaintiffs' claims that those publication decisions resulted in competitive harm in the market for locksmith services.

Plaintiffs may not "circumvent the CDA's protections through 'creative' pleading." *See Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1266 (9th Cir. 2016). Plaintiffs may not baldly cast conduct that checks all of the Ninth Circuit's boxes for Section 230 protection as "unfair" or anticompetitive and thereby evade the CDA's reach. As in the multitude of decisions dismissing UCL claims under Section 230(c)(1), plaintiffs here have done no more than allege conduct that squarely implicates Section 230(c)(1) alongside a bare assertion that such conduct constitutes an "unfair" practice under the UCL. Am. Compl. ¶¶ 114–19. And as in those decisions, plaintiffs here may not evade Section 230(c)(1) by asserting an unadorned UCL claim that unavoidably treats Meta as a publisher of content created solely by the plaintiffs. That Meta finds itself in a lawsuit alleging that OnlyFans—which *is* a competitor to plaintiffs in the market for online adult entertainment—caused Meta's content-moderation processes to be corrupted for purposes of enhancing OnlyFans' power in a market in which Meta does not compete does not deprive Meta of the protection Congress saw fit to grant online service providers when they make decisions about the publication or de-publication of third-party content. To the contrary, application of Section 230(c)(1) as to the claims against Meta is entirely consistent with the breathing room interactive computer services are afforded under the CDA.

## II. Plaintiffs Have Not Pleaded Any Cognizable Anticompetitive Claims Against Meta

Even if plaintiffs' complaint had done more than attempt to "creatively" plead around Section 230(c)(1), it would still fail for the basic reason that plaintiffs have not pleaded any cognizable theory of liability under its "unfair" prong UCL claim. As this Court has repeatedly recognized, the California Supreme Court's decision in *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20

Cal. 4th 163, 186–87 (1999), supplies the relevant test for "determin[ing] whether a practice was unfair under Section 17200." *Gutierrez v. Wells Fargo & Co.*, 622 F. Supp. 2d 946, 953–54 (N.D. Cal. 2009). *Cel-Tech* requires plaintiffs to plead and prove "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Id.*; *see also Total Recall Techs. v. Luckey*, 2016 WL 1070656, at *5 (N.D. Cal. Mar. 18, 2016).

Plaintiffs who allege a conspiracy in restraint of trade must do so "with a high degree of particularity." *B & R Supermarket, Inc. v. Visa, Inc.*, 2016 WL 5725010, at *12 (N.D. Cal. Sept. 30, 2016); *G.H.I.I. v. MTS, Inc.*, 147 Cal. App. 3d 256, 265 (1983). As discussed in Meta's prior briefing, the relevant precedent here is *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), which is directly on point and confirms plaintiffs' claims fail.

Plaintiffs have not pleaded several core elements of an anticompetitive claim: market definition, market power, and harm to competition. "It is well accepted that the antitrust laws . . . were enacted for the protection of competition, not competitors." *Marsh v. Anesthesia Servs. Med. Grp., Inc.*, 200 Cal. App. 4th 480, 495 (2011). "Injury to a competitor is not equivalent to injury to competition; only the latter is the proper focus of antitrust laws." *Cel-Tech*, 20 Cal. 4th at 186. "A threshold step in any antitrust case is to accurately define the relevant market, which refers to 'the area of effective competition.'" *Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898, 1014 (N.D. Cal. 2021). Indeed, without defining the relevant market, antitrust plaintiffs cannot meet their burden "to prove market power," which "is a threshold consideration in an antitrust case and is the sine qua non of recovery." *Exxon Corp. v. Super. Ct.*, 51 Cal. App. 4th 1672, 1681 (1997). And "where an antitrust plaintiff alleges vertical restraints, facts must be pled showing 'some anti-competitive effect in the larger, interbrand market.'" *Marsh*, 200 Cal. App. 4th at 495. "[I]t is plaintiff's burden to make the required showing of a substantially adverse effect on competition in the relevant market." *Exxon Corp.*, 51 Cal. App. 4th at 1681.

Plaintiffs have not even tried to meet these requirements. Their allusion to the "online entertainment industry" is flatly insufficient to establish "the area of effective competition" for purposes of defining the relevant market, an indispensable pre-requisite to alleging "market power," which allegations are similarly absent from the complaint. *See* Am. Compl. ¶ 4; *Epic Games*, 559 F. Supp. at

1014.  And aside from a conclusory allegation that starting in "late 2018 or early 2019, the online adult entertainment industry" ceased to be a "vibrant, competitive market," Am. Compl. ¶ 4, plaintiffs make no attempt to show "a substantially adverse effect on competition in the relevant market," *Exxon Corp.*, 51 Cal. App. 4th at 1681.  Plaintiffs' comparison of web-traffic trends over a two-year period between OnlyFans and three cherry-picked (and unidentified competitors) of OnlyFans tells the Court and the defendants little about the competitive state of the "online adult entertainment industry," including the extent to which other competitors of OnlyFans (not mentioned in the complaint) have flourished and the overall competitive landscape of the market. And, of course, the complaint does nothing to delineate the precise contours of the "online adult entertainment industry" by which any "adverse effect" analysis must be adjudged.

Because Plaintiffs have not pleaded any cognizable theory of liability under its "unfair" prong UCL claim, Meta's motions do not implicate any conflict between the purposes of Section 230(c)(1) and its application to these claims.  The Court should apply Section 230(c)(1) to bar all of plaintiffs' claims.

## CONCLUSION

If the Court is not inclined to hold Meta's motions in abeyance pending the outcome of the anti-SLAPP discovery ordered in *JFF Publications LLC, d/b/a JustFor.Fans v. Facebook Operations, LLC*, Case No. 22-CIV-00782 (San Mateo Super. Ct.), the Court should grant Meta's motion to strike or dismiss.

| | | |
|---|---|---|
| 1 | DATED:  September 12, 2022 | KIRKLAND & ELLIS LLP |
| 2 | | |
| 3 | | Respectfully submitted, |
| 4 | | |
| 5 | | /s/ *K. Winn Allen* |
| 6 | | K. Winn Allen, P.C. (admitted *pro hac vice*) |
| | | Devin S. Anderson (admitted *pro hac vice*) |
| 7 | | KIRKLAND & ELLIS LLP |
| | | 1301 Pennsylvania Avenue, N.W. |
| 8 | | Washington, D.C. 20004 |
| | | United States |
| 9 | | Telephone: +1 202 389 5000 |
| 10 | | Facsimile: +1 202 389 5200 |
| | | winn.allen@kirkland.com |
| 11 | | devin.anderson@kirkland.com |
| 12 | | Michael P. Esser (SBN 268634) |
| 13 | | KIRKLAND & ELLIS LLP |
| | | 555 California Street |
| 14 | | San Francisco, CA 94104 |
| | | United States |
| 15 | | Telephone: +1 415 439 1400 |
| | | Facsimile: +1 415 439 1500 |
| 16 | | michael.esser@kirkland.com |
| 17 | | |
| | | *Attorneys for Defendants Instagram, LLC,* |
| 18 | | *Facebook Operations, LLC, and Meta Platforms, Inc.* |

**CERTIFICATE OF SERVICE**

On September 12, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all persons registered for ECF. All copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-1 have been so served.

/s/ *K. Winn Allen*
K. Winn Allen, P.C.