1 | **MILBERG COLEMAN BRYSON**
2 | **PHILLIPS GROSSMAN PLLC**
    David E. Azar (SBN 218319)
3 | 280 S. Beverly Drive, Suite PH
    Beverly Hills, California 90212
4 | Telephone: 1-866-252-0878
    dazar@milberg.com
5 |
6 | **EMERGE LAW GROUP, P.C.**
    Timothy L. Alger (SBN 160303)
7 | 100 Spectrum Center Drive, Suite 900
    Irvine, California 92618
8 | Telephone: 949-936-2610
    tim@emergelawgroup.com
9 |
10 | *Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| DAWN DANGAARD, et al., | Case No. 3:22-cv-01101-WHA |
|---|---|
| Plaintiffs, | **PLAINTIFFS' SUPPLEMENTAL BRIEF ADDRESSING ANTI-COMPETITIVE CONDUCT AND SECTION 230 OF THE COMMUNICATIONS DECENCY ACT** |
| vs. | |
| FENIX INTERNET LLC, et al. | |
| Defendants. | Hon. William Alsup |
| | [Submitted in support of Plaintiffs' Opposition to Defendants' Motions to Dismiss and Special Motions to Strike] |
| | Date: September 8, 2021
Time: 11:00 a.m.
Courtroom 12, 19th Floor |

**TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................................................1

II.  ARGUMENT .........................................................................................................................2

    A.   Section 230(c) Provides Immunity to Online Platforms Only for Content Created by Others, Not Unlawful Conduct by the Platform Itself .........................................2

    B.   Section 230 Does Not Preempt Laws that Impose Duties on Online Providers Independent of Mere Publication of User-Generated Content ................................4

    C.   The Express Goals of Section 230 Establish the Statute Was Not Intended By Congress to Impede Enforcement of Competition Laws .........................................7

    D.   The Supreme Court's Holdings and Reasoning Regarding the First Amendment and Antitrust Laws Confirm that Section 230 is Inapplicable to Plaintiffs' Claims ................................................................................................................................9

III. CONCLUSION.....................................................................................................................10

Pursuant to the Court's Order of September 8, 2022, Plaintiffs submit their supplemental brief addressing *whether Section 230 of the Communications Decency Act can immunize a party against allegations of anti-competitive conduct*.

## I. INTRODUCTION

Plaintiffs have found no case law under Section 230 immunizing a party against allegations of anti-competitive conduct. Rather, case law and statutory authority support a finding that no such immunity exists.

This conclusion is consistent with the preliminary views expressed by the Court at oral argument on September 8, 2022. The Court accurately summarized Plaintiffs' allegations as "saying that your people are being paid off with bribes through Hong Kong to allow pornography by OnlyFans, but not to allow equivalent pornography by [] them. That is a suppression of competition, and you're being paid off with money to do that."[1] (Tr. 38:12-16.)

The Court said that "it would turn the statute on its head to allow you to suppress a vibrant and competitive free market. So you're going to have to convince me that this statute should – that 230 gives you to the right to squash these poor women and their competition and – with the alleged bad guy here, who's Fenix." (Tr. 36:24-37:4.) "I have a hard time believing that the Section 230 of the Decency Act would immunize someone from that kind of anticompetitive behavior." (Tr. 34:2-4.) "I've looked hard for a case just like this with the anticompetitive -- I can't find one." (Tr. 36:3-5.)

Plaintiffs could not find one either. However, ample case law – including controlling decisions by the Ninth Circuit – and the express purpose of the statute itself establish that Defendants are not protected by Section 230 for the type of wrongdoing alleged in the First Amended Complaint. The Supreme Court's holdings regarding the First Amendment and antitrust laws provide further support that Section 230 is inapplicable to Plaintiffs' claims.

---

[1] "They're saying that you are part of a conspiracy that involves Fenix to suppress competition in this industry, and you have been paid off, your employees are being paid off to do it." (Tr. 36:11-14.)

As the Court noted, Section 230 has an express goal of "preserv[ing] the vibrant and competitive free market that presently exists for the Internet and other interactive computer services." Section 230 is designed to facilitate a wide range of voices on the internet and social media, by immunizing online intermediaries from liability for publishing content created by others. Just as the Sherman Act advances First Amendment interests, enforcing state and federal laws regulating unfair business practices by interactive computer services is consistent with the purpose of Section 230. To hold otherwise would reward online platforms for anti-competitive and other monopolistic business behavior, and provide no incentive for them to supervise their employees and agents and stop anti-competitive conduct when discovered.[2]

## II.  ARGUMENT

### A.  Section 230(c) Provides Immunity to Online Platforms Only for Content Created by Others, Not Unlawful Conduct by the Platform Itself

Section 230(c)(1) "protects websites from liability for material posted on the website by someone else." *Jane Doe No. 14 v. Internet Brands, Inc.*, 824 F.3d. 846, 850 (9th Cir. 2016) ("*Internet Brands*"). Plaintiffs allege that Meta improperly placed adult entertainment businesses that compete with OnlyFans on Meta's Dangerous Individuals and Organizations ("DIO") list. (First Amended Complaint ¶¶ 5, 62, 65, 68; *see also* Amended Hochman Decl. ¶ 9.) That conduct does not meet the basic statutory prerequisites: Meta created and posted its own content in its own internal database.

In any event, wrongfully designating those competing platforms as dangerous organizations had a *downstream result* of automatically adding non-terrorist content providers (including Plaintiffs and other adult performers who used services that competed with OnlyFans) to the DIO list (as terrorist sympathizers), which then had further

---

[2] It is the nature of bribery that personal interests can take precedence over corporate interests, with the corporation still being liable as discussed in Plaintiffs' opposition papers. That is one reason to reject as irrelevant Meta's argument that it would have no economic incentive as a company to participate in the scheme.

1 downstream effects, including hashing the content of innocent people to an anti-terrorism
2 database shared by a number of online companies. (Amended Hochman Decl. at ¶¶ 9-12,
3 56-62 & n.1.) Those downstream effects by the AI system reduced traffic to OnlyFans'
4 competing platforms and to Plaintiffs' content.

5 Accordingly, at issue is Meta's **own business conduct** and its **own content** (placing
6 non-terrorists on its internal DIO list to advance the interests of the Fenix Defendants).
7 That makes Section 230(c)(1) unavailable. *See, e.g., Lemmon v. Snap, Inc.*, 995 F.3d 1085,
8 1093 (9th Cir. 2021) (because plaintiff "'seek[s] to hold Snapchat liable for its own
9 conduct, principally for the creation of the Speed Filter,' § 230(c)(1) immunity is
10 unavailable"). Put differently, it is Meta's *act* of falsely designating that is at issue, along
11 with any communication involving that *act*.[3]

12 The Meta Defendants' hosting and regulation of third-party content on Instagram
13 (or Facebook) is incidental and irrelevant to Plaintiff's particular allegations. It is not the
14 gravamen of the complaint. Defendants' claim of Section 230 immunity reflect the
15 backwards reasoning that the Ninth Circuit rejected in *Internet Brands*. 824 F.3d. at 850.
16 There, the defendant essentially said, "You are tagging us with liability because we didn't
17 sufficiently monitor our website, and that falls within Section (c)(1)." The Ninth Circuit

---

[3] Analogy: John D. Rockefeller monopolized petroleum by acquiring all of the oil refineries. His actions did not fall into the scope of some free speech protection that is immunized simply because he had the right to speak words or entered into written contracts to carry out these wrongful anticompetitive acts. The speech is incidental to the wrongdoing. *See National Society of Professional Engineers v. U.S.,* 435 U.S. 679, 697-98 (1978) (holding that professional organization violated the Sherman Act by prohibiting competitive bidding by its members; "Just as an injunction against price fixing abridges the freedom of businessmen to talk to one another about prices, so too the injunction in this case must restrict the Society's range of expression on the ethics of competitive bidding."); *FTC v. Superior Court Trial Lawyers Association*, 493 U.S. 411, 430-31 (1990) (holding that boycott by court-appointed lawyers was an unlawful restraint of trade and rejecting argument that association was exercising First Amendment rights; "Every concerted refusal to do business with a potential customer or supplier has an expressive component. . . A rule that requires courts to apply the antitrust laws 'prudently and with sensitivity' whenever an economic boycott has an 'expressive component' would create a gaping hole in the fabric of those laws.").

said "No, we are tagging you with possible liability because you did not warn possible victims despite being aware of misuse of the site." Same here: Plaintiffs are accusing Meta of knowing that people were being falsely designated as terrorists (and of participating in that false designation), and Meta or its employees did this to victimize platforms that competed with OnlyFans. The ***legal duty that is being sued over is the intentional suppression of competition***, not editorial choices to allow or remove particular postings by third parties.[4]

### B. Section 230 Does Not Preempt Laws that Impose Duties on Online Providers Independent of Mere Publication of User-Generated Content

Section 230 was enacted by Congress because there was fear that common law republication liability would incentivize online services to avoid monitoring and policing the postings of their users. *Fair Housing Council v. Roommates.com, LLC* ("*Roommates*"), 521 F.3d 1157, 1163-64 (9th Cir. 2008) (*en banc*). Section 230 is "a provision enacted to protect websites against the evil of liability for failure to remove offensive content." *Id.* at 1174. The Ninth Circuit made crystal-clear in *Roommates* – which is indisputably the leading decision nationwide in defining what website operator behavior falls within Section 230(c)(1) – that it was "the intent of Congress to preserve the free-flowing nature of Internet speech and commerce *without unduly prejudicing the enforcement of other important state and federal laws.*" *Id*. at 1175 (emphasis added).

---

[4] Another way to distinguish Meta's argument is by an analogy to the Food Lion litigation of 20 years ago. ABC News planted people in the deli departments at grocery stores. ABC broadcast reports about old meat with false sell-by dates and dangerous potato salad. Food Lion sued, and won, on the theory that ABC's moles lied on their applications (by not disclosing that they were reporters) to get their jobs. Liability existed whether or not ABC ever broadcast anything about Food Lion. The liability arose from the acts undertaken in collecting the information used for the news report. *See Food Lion, Inc. v. Capital Cities/ABC, Inc*., 194 F.3d 55 (4th Cir. 1999). Courts draw this distinction all the time in invasion of privacy claims – it is the act of invading the victim's private place or taking the victim's private information that gives rise to liability. The later publication or use of that information might be considered in determining damages.

The Ninth Circuit in *Roommates* allowed claims alleging that a website violated federal and state fair housing laws to proceed because the online service's questions, filtering and search functions materially contributed to the allegedly unlawful content. Congress, the court said, "didn't intend to prevent the enforcement of all laws online." *Id.* The Ninth Circuit soundly rejected the contention being made by the Meta Defendants in this and the related state-court litigation that they are immune from laws of general application because they host user-created content.[5]

Courts throughout this Circuit and the country have consistently distinguished between theories of liability based on the mere publication of third-party information, which possibly triggers immunity under Section 230(c)(1), and **liability based on tort or statutory duties of the platform itself**.[6] In *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676 (9th Cir. 2019), the Ninth Circuit rejected the contention by two online booking services that the CDA preempted a Santa Monica city ordinance regulating short-term rentals. That the ordinance might compel the services to remove listings posted by users did not trigger Section 230:

> Even assuming removing certain listings may be the Platforms' most practical compliance option, allowing internet companies to claim CDA immunity under these circumstances would risk exempting them from most local regulations and would, as this court feared in *Roommates.com*, 521 F.3d at 1164, "create a lawless no-man's-land on the Internet." We hold that the

---

[5] It is worth noting that in *Roommates*, the Ninth Circuit explored in depth how the service (which matched potential roommates based on gender, sexual orientation and the presence of children in the home) collected information and how its search system worked. 521 F.3d at 1166-67. This debunks the contention made by the Meta Defendants in this and the related state litigation that courts do not look into the operation of a website in determining whether section 230(c)(1) applies, and simply dismiss cases against social media services as a matter of law at the pleading stage.

[6] For example, in the recent decision *Gonzalez v. Google LLC*, 2 F.4th 871 (9th Cir. 2021), the Ninth Circuit held that Section 230 did not immunize Google from claims that it provided material support to a terrorist group in violation of the Anti-Terrorism Act, 18 U.S.C. § 2333, by sharing advertising revenue with that group. *Id.* at 898-89.

Ordinance is not "inconsistent" with the CDA, and is therefore not expressly preempted by its terms.

Id. at 683.

The *Homeaway* court rejected the booking services' argument that Section 230's express goal of preserving "the vibrant and competitive free market that presently exists for the Internet . . . unfettered by Federal or State regulation" conflicted with the Santa Monica ordinance. The Ninth Circuit reiterated that Section 230 could not be read as rendering "unlawful conduct 'magically . . . lawful when [conducted] online,' and therefore 'giv[ing] online businesses an unfair advantage over their real-world counterparts.'" *Id.* (quoting *Roommates*, 521 F.3d at 1164-65, n.15).

Earlier this year, Judge Orrick declined to dismiss claims brought under the state Unfair Competition Law and the Consumers Legal Remedies Act alleging that a gaming site incentivized minors to purchase items for their avatars and then deleted the items, thereby causing more purchases and more profits. *Doe v. Roblox Corp.*, 2022 WL 1459568 (N.D. Cal. May 9, 2022). The claims, the court held, "do[] not seek to treat Roblox as a publisher or speaker of the user-generated content. Liability would instead attach for Roblox's own failure to disclose that it can delete previously purchased items with no warning." *Id.* at *8-9. In another recent case, Judge Orrick refused to dismiss UCL and right-of-publicity claims alleging that Spokeo misappropriated the identities of real people to market its information aggregation service. *Kellman v. Spokeo, Inc.*, 2022 WL 1157500 (N.D. Cal. April 19, 2022). "Spokeo is not alleged to merely host *user-generated* content, it is alleged to actively take content from other sources, curate it, and upload it to its site in a novel configuration for repurposed uses." *Id.* at *13 (original emphasis).

California appellate courts have followed the Ninth Circuit's lead and refused to apply Section 230 where the defendant is alleged to have violated laws that are independent of liability that might arise from republication of user-generated content. In *Bolger v. Amazon.com, LLC*, 53 Cal.App.4th 431 (2020), the Fourth District Court of Appeal held that the CDA did not bar strict product liability claims against an online marketplace. The

plaintiff's claims "are based on Amazon's role in the chain of production and distribution of an allegedly defective product," not its publication of third-party listings. *Id.* at 465. In *Lee v. Amazon.com, Inc.*, 76 Cal.App.4th 200 (2022), the First District Court of Appeal refused to dismiss claims that Amazon violated the Safe Drinking Water and Toxic Enforcement Act by not including Prop 65 warnings on third-party postings for skin-lightening face creams allegedly containing mercury. The warning requirement was not inconsistent with and preempted by the CDA, the court said; "imposing liability on Amazon for failing to comply with its own, independent obligations under Proposition 65 does not require treating Amazon as the publisher or speaker of third-party sellers' content." *Id*. at 259-60.

### C. The Express Goals of Section 230 Establish the Statute Was Not Intended By Congress to Impede Enforcement of Competition Laws

Section 230(b) states, in pertinent part:

> It is the policy of the United States –
>
> 1. To promote the continued development of the Internet and other interactive computer services and other interactive media; [and]
>
> 2. To preserve the *vibrant and competitive free market* that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation; . . .

47 U.S.C. § 230(b) (emphasis added).

Interpreting Section 230(c)(1) as giving interactive computer services the unfettered prerogative of engaging in unlawful or unfair business practices, including anti-competitive conduct, would conflict with these goals. Looking the other way while employees of a company operating two of the most popular social networks worldwide collaborate with an adult entertainment service to suppress traffic to that service's competitors would *impede* free market forces on the internet. It would not "preserve a vibrant and competitive free market," but would instead cause consolidation of online services and reduce competition and consumer choice.

1   Consistent with the statute's goals, ***courts have refused to allow those who operate websites from using the CDA to give them cover for improper business tactics***. The Tenth Circuit held in *FTC v. Accusearch Inc.*, 570 F.3d 1187 (10th Cir. 2009), that an online service that solicited and sold confidential telephone records was not immune under Section 230(c)(1). Plaintiffs' allegations in this litigation is activity that is difficult to distinguish from that in which was considered an unfair practice under Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a):

> Accusearch attempts to portray itself as the provider of neutral tools, stressing that it merely provided "a forum in which people advertise and request" telephone records. (Citation.) But that phrasing mischaracterizes the record. As explained above, Accusearch solicited requests for confidential information protected by law, paid researchers to find it, knew that the researchers were likely to use improper methods, and charged customers who wished the information to be disclosed. Accusearch's actions were not "neutral" with respect to generating offensive content; on the contrary, its actions were intended to generate such content.
>
> Accusearch is not entitled to immunity under the CDA.

Similarly, in *FTC v. LeadClick Media, LLC*, 838 F.3d 158 (2d Cir. 2016), the Second Circuit held that the defendant was not entitled to immunity under Section 230 because of its participation in creation and dissemination of deceptive advertisements disguised as news articles. That the defendant was an interactive computer service that used third-party content made no difference. *Id*. at 176-77 ("LeadClick is being held accountable for its *own* deceptive acts or practices—for directly participating in the deceptive scheme."). Similarly here, Defendants are accused of creating the unlawful content – a corrupted DIO that was used to advance the interests of OnlyFans and its owners and injure Plaintiffs, other performers, and adult content platforms that compete with OnlyFans.

### D. The Supreme Court's Holdings and Reasoning Regarding the First Amendment and Antitrust Laws Confirm that Section 230 is Inapplicable to Plaintiffs' Claims

First Amendment decisions by the United States Supreme Court provide further guidance on this issue. In *Associated Press v. United States*, 326 U.S. 1 (1945) ("*Associated Press*"), AP, a cooperative association of news organizations, was sued under the Sherman Act for adopting bylaws that (a) prohibited all members from selling news to non-members, and (b) granted each member the power to block non-members from joining the association. *Id.* at 4. The Supreme Court rejected AP's argument that it was exempt from antitrust enforcement under the First Amendment, holding that the publishers had "pooled their economic and news control power," and this was indistinguishable from other combinations to restrain trade in such industries as the sale of tiles, enameled iron ware, lumber, women's clothes, or motion pictures. *Id.* at 18-19.

Particularly valuable in *Associated Press* is the discussion majority opinion by Justice Black – one of the great champions of the First Amendment[7] – of how the Sherman Act actually *advanced* First Amendment interests:

> The First Amendment, far from providing an argument against application of the Sherman Act, here provides powerful reasons to the contrary. That Amendment rests on the assumption that the widest possible dissemination of information from diverse and antagonistic sources is essential to the welfare of the public, that a free press is a condition of a free society. Surely a command that the government itself shall not impede the free flow of ideas does not afford non-governmental combinations a refuge if they impose restraints upon that constitutionally guaranteed freedom. . . . Freedom to publish is guaranteed by the Constitution, but freedom to combine to keep others from publishing is not. . . . *The First Amendment affords not the*

---

[7] *See* Anthony Lewis, *Justice Black and the First Amendment*, 38 Ala. L. Rev. 289 (1986) ("No judge in our nearly 200 years of constitutional history has been so closely identified with the First Amendment as Hugo Black. It was his passion for more than three decades on the Supreme Court.").

> *slightest support for the contention that a combination to restrain trade in news and views has any constitutional immunity.*

*Id.* at 20 (emphasis added); *accord Citizen Publishing Co. v. U.S.*, 394 U.S. 131, 139-40 (1969) (quoting *Associated Press*).

The Supreme Court, the Ninth Circuit and other Circuits have recognized the distinction between "restrictions on protected expression" and "restrictions on economic activity." *Sorrell v. IMS Health, Inc.,* 564 U.S. 552, 567 (2011). "Whereas the First Amendment may prohibit the former, it 'does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech.'" *American Society of Journalists and Authors, Inc. v. Bonta*, 15 F.4th 954, 961 (9th Cir. 2021) (quoting *Sorrell*) (rejecting First Amendment-based challenge by freelance writers and photographers to California's AB 5, which established standards for independent contractors).

Accordingly, enforcing state and federal laws regulating unfair business practices by interactive computer services is consistent with the purpose of Section 230.

## III. CONCLUSION

For the foregoing reasons, the Court should find that Section 230 of the Communications Decency Act does not immunize a party against allegations of anti-competitive conduct, and deny Defendants' Motions to Dismiss and Special Motions to Strike based on that premise.

DATED: September 12, 2022

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**

*/s/ David E. Azar*
DAVID E. AZAR

**EMERGE LAW GROUP, P.C.**
TIMOTHY L. ALGER

*Attorneys for Plaintiffs*