QUINN EMANUEL URQUHART & SULLIVAN, LLP
Shon Morgan (Bar No. 187736)
(shonmorgan@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Victoria B. Parker (Bar No. 290862)
(vickiparker@quinnemanuel.com)
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

John F. O'Sullivan (Fla. Bar No. 143154)
(johnosullivan@quinnemanuel.com)
Jason D. Sternberg (Fla. Bar No. 72887)
(jasonsternberg@quinnemanuel.com)
Joshua T. Fordin (Fla. Bar No. 125219)
(joshuafordin@quinnemanuel.com)
2601 South Bayshore Drive, 15th Floor
Miami, Florida 33133
Telephone: (305) 402-4880

*Attorneys for Defendants Fenix International Limited,
Fenix Internet LLC, and Leonid Radvinsky*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DAWN DANGAARD, a/k/a ALANA EVANS; KELLY GILBERT, a/k/a KELLY PIERCE; JENNIFER ALLBAUGH, a/k/a RUBY, and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>INSTAGRAM, LLC; FACEBOOK OPERATIONS, LLC; META PLATFORMS, INC.; FENIX INTERNATIONAL INC.; FENIX INTERNET LLC; LEONID RADVINSKY, and JOHN DOES 1-10,<br><br>Defendants. | CASE NO. 3:22-cv-01101-WHA<br><br>**FENIX INTERNATIONAL LIMITED, FENIX INTERNET LLC, AND LEONID RADVINSKY'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br>Date:        November 16, 2022<br>Time:        11:30 a.m.<br>Location:   Courtroom 12, 19 Floor<br>Judge:      Hon. William Alsup<br><br>Second Amended Class Action Complaint Filed: September 27, 2022 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 16, 2022 at 11:30 a.m., or as soon thereafter as this matter can be heard before the Honorable Judge William Alsup in Courtroom 12, Nineteenth Floor, United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Fenix International Limited ("Fenix International"), Fenix Internet LLC ("Fenix Internet"), and Leonid Radvinsky ("Mr. Radvinsky," and, collectively with Fenix International and Fenix Internet, the "Fenix Defendants") will and hereby do move pursuant to Federal Rules of Civil Procedure 12(b)(6) to dismiss Plaintiffs' claims against the Fenix Defendants in Plaintiffs' Second Amended Complaint. The Fenix Defendants' Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the proposed order submitted herewith, all exhibits and other papers on file in this action, such other evidence and argument as may be presented at or before the hearing on this motion, and all matters of which the Court may take judicial notice.

DATED:  October 11, 2022

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By:   */s/ Jason D. Sternberg*

Shon Morgan (Bar No. 187736)
(shonmorgan@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Tel: (213) 443-3000 / Fax: (213) 443-3100
Victoria B. Parker (Bar No. 290862)
(vickiparker@quinnemanuel.com)
50 California Street, 22nd Floor
San Francisco, California 94111
Tel: (415) 875-6600 / Fax: (415) 875-6700
John F. O'Sullivan (Fla. Bar No. 143154)
(johnosullivan@quinnemanuel.com)
Jason D. Sternberg (Fla. Bar No. 72887)
(jasonsternberg@quinnemanuel.com)
Joshua T. Fordin (Fla. Bar No. 125219)
(joshuafordin@quinnemanuel.com)
2601 South Bayshore Drive, 15th Floor
Miami, Florida 33133
Telephone: (305) 402-4880

*Attorneys for Defendants Fenix International Limited, Fenix Internet LLC, and Leonid Radvinsky*

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule 5-1, I hereby certify that, on October 11, 2022, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system and email.

DATED:  October 11, 2022

By:   */s/ Victoria B. Parker*
Victoria B. Parker

1

## TABLE OF CONTENTS

Page

2

3   I.    INTRODUCTION & BACKGROUND.......................................................................... 1

4   II.   ARGUMENT ........................................................................................................... 2

5         A.    The SAC Fails to State a Claim that is Plausible on Its Face................................... 2

6               1.    Plaintiffs Lack a Reasonable Evidentiary Basis for Their Claims................ 2

7               2.    The Anonymous Email Lacks Indicia of Reliability And Does Not
                      Support Plaintiffs Claims............................................................................ 4
8
                3.    The BBC Article is Based on More Anonymous Sources and Self-
9                     Serving Statements...................................................................................... 7

10        B.    Plaintiffs' SAC Fails to Rectify the Deficiencies Identified in the Court's
                Order Re Motions to Dismiss. ................................................................................. 8
11
                1.    Plaintiffs Ignored the Court's Instructions to Identify the Adult
12                    Entertainment Platforms At Issue. .............................................................. 8

13              2.    Plaintiffs Have Ignored the Court's Instructions to Plead Sufficient
                      Detail Describing Their Specific Damages. ................................................ 9
14
          C.    Plaintiffs Failed to Allege Any Additional Facts or Misconduct Pertaining
15              to Mr. Radvinsky. ................................................................................................... 11

16  III.  CONCLUSION ....................................................................................................... 14

17

18

19

20

21

22

23

24

25

26

27

28

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

**Cases**

3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................... 2, 4, 7, 12, 13

4

5

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007) ............................................................................ 7

6

*Bell Atl. Co. v. Twombly*,
550 U.S. 544 (2007) ........................................................................... 1, 2, 7, 13

7

8

*BMA LLC v. HDR Glob. Trading Ltd.*,
No. 20-cv-03345-WHO, 2021 WL 949371 (N.D. Cal. Mar. 12, 2021) ........................... 3, 4, 11

9

*Celgard, LLC v. Shenzen Senior Tech. Material Co. (US) Rsch. Inst.*,
No. 19-cv-05784-JST, 2020 WL 7392909 (N.D. Cal. July 23, 2020) ............................ 3

10

*City of Livonia Emp.'s Ret. Sys. v. Boeing Co*,
306 F.R.D. 175 (N.D. Ill. 2014) ........................................................................ 8

11

12

*Crosse v. BCBSD, Inc.*,
836 A.2d 492 (Del. 2003) .............................................................................. 14

13

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) ........................................................................ 5, 11

14

15

*Higginbotham v. Baxter Int'l, Inc.*,
495 F.3d 753 (7th Cir. 2007) ............................................................................ 5

16

*In re Century Aluminum Co. Sec. Litig.*,
729 F.3d 1104 (9th Cir. 2013) ....................................................................... 10

17

18

*In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*,
379 F. Supp. 2d 348 (S.D.N.Y. 2005) ............................................................... 12

19

*In re Silicon Storage Tech., Inc.*,
No. C-05-0295 PJH, 2006 WL 648683 (N.D. Cal. Mar. 10, 2006) ........................... 6

20

21

*In re Text Messaging Antitrust Litig.*,
630 F.3d 622 (7th Cir. 2010) ........................................................................ 13

22

*Mizzaro v. Home Depot, Inc.*,
544 F.3d 1230 (11th Cir. 2008) ........................................................................ 6

23

24

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000) ............................................................................ 6

25

*Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*,
380 F.3d 1226 (9th Cir. 2004) ....................................................................... 6, 7

26

27

*Somers v. Apple, Inc.*,
729 F.3d 953 (9th Cir. 2013) ......................................................................... 12

28

*Szabo Food Serv., Inc. v. Canteen Corp.*,
   823 F.2d 1073 (7th Cir. 1987) ........................................................................... 4

*Walker v. S.W.I.F.T. SCRL*,
   517 F. Supp. 2d 801 (E.D. Va. 2007)................................................................. 8

*Whitaker v. Tesla Motors, Inc.*,
   985 F.3d 1173 (9th Cir. 2021) ........................................................................... 4

*Wietschner v. Monterey Pasta Co.*,
   294 F. Supp. 2d 1102 (N.D. Cal. 2003) .......................................................... 6, 7

**Rules and Regulations**

Fed. R. Civ. P. 8............................................................................................................ 4

Fed. R. Civ. P. 11.......................................................................................................... 8

Fed. R. Civ. P. 12(b)(6)................................................................................................. 4

Fed. R. Civ. P. 41(b) ..................................................................................................... 9

**Additional Authorities**

ABA Routing Number Lookup, *American Bankers Association*
   https://routingnumber.aba.com/Search1.aspx  (last visited Oct. 10, 2022) ................................. 6

I.      **INTRODUCTION & BACKGROUND**

Plaintiffs' previous complaint, the First Amended Class Action Complaint (the "First Amended Complaint," ECF No. 4), alleged a global conspiracy wherein the Fenix Defendants—owners and operators of OnlyFans.com—allegedly conspired with individuals from Meta to "shadow ban" tens of thousands of adult performers who were affiliated with websites that competed with OnlyFans.  But the First Amended Complaint contained virtually no factual allegations to support this alleged conspiracy.  Putting aside Plaintiffs' speculation based on "information and belief," the First Amended Complaint's primary allegation was that social media content filtering applied by Meta disproportionately harmed the businesses of OnlyFans' competitors—a phenomenon which, if true, could have been caused by various factors other than those alleged upon information and belief.  In response to Defendants' dismissal arguments, the Court required Plaintiffs to plead their "best case" and to include all well-pled allegations that might nudge the conspiracy "from conceivable to plausible."  However, for the reasons set out below, Plaintiffs' Second Amended Class Action Complaint (the "SAC") is no more plausible than the First Amended Complaint and should be dismissed.

Now that Plaintiffs have pled their "best" case, it is clear that their claims are not based on any "plausible" allegations or theories, but instead on implausible speculation and unwarranted deduction.  Plaintiffs effectively concede the lack of support for their claims in the opening paragraph of the SAC, which states that the primary bases for the complaint are anonymous sources.  The SAC's opening paragraph also concedes the lack of existing evidentiary support for the allegations, stating that Plaintiffs require "a reasonable opportunity for further investigation or discovery" before being able to claim "evidentiary support" for their allegations.  The SAC therefore runs afoul of the teachings of *Bell Atl. Co. v. Twombly*—that a complaint must allege plausible facts that give rise to a "reasonable expectation that discovery will reveal evidence" to prove the gravamen of the complaint.  550 U.S. 556 (2007).

The SAC fails to establish any such reasonable expectation.  The new allegations supporting Plaintiffs' claims rely solely on supposition and anonymous sources consisting of the following: (i) an anonymous email purporting to show payments to three Meta executives through alleged wire

transfers to trust fund accounts in the Philippines; (ii) an article published by the BBC that parrots the allegations set forth in a related lawsuit filed by Plaintiffs' counsel and relies on anonymous sources to suggest that one unidentified person was wrongfully shadow banned; and (iii) another anonymous email—which is not attached to the SAC—containing an alleged list of 21,000 Instagram accounts and 95 adult entertainment platforms purportedly identified for blacklisting. Plaintiffs cite no other material information or witnesses in support of their allegations.

As explained below, anonymous emails without any supporting detail to assess the credibility of the source and information contained in those emails fail to advance Plaintiffs' allegations from speculative to plausible. Beyond this fundamental defect, Plaintiffs have failed to properly address the Court's instructions that the SAC include a list of the parties harmed by the alleged conspiracy, information to support reasonable inferences of misconduct, and allegations evidencing their injuries. And the SAC fails to sufficiently allege any misconduct on the part of Radvinsky, instead speculating that he "must" have been involved in the alleged conspiracy because he stood to gain by it. Due to these failings, the SAC should be dismissed, with prejudice.[1]

## II.   ARGUMENT

### A.   The SAC Fails to State a Claim that is Plausible on Its Face.

#### 1.   Plaintiffs Lack a Reasonable Evidentiary Basis for Their Claims.

Plaintiffs' allegations in the SAC fail to nudge "their claims across the line from conceivable to plausible." (ECF No. 71, 2:1-2.)[2] In ordering Plaintiffs to plead their best case, the Court required Plaintiffs to allege all the information that reasonably supports their claims so the Court can determine whether the inferences in the SAC are reasonable given the allegations. (ECF No. 71,

---

[1]     The Fenix Defendants note that their motion to dismiss for lack of personal jurisdiction is being held in abeyance by the Court pending jurisdictional discovery (*see* ECF No. 65).

[2]     As explained in *Iqbal*, the applicable "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing *Twombly*, 550 U.S. at 556). Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557).

2:3-8.)   Plaintiffs attempted to comply with the Court's Order by removing the phrase "on information and belief" from the majority of their allegations in the SAC.   But Plaintiffs' deletion of the phrase "on information and belief" is simply a change in language, not the result of any newfound conviction in the strength of their allegations founded on known facts, as evidenced by the qualification included in the opening paragraph of the SAC:

> Plaintiffs allege upon personal knowledge, or based upon the investigation of counsel, *after an inquiry reasonable under the circumstances*, and review of information provided anonymously that a reasonably [sic] inquiry under the circumstances indicate has indicia of authenticity, that the following factual contentions have evidentiary support, or where stated, *will likely have evidentiary support after a reasonable opportunity for further investigation or discovery*.

(SAC, 1:16-20 (emphases added).)   In other words, the SAC merely deleted the phrase "on information and belief" and replaced it with "after an inquiry reasonable under the circumstances." This paragraph was incorporated into each allegation in the SAC, except for those that Plaintiffs continue to allege on information and belief.[3]   But this global hedge "undermines [the] plausibility of [their] allegations" and "creates an inference that [Plaintiffs] likely lack[] knowledge of the underlying facts . . ., and [are] instead engaging in speculation."   *Celgard, LLC v. Shenzen Senior Tech. Material Co. (US) Rsch. Inst.*, No. 19-cv-05784, 2020 WL 7392909, at *4-5 (N.D. Cal. July 23, 2020) (dismissing SAC because all of the plaintiff's allegations were made on information and belief) (internal citations omitted).

Plaintiffs cannot satisfy their pleading burden by relying on speculative allegations and a request for discovery.   For example, in *BMA LLC v. HDR Glob. Trading Ltd.*, a group of cryptocurrency traders sued a trading platform for losses they suffered as a result of what they believed was a price manipulation scheme by the trading platform.   No. 20-cv-03345, 2021 WL 949371, at *1 (N.D. Cal. Mar. 12, 2021).   Although the group's complaint was 237 pages, consisting of 618 paragraphs and 18 exhibits, the court found that it failed to state a claim because the price

---

[3]   Despite Plaintiffs' statement that the *only* information and belief pleadings are those allegations that would be uniquely in the possession of the Fenix Defendants, as discussed below, Plaintiffs also plead on information and belief that the BBC is reliable and has sufficient editorial guidelines.  The Fenix Defendants do not have unique knowledge of the BBC's editorial guidelines.

manipulation claims were offered on information and belief without any explanation that would make the allegations plausible.  *Id.*  The plaintiffs argued that the cryptocurrency market was notoriously opaque, which hindered their ability to plead direct evidence of their claims.  *Id.* at *6. Nonetheless, the court found that what the plaintiffs had alleged did not allow the court to "draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged."  *Id.* (citing *Iqbal*, 556 U.S. at 678).

Here, Plaintiffs rely on two anonymous emails and a BBC article—which itself relies on Plaintiff Evans and her attorney as sources—to allege a global conspiracy that they claim discovery will "likely" reveal.  These allegations are just like those in *BMA*—they fail to plead a plausible case in light of common sense.  Like the court found in that case, "[s]imply pointing to possible motive, means, and opportunity, without more, is not enough to cross the plausibility line."  *Id.* at *9.  The fact that Plaintiffs believe that they may learn information that supports their claims in discovery is insufficient to satisfy the Court's pleading standards.  *See Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1083 (7th Cir. 1987) ("The principal function of the 1983 amendment to Rule 11 was to add the requirement of adequate investigation before filing a complaint.  It is not permissible to file suit and use discovery as the sole means of finding out whether you have a case.").  That is, discovery cannot be used as a tool to cure a facially insufficient pleading.  *See Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021) ("Our case law does not permit plaintiffs to rely on anticipated discovery to satisfy Rules 8 and 12(b)(6); rather, pleadings must assert well-pleaded factual allegations to advance to discovery.").

### 2. The Anonymous Email Lacks Indicia of Reliability And Does Not Support Plaintiffs Claims.

Plaintiffs allege that after they filed their original Complaint in this case, their counsel received—through a "confidential tip line"—a "document titled 'Follow the Money.'" (SAC ¶ 77.) Plaintiffs further allege that this document shows that Fenix International Limited wired money to three individuals "with high positions at Meta: Nicholas Clegg; Nicola Mendelsohn; and Cristian Perrella." (SAC ¶ 79.)  This, Plaintiffs allege, shows "bribe" payments from the Fenix Defendants to the Meta Defendants to pay for "hurting" competitors of OnlyFans. (SAC ¶¶ 78-79, 84.)  But the

email—which has been redacted to remove the sender's identity and the date the email was sent—lacks indicia of reliability, credibility, and truthfulness and falls short of establishing that the allegations of the SAC are plausible.

The shortcomings of this purported "evidence" are self-evident: without the identity of the person who sent the email, it is impossible to assess the believability of the contents of the email. The Court is unable to determine whether the sender is a trustworthy person who is reporting on authentic information lawfully obtained, or someone with an axe to grind against Defendants who is making up information to inflict harm. *See, e.g., Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 757 (7th Cir. 2007) ("It is hard to see how information from anonymous sources could be deemed 'compelling' or how we could take account of plausible opposing inferences. Perhaps these confidential sources have axes to grind."). But that is not the only failing: there is no explanation about *where* the underlying information came from, *when* the information was obtained, *how* the information was obtained, *who* the alleged confidential source obtained the information from, or *why* the alleged confidential source is in possession of this information. In other words, there is virtually no basis in fact to assess the credibility of the underlying information within the email.

Plaintiffs could have provided at least *some* of this information to this Court. *See Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014) ("[P]laintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'" (citing *Twombly*, 550 U.S. at 555)). While Plaintiffs, of course, have information regarding the identity of the sender of the email and the date of receipt of the email, they chose to redact this information without providing *any* explanation for their decision to do so. Without this information, Plaintiffs present no indicia the author had personal knowledge as to the truth of the information in the email or that the source is otherwise credible.

Moreover, the email itself lacks facial credibility. Plaintiffs allege that one of the wire transfers was purportedly sent to Cristian *Perrella*, yet the wire transfer purportedly in the anonymous email was sent to "Cristian *Peralta* Trust." (Compare SAC ¶ 83 with SAC Ex. D.) Further, while Plaintiffs allege that the email should be accepted as true because the ABA Banking numbers match the numbers associated with the three banks involved, (SAC ¶ 77), ABA Banking

numbers are publicly available information[4]—meaning that anyone could search online for such banking information and include it in an email like the one in question.[5]

The Fenix Defendants have been unable to locate a case regarding tortious interference of contract—let alone a tortious interference claim on behalf of a putative class—where a Court allowed a complaint to proceed based on anonymous sources.  Compared to circumstances where courts do permit complaints based on anonymous sources—such as cases involving the Private Securities Litigation Reform Act of 1995 ("PSLRA")—the SAC falls well below the standard for permitting pleadings based on anonymous sources.  For example, in pleading fraud under the PSLRA, plaintiffs may rely on anonymous sources for information, so long as they plead "corroborating details" when allegations are based on non-public information.  *In re Silicon Storage Tech., Inc.*, No. C-05-0295 PJH, 2006 WL 648683, at *10 (N.D. Cal. Mar. 10, 2006).  "[P]ersonal sources of information relied upon in a complaint should be 'described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged.'"  *Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*, 380 F.3d 1226, 1233 (9th Cir. 2004) (quoting *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000)).[6]  No such corroborating details are present in the SAC.  The issue is not just the level of detail required to state a claim on an intentional tort like the fraud-based contractual interference scheme alleged here.  Where the critical allegations rest solely on an unnamed source, plausibility requires details establishing why the source should be believed.  *See, e.g. Wietschner v. Monterey Pasta Co.*, 294 F.

---

[4]   *See* ABA Routing Number Lookup, American Bankers Association, https://routingnumber.aba.com/Search1.aspx (last visited Oct. 11, 2022).  The ABA Routing Number Online Lookup allows any individual to lookup a financial institution's routing number.

[5]   Although the Fenix Defendants believe that this case should be dismissed for all the reasons set forth in this motion, if this matter did proceed past the dismissal stage, discovery would show that Fenix International has never had a bank account with Barclays, which is the bank identified as the transferor in the email attached to the SAC.

[6]   Likewise, in *Mizzaro v. Home Depot, Inc.*, the Eleventh Circuit considered how to evaluate a PSLRA complaint where confidential witness statements formed "one of the main building blocks of the amended complaint."  544 F.3d 1230, 1239-40 (11th Cir. 2008).  The court found that a securities-fraud complaint could rely on anonymous sources where, unlike here, the complaint "unambiguously provides in a cognizable and detailed way the basis of the whistleblower's knowledge."  *Id.*

Supp. 2d 1102, 1112 (N.D. Cal. 2003) (finding on a motion to dismiss a PSLRA claim that "allegations attributed to an unnamed source must be 'accompanied by enough particularized detail to support a reasonable conviction in the informant's basis of knowledge'").

Nor does Plaintiffs' reliance on these unsubstantiated allegations satisfy the pleading standards under *Twombly* and *Iqbal*. Those cases require a plaintiff to "provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Plaintiffs have not provided any detail about who their confidential source is or why that person should be believed or would credibly be in possession of the purported wire transfer information. The anonymous email therefore does not help nudge the SAC into the land of plausibility.

### 3. The BBC Article is Based on More Anonymous Sources and Self-Serving Statements.

Plaintiffs also attach an article published by the BBC (the "BBC Article") to the SAC as support for certain of their allegations. (SAC ¶ 2(a).) But the BBC Article is largely based on self-serving quotes from Plaintiffs and their counsel, along with the naked repetition of unsubstantiated allegations made in this very litigation. It is not factual evidence.

To the extent the Plaintiffs rely on the BBC Article for the statements of anonymous sources, the article should not be relied on by the Court for the same reason as the anonymous email—there are no details supporting why any anonymous sources should be credited. *See Oracle Corp.*, 380 F.3d at 1233. Plaintiffs allege "on information and belief" that the BBC editors believed the anonymous sources and that "on information and belief" BBC editorial guidelines require more than one source of corroboration. (SAC ¶ 2(a).) But Plaintiffs have failed to set forth any allegation establishing the credibility of the underlying source of the information. It is the Plaintiffs' obligation to establish that the underlying source is sufficiently credible so as to warrant a conclusion of plausibility; Plaintiffs cannot satisfy this burden through rote allegations published by the BBC which simply reiterate Plaintiffs' own statements.

Nor do the allegations about what anonymous sources allegedly told the BBC suffice to

satisfy Plaintiffs' pleading burden.  Federal courts have held that "[r]eliance on anonymous sources is particularly troublesome under Rule 11 because unless the source is later identified, there is no way to verify the reliability of the information."  *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 807 (E.D. Va. 2007) (Ellis, J.).  In *Walker*, the court considered whether a newspaper article about the allegations in the complaint was appropriately used by plaintiffs to fill holes in the complaint. *Id.* at 806-807.  In answering that question in the negative, the court held that a contrary ruling "would allow parties to circumvent Rule 11's duty to conduct 'an inquiry reasonable under the circumstances,' Fed. R. Civ. P. 11, and would serve to reduce that duty to the mere purchase of a newspaper."  *Id.*  While the Court acknowledged that there may be certain circumstances where reference to a newspaper may be appropriate—such as when the newspaper contains reliable information such as the closing price of a corporation's stock or weather conditions—when an article relies largely on anonymous sources and contains contradictory information, reliance on the article to establish the plausibility of the allegations is unreasonable.  *Id.*  The same reasoning applies with full force here.[7]

### B.  Plaintiffs' SAC Fails to Rectify the Deficiencies Identified in the Court's Order Re Motions to Dismiss.

In its Order requiring Plaintiffs to amend their pleading due to its deficiencies, the Court also required Plaintiffs to include allegations regarding the following matters in the amended pleading: (1) identification, by name, of "all adult entertainment platforms allegedly included in Meta Defendants' terrorist lists," and (2) allegations regarding the extent of their injuries.  (ECF No. 71.) Plaintiffs failed to address these two matters.

#### 1.  Plaintiffs Ignored the Court's Instructions to Identify the Adult Entertainment Platforms At Issue.

---

[7]      In a case involving the PSLRA, one court found that plaintiffs' filing of the original complaint before interviewing their one and only confidential source, who was critical to the case, and reliance solely on the interviews of investigators—and not counsel—was inappropriate. *City of Livonia Emp.'s Ret. Sys. v. Boeing Co*, 306 F.R.D. 175, 180-81 (N.D. Ill. 2014). As the court explained, "[a]lthough an attorney is certainly entitled to rely upon information obtained from others, including investigators . . ., there must be reasonable cause to trust the accuracy of that information, and a lawyer may not simply put his head in the sand and forgo any attempt to verify the information." *Id.* at 181.

The Court instructed Plaintiffs "to identify, by name, *all* adult entertainment platforms allegedly included in Meta defendants' terrorist lists." (ECF No. 71, 3:1-2 (emphasis added).)  While the Plaintiffs attach to the SAC Exhibit C, which is allegedly an excerpt from another email sent to the "confidential tip line" that shows a list of adult entertainment platforms, nowhere do they allege that this list represents all of the platforms allegedly included in the terrorist list.  Instead, Plaintiffs state that these platforms "appear[] to be the platforms targeted by the scheme" and further state that Plaintiffs "believe that discovery will demonstrate this list to be the AE Platforms that had been targeted by the scheme at some point in time." (SAC ¶ 68 (emphasis added).)  But once again, Plaintiffs have included no supporting details that would allow the Court to assess the plausibility of whether this purported list shows the AE platforms included on the Meta Defendants' terrorist lists.

Plaintiffs have further ignored the Court's instructions to plead, "with as much cure as possible."  (ECF No. 71, 2:28.)  Although the SAC relies on a purported list of 21,000 Instagram accounts that its expert Jonathan Hochman concluded were "targeted" by Defendants, (SAC ¶ 10(a)), Plaintiffs have failed to attach this list to the SAC or otherwise provide it to the Court (or to undersigned counsel).  These failures to comply with the Court's Order to name all platforms allegedly included and to plead with as much cure as possible are grounds for dismissal.  *See* Fed. R. Civ. P. 41(b) ("If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it.").

> **2.      Plaintiffs Have Ignored the Court's Instructions to Plead Sufficient Detail Describing Their Specific Damages.**

The SAC should also be dismissed for failure to comply with the Court's requirement that Plaintiffs "provide more detailed allegations regarding the extent of their injuries."  (ECF No. 71, 2:25-26.)[8]  As to Plaintiff Allbaugh's damages, the SAC alleges that, "starting in 2018, she has experienced unexplained deletions of posts on Instagram, and unexplained loss of distribution of

---

[8]      The SAC does not allege that the performers who were allegedly injured by the purported scheme worked exclusively for competitors of OnlyFans.  Absent such an allegation, the Fenix Defendants' alleged scheme would have harmed not only competitors but the Fenix Defendants themselves.

her posts to followers, as well as reduced search engine traffic. . . She has experienced a loss of revenue due to the loss of social media visibility."  (SAC ¶ 110.)  These allegations fare no better than the allegations by Evans that the Court previously deemed insufficient: "that her lack of viewership on Instagram '*adversely affected* [her] revenue.'"  (ECF No. 71, 2:23-24.)  By simply recasting the same damage allegations in different words, Allbaugh has failed to provide more detailed allegations regarding her injuries.

The damage allegations of Plaintiffs Evans and Pierce fare no better.  As to Evans, the SAC alleges, "The loss of social media reach has adversely affected Evans' revenue, which remains lower than it had been in previous years."  (SAC ¶ 102.)  But missing from the allegation is any indication of *how* much lower.[9]  In contrast, Pierce does provide detail in the SAC regarding her earnings, stating that "[a]s a consequence of these actions by Instagram and Snap, Pierce's revenue from kellysdreamhouse.com has been steadily declining, from $74,000 in 2020 to $61,000 in 2021, to only $43,000 in the first eight months of 2022."  (SAC ¶ 108.)  But $43,000 in 8 months amounts to $5,375 per month or $64,500 per year, which means Pierce is on track to earn *more* money in 2022 than she did in 2021 and to earn nearly the same amount that she earned in 2020.

The SAC also alleges that OnlyFans itself was affected by the "actioning" and "shadow banning," just to a lesser extent—how much lesser is unclear.  This suggests that the plausible explanation for a decrease in Plaintiffs' revenues was not a global conspiracy scheme but the result of some other non-nefarious reasons, such as their failure to use a more successful platform.  (SAC ¶ 56 ("But the removals had a much smaller effect on OnlyFans and the Radvinsky-affiliated sites. While some AE Providers who worked with *both OnlyFans and other AE Platforms* were deleted or hidden. . ." (emphasis added)).)

---

[9]     As the Court considered at the hearing on Defendants' Motions to Dismiss: "[I]t says 'but many of her posts are viewed.' Now, is it possible that – her posts were served to all 300,000, but only a few of them chose to look at it?"  (Hrg. Tr. 28:22-25, Sept. 9, 2022.)  There are, of course, many reasons why a performer's viewership could have gone down.  The SAC fails to meaningfully address any of these alternatives. *See In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) ("When faced with two possible explanations . . . plaintiffs cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation.").

Plaintiffs' allegations confuse correlation with causation.  Rather than it being plausible that the alleged conspiracy "destroy[ed]" the financial livelihood of Pierce, the allegation appears to show a performer's income fluctuating year by year due to market demand.  (SAC ¶ 8.)  *See Eclectic Props. E.*, 751 F.3d at 996 ("When considering plausibility, courts must also consider an 'obvious alternative explanation' for defendant's behavior.").  While the failure to properly allege damages constitutes an independent ground for dismissal of the SAC, the various defects in the SAC combine to render the SAC wholly defective.

### C.   Plaintiffs Failed to Allege Any Additional Facts or Misconduct Pertaining to Mr. Radvinsky.

While the SAC fails to allege a plausible conspiracy among the Defendants, the shortcomings of Plaintiffs' allegations against Radvinsky are particularly apparent.  The allegations against Radvinsky can be summed up as follows: Because the Plaintiffs believe that the purported conspiracy occurred based on anonymous sources, Radvinsky must have also participated in the conspiracy because he stood to personally gain by having the company he acquired in 2018 outperform its competitors.  But the SAC contains no plausible allegations of specific acts in which Radvinsky supposedly engaged (in fact, the anonymous email and newly-referenced "evidence" do not mention or reference Radvinsky in any way) and instead attempts to weave together allegations of motive with speculation of what Plaintiffs would hope to learn during discovery to build a plausible claim against Radvinsky.  *See BMA*, 2021 WL 949371, at *9 ("Simply pointing to possible motive, means, and opportunity, without more, is not enough to cross the plausibility line.").

The SAC contains background allegations about Radvinsky and other allegations that lump him together with other actors but wholly fails to plausibly allege any misconduct committed by Radvinsky himself.  For example, the SAC groups Fenix International, Fenix Internet, and Radvinsky together thirteen times as the "Radvinsky Defendants" and makes certain blanket allegations about these parties without providing any specific details as to each Defendant.  (SAC ¶¶ 10, 19, 20 (twice), 28, 72, 98, 118, 124, 126, 128, 131, 136.)  The SAC also alleges Radvinsky's acquisition and ownership of OnlyFans and other websites, and makes numerous vague references to "Radvinsky-affiliated" websites, to assert that those websites allegedly benefited from

1   experiencing fewer "takedowns" on social media as compared to their competitors without any

2   factual allegations to support these claims.  (*Id.* ¶¶ 2, 18, 30, 39, 42, 56, 60, 65, 69, 92, 93, 97, 109,

3   118.)

4          Moreover, the SAC includes allegations regarding the "increase in content removed for

5   Adult Nudity and Sexual Activity in Q2 2018"—*before* Radvinsky's acquisition of OnlyFans.  (*Id.*

6   ¶ 55).  While Plaintiffs allege this data supports the inference that one or more alleged conspirators

7   tested the scheme and prepared to implement it in advance of the October 2018 acquisition, this

8   theory is the type of conspiratorial speculation that the Federal Rules protect against.  *See Iqbal*, 556

9   U.S. at 663 ("A claim has facial plausibility when the pleaded factual content allows the court to

10  draw a reasonable inference that the defendant is liable for the misconduct.").  The fact that the

11  putative class experienced content removal on social media *before* Radvinsky acquired OnlyFans

12  and *before* Radvinsky had influence over OnlyFans actions or finances supports a reasonable

13  inference that Radvinsky had *nothing* to do with any alleged scheme, not the opposite.  *See Somers*

14  *v. Apple, Inc.*, 7329 F.3d 953, 964 (9th Cir. 2013) (affirming dismissal of complaint and holding

15  that plaintiff's theory was implausible in the face of contradictory facts).

16         In like manner, the SAC broadly alleges that Radvinsky stood to gain financially by engaging

17  in the alleged conspiracy.  (SAC ¶ 63 (alleging that the alleged conspiracy would "benefit OnlyFans

18  and its owner, Radvinsky"); *see also* ¶ 73.)  But a generic statement that someone stood to gain by

19  engaging in a conspiracy is not plausible evidence that they *actually* engaged in the conspiracy or

20  took any action(s) in support of it.  The SAC contradicts itself by noting that this issue also affected

21  adult performers who appeared on OnlyFans, meaning that Radvinsky would have designed a

22  conspiracy that hurt his own business.  *See, e.g., In re Methyl Tertiary Butyl Ether (MTBE) Prod.*

23  *Liab. Litig.*, 379 F. Supp. 2d 348, 398 (S.D.N.Y. 2005) (dismissing complaint whose claims were

24  "inherently contradictory," given attempts to "maintain their actions against parties as both the

25  perpetrators and victims of the same tortious conduct").

26         The SAC includes speculation about purported wire transfers and the transfer of information

27  from Radvinsky to OnlyFans—but neither finds any factual support in the pleading.  Although the

28  SAC alleges that the "amounts of some of the wire transfers appear consistent with suspicious

activity reports and reporting regarding Defendant Radvinsky" in connection with different businesses, (*id.* ¶ 2), the fact that an online news organization (Forensic News) reported on alleged wire transfers involving Radvinsky's unrelated businesses does *not* plausibly evidence that Radvinsky was involved with the purported wire transfers referenced in the anonymous email attached to the SAC.  The SAC also attempts to allege that Radvinsky exercised control over Smart Team, a Hong Kong entity allegedly involved in the transfers; however, the sole basis for this allegation is that an entity named Fenix International Limited Hong Kong[10] allegedly shared the same "physical address" as Smart Team.  (*Id.* ¶ 76); *see also Iqbal*, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not shown . . . that the pleader is entitled to relief.").

The SAC attempts to allege that "Radvinsky and one or more other owners, officers, directors, or managing agents of Fenix and/or Fenix Internet provided the information used by agents of Meta" to "add false classifier/filtering information to the" databases in question, but falls short of making this allegation in a way that establishes plausibility.  (*Id.* ¶ 66.)  By basing this allegation on the other speculation throughout the SAC, Plaintiffs concede that they have *no evidence* that Radvinsky actually took any action(s), instead asserting that the "allegations in this paragraph will *likely* have evidentiary support after a reasonable opportunity for further investigation or discovery." (*Id.* (emphasis added).)  A fanciful conspiracy theory does not find support because a missing link in the conspiratorial chain could, in theory, be searched for in discovery—that sort of guesswork belies the plausibility standard's strictures. *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 625-26 (7th Cir. 2010) ("*Twombly*, even more clearly than its successor, . . . *Iqbal*, . . ., is designed to spare defendants the expense of responding to bulky, burdensome discovery unless the complaint provides enough information to enable an inference that the suit has sufficient merit to warrant putting the defendant to the burden of responding to at least

---

[10]     Fenix International Limited Hong Kong appears to have been created in 2010, well before OnlyFans existed, and appears to have no connection to the Fenix entities named in this lawsuit. *See* Open Corporates, Fenix International, Ltd., https://opencorporates.com/companies/hk/1437186 (last visited Oct. 8, 2022).

1   a limited discovery demand.").  The lack of evidentiary support renders the allegation in Paragraph

2   66 implausible.

3          Finally, as discussed in greater detail in the Fenix Defendants' prior motion to dismiss,

4   Plaintiffs have failed to allege any facts that would support a veil-piercing theory to impute the

5   actions of the other Fenix entities to Radvinsky.  "To state a 'veil-piercing claim,' the plaintiff must

6   plead facts supporting an inference that the corporation, through its alter-ego, has created a sham

7   entity designed to defraud investors and creditors."  *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del.

8   2003) (applying Delaware law, which all parties agree is Fenix Internet's place of incorporation).

9   Plaintiffs' conclusory allegations that a "unity of interest and ownership" exists among the Fenix

10  Defendants and that respecting separate corporate personality "would promote injustice" fail to

11  properly allege veil-piercing.  (SAC ¶ 28.)  Plaintiffs fail to allege *any facts*—much less plausible

12  allegations—that would support an inference that Fenix Internet and/or Fenix International were

13  "sham entities" designed to defraud investors or creditors or that would support an inference that

14  Radvinsky individually is the alter ego of either of the Fenix entities.  As such, Plaintiffs' alter ego

15  theory is not viable.

16         The claims against Radvinsky individually should be dismissed, with prejudice.

17  **III.**   **CONCLUSION**

18         For the foregoing reasons, Defendants Fenix International Limited, Fenix Internet LLC, and

19  Leonid Radvinsky respectfully request that the Second Amended Class Action Complaint be

20  dismissed with prejudice.

21

22

23

24

25

26

27

28

1

2    DATED:  October 11, 2022                QUINN EMANUEL URQUHART & SULLIVAN,
                                             LLP
3

4                                  By:    _/s/ Victoria B.. Parker_____
                                          Shon Morgan (Bar No. 187736)
5                                         (shonmorgan@quinnemanuel.com)
                                          865 South Figueroa Street, 10th Floor
6                                         Los Angeles, California 90017
                                          Telephone: (213) 443-3000
7                                         Facsimile: (213) 443-3100

8                                         Victoria B. Parker (Bar No. 290862)
                                          (vickiparker@quinnemanuel.com)
9                                         50 California Street, 22nd Floor
                                          San Francisco, California 94111
10                                        Telephone: (415) 875-6600
                                          Facsimile: (415) 875-6700
11
                                          John F. O'Sullivan (Fla. Bar No. 143154)
12                                        (johnosullivan@quinnemanuel.com)
                                          Jason D. Sternberg (Fla. Bar No. 72887)
13                                        (jasonsternberg@quinnemanuel.com)
                                          Joshua T. Fordin (Fla. Bar No. 125219)
14                                        (joshuafordin@quinnemanuel.com)
                                          2601 South Bayshore Drive, 15th Floor
15                                        Miami, Florida 33133
                                          Telephone: (305) 402-4880
16
                                          *Attorneys for Defendants Fenix International
17                                        Limited, Fenix Internet LLC, and Leonid
                                          Radvinsky*
18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT