MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
DAVID E. AZAR
280 S. Beverly Drive, Suite PH
Beverly Hills, California 90212
Telephone: 1-866-252-0878
dazar@milberg.com

*Plaintiffs' Attorney*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAWN DANGAARD, et al., | Case No. 3:22-cv-01101-WHA |
| Plaintiffs, | **RESPONSE TO ORDER TO SHOW CAUSE REGARDING JURISDICTION OVER FENIX DEFENDANTS** |
| v. | |
| INSTAGRAM, LLC, et al., | The Hon. William Alsup |
| Defendant. | March 30, 2023, 8:00 AM |
| | Trial Date:    None Set |

## **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................1

II. LEGAL STANDARD .........................................................................................................3

III. THE COURT HAS PERSONAL JURISDICTION OVER FENIX DEFENDANTS .........3

    A. Fenix International Limited ....................................................................................3

    B. Fenix Internet LLC..................................................................................................5

    C. Radvinsky................................................................................................................6

IV. PLAINTIFFS ARE NOT REQUIRED TO PROVE BOTH THE EXISTENCE OF THE SCHEME AND ITS CONNECTION TO THE FORUM FOR THE PURPOSE OF PERSONAL JURISDICTION ...........................7

V. CONCLUSION..................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Alya, LLC v. Alya Skin Pty. Ltd.*, 11 F4th 972 (9th Cir. 2021) ......................................................... 7

*Brainerd v. Governors of the University of Alberta*, 873 F.2d 1257 (9th Cir. 1989) ..................... 3

*Chien v. Bumble Inc., No.: 3:22-cv-00020-GPC-NLS*, 2022 WL 17069842
(S.D. Cal. Nov. 17, 2022) ........................................................................................................... 4

*Ballard v. Savage*, 65 F.3d 1495 (9th Cir. 1995) ............................................................................ 4

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S.Ct. 1017 (2021) ............................. 5, 6, 7

*Keeton v. Hustler*, 465 U.S. 770 (1984) ......................................................................................... 5

*Lindora, LLC v. Isagenix Int'l, LLC* 198 F. Supp. 3d 1127 (S.D. Cal. 2016) ................................. 8

*Louis Vuitton Malletier SA v. LY USA, Inc.*, 676 F. 3d 83 (2d Cir. 2012) ...................................... 9

*Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218 (9th Cir. 2011) ........................................ 4

*Metropolitan Life Ins. Co. v. Neaves*, 912 F.2d 1062 (9th Cir.1990) ............................................. 8

*SK Trading International Co. v. Superior Court of San Francisco*,
77 Cal.App.5th 378 (2022) ..................................................................................................... 7-8

*Stomp, Inc. v. NeatO LLC*, 61 F. Supp. 2d 1074 (C.D. Cal. 1999) ................................................. 5

*Walden v. Fiore*, 571 U.S. 277 (2014) ........................................................................................... 3

*WebZero LLC v. ClicVU, Inc.*, 2008 WL 1734702 (C.D. Cal. 2008) ......................................... 4-5

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
433 F.3d 1199 (9th Cir. 2006) ................................................................................................... 3

**Rules**

Fed. R. Civ. P. 30 ............................................................................................................................ 9

I.  **INTRODUCTION**

The crux of this jurisdictional centers upon how to apply the second requirement for specific jurisdiction, that Plaintiffs' claims "relate to" the forum-related activities of Fenix Defendants.

The evidence clearly establishes the first requirement for establishing specific personal jurisdiction, ***the Fenix Defendants'[1] purposeful availment of California laws and direction of activities at California***. For example, both Fenix entities engage in billions of dollars of business in California, with connections to California that are extensive and comprise a substantial portion of Fenix Defendants' business. They have (1) ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ███████ (2) ███████████████████████████ ███████████████████████, (3) ███████████████████████████████ ███████████████████████████████ (4) ███████████████████████████████████████ , and (5) ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ █████████.

As to the second requirement for specific jurisdiction, the evidence establishes that Plaintiffs' ***claims "relate to" the Fenix Defendants' forum-related activities***. Fenix Defendants' contacts with California, among others, primarily "relate to" their continuing interactions with Content Creators and with the consumers who pay for access to that content. Similarly, Plaintiffs' causes of action relate to their role as Creators on adult content platforms, and their economic relationship with their fans (who pay for their content) and the other platforms on which they have content (including OnlyFans). The allegations relate to those activities: it concerns anti-competitive

---

[1] Fenix International Ltd. and Fenix Internet, collectively "Fenix Defendants".

promotion and suppression of consumer traffic to adult entertainment platforms, including OnlyFans and their competitors. Further, all aspects of the scheme involved California: (1) the conspiracy with the Meta Defendants (located in California) to advance OnlyFans at the expense of its competitors and those individuals, including Plaintiffs, who provided content on competing platforms; (2) harm to Content Creators who reside and/or work in California who did not exclusively post their content on OnlyFans, and lost California consumers because of this; and (3) the Fenix Defendants' dealings with and sharing of the bounty with those in California who entered into contracts with and made millions of dollars from OnlyFans' domination of the market as a direct result of the Fenix Defendants' collaboration of the Meta Defendants, and unjust enrichment from fans diverted from competitors. Importantly, Plaintiffs also allege that the scheme, for the benefit of Fenix Defendants, was implemented with computer systems administered and controlled by the Meta Defendants in Menlo Park, California.

Fenix Defendants apparently intend to argue that Plaintiffs need to prove now, after only limited jurisdictional discovery, the merits issue of whether Fenix Defendants communicated with Meta Defendants about the specific scheme. That is not required at this phase), Additionally, the deposition testimony and the parties' meet and confer shows ▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋[2]▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋. Plaintiffs have thus satisfied their burden at this stage to establish specific jurisdiction over Fenix International and Fenix Internet. As to Radvinsky, that is a closer call, and may require further discovery of him personally or await alter ego discovery (ECF No. 109).

---

[2] ▋▋▋▋▋▋ See Azar Decl. ▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋. (Exh. 1, Fenix Int'l Depo. at 64:17-22; 89:2-20; 94:6-96:13; 97:15-98:4; 98:23; 173:18-23 – 99:13.).

## II. LEGAL STANDARD

The parties jurisdictional briefing already provides the legal standards. Plaintiffs highlight two points. The Supreme Court has emphasized that "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). Also, while a plaintiff "may not simply rest on the bare allegations of the complaint," "uncontroverted allegations must be taken as true, and 'conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor.'" *Id*.

## III. THE COURT HAS PERSONAL JURISDICTION OVER FENIX DEFENDANTS

### A. Fenix International Limited

"Purposeful availment" may be established "by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; ***or by some combination thereof***." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (emphasis added). Courts "presume[]e that it is reasonable to require a defendant who conducts business and benefits from his activities in a state to be subject to the burden of litigating in that state as well." *Brainerd v. Governors of the University of Alberta*, 873 F.2d 1257, 1259 (9th Cir. 1989).

The scope of Fenix International's business in California is staggering and the below evidence reveals that the California market is integral to OnlyFans success. ███████ ███████████████████████████████████████████████. (Exh. 2, Resp. to Interrog. 1). ███████████████████████████████████████████████ ███████████████████████████████[3] (*Id.,* Resp. 2). ███████████ base ███████████████████████████████████████. (*Id.,* Resp. 5). ███████ ███████████████████████████████████████████████ ███████████████████████████. *Id.* These numbers alone show that Fenix International derives a significant amount of its business from California residents and is sufficient

---

[3] From 2018 to 2022, California Creators earned the following from the OnlyFans website: $7,736,714 (2018); $33,513,317 (2019); $301,771,728 (2020); $544,534,390 (2021); $546,551,611 (2022). (Exh. 2, at Resp. 2).

| | |
|---|---|
| 1 | to establish that Defendants purposefully directed their activities at the forum and purposefully |
| 2 | availed themselves of California laws and the jurisdiction of the courts in this state, including this |
| 3 | Court. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). |
| 4 |       Fenix International's California-directed activities also went beyond operation of a |
| 5 | nationally accessible website. For example, through OnlyFans, Fenix International collects the data |
| 6 | of California users (subscribers and content creators) such as identification information, |
| 7 | commercial information, biometric information, internet activity information and includes |
| 8 | California-specific sections within its privacy policy. OnlyFans Fenix International also performs |
| 9 | age verification for all of its California creators which involves collecting hundreds of thousands |
| 10 | of California IDs and W-9s. (Exh. 11, Privacy Policy, at 6-8, 11). Fenix International's new |
| 11 | Chief Executive Officer, Amrapali ("Ami") Gan, whom Fenix International ▮▮▮▮ |
| 12 | ▮▮▮▮▮▮▮▮▮▮▮▮ (Exh. 2, Resp. 3; Exh. 3, Fenix Internet Depo. at |
| 13 | 123:13-16), resided in California for the relevant period ▮▮▮▮ |
| 14 | ▮▮▮▮▮▮, and ▮▮▮▮▮▮ |
| 15 | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, where Mr. |
| 16 | Radvinsky is last known to have resided and was subject to general jurisdiction in the related |
| 17 | Florida case. (Exh. 11, Exh. 2, Resp.3 Exh. 4). ▮▮▮▮ |
| 18 | ▮▮▮. (Exh. 1, 195:18-25; 196:2-22; and 199:14-23), ▮▮▮ |
| 19 | ▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 198:7-25. ▮ |
| 20 | ▮▮▮▮▮▮▮▮▮ |
| 21 | ▮▮▮▮. (Exh. 3, at 36:5-11). ▮▮▮ |
| 22 | ▮▮▮▮▮▮ |
| 23 | ▮▮▮ (Exh. 1, at 19:10-18 and 21:2-23 and Exh. 3, at 39:12-24; 40:1-9; and 41:2-21). |
| 24 | ▮▮▮▮▮▮▮▮▮ |
| 25 | ▮▮▮▮▮▮▮▮. (Exh. 10). Similar |
| 26 | website activities in California have been found sufficient to establish personal jurisdiction. |
| 27 | *See, e.g., Chien v. Bumble Inc.*, No.: 3:22-cv-00020-GPC-NLS, 2022 WL 17069842, at *8 |
| 28 | (S.D. Cal. Nov. 17, 2022); *Mavrix Photo*, 647 F.3d at 1229-1231; *WebZero LLC v. ClicVU, Inc.*, 2008 WL 1734702, *5-6 (C.D. Cal. 2008) (finding jurisdiction |

1  where website sold and advertised its services and products); *Stomp, Inc. v. NeatO LLC*, 61 F. Supp.
2  2d 1074, 1077 (C.D. Cal. 1999) (finding jurisdiction because web site allowed commercial
3  transactions over the internet to California consumers).

4      For the second prong, Plaintiffs claims are sufficiently related to Fenix International's
5  forum-directed activities. Plaintiffs have alleged a wide-ranging anti-competitive scheme which
6  occurred, in part, in California. (SAC ¶¶ 65-66.) As a result of this scheme, California creators,
7  including Plaintiffs, were harmed. (*Id*. ¶¶ 13, 58; ECF No. 105-7.) Finally, the Facebook
8  whistleblower report in the possession of Meta Defendants sufficiently corroborates for the purpose
9  of this non-merits analysis Plaintiffs' allegations that the scheme occurred and it was directed, in
10 part, to creators and competitors in California. (ECF No. 105-12.) As discussed above, Fenix
11 International has deliberately extended its business into California by "continuously and
12 deliberately exploit[ing]" its market and has derived enormous profits as a result. *Keeton v. Hustler*,
13 465 U.S. 770, 781 (1984). Fenix International therefore could reasonably anticipate being sued in
14 California courts as a result of those connections. *Ford Motor Co. v. Montana Eighth Jud. Dist.*
15 *Ct.*, 141 S.Ct. 1017, 1027 (2021).

16     Finally, Fenix International's gross revenue of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
17 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ sumers,
18 supports personal jurisdiction as reasonable and comporting with fair play and substantial justice.

19     **B.**    **Fenix Internet LLC**

20     Like its parent Fenix International, Fenix Internet has also purposely availed itself of, and
21 directed its activities to, California. Fenix Defendants represented to this Court that Fenix Internet
22 only provides payment assistance to Fenix International. (ECF No. 117-1.) However, the evidence
23 show that Fenix Internet ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and it has significant contacts
24 with California to warrant the exercise of specific jurisdiction on its own.

25 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
26 ▮▮▮▮▮▮ (Exh. 5, Interrog. Resp. No. 7). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
27 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Exh. 1 at
28 198:7-25.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1
2  ▮▮▮ – such as (1) ▮▮▮
3
4  ▮▮▮. (Exh.
5  2 at No. 3; Exh. 1 at 21:2-23; 18:19-2; 177:4-7; Azar Decl. ¶¶ 2-5; Exh. 5, Resp. 3; Azar Decl. Exh.
6  13.) ▮▮▮
7  ▮▮▮.[4] These figures
8  alone establish that Fenix Internet has purposely directed its activities at, availed itself of, and has
9  a substantial connection to, California.[5]
10      For the second prong, the above facts also establish that Plaintiffs' claims against Fenix
11 Internet are also connected to Fenix Internet's California activities. (E.g., Exh. 3 at 39:13-24; 40:14-
12 22; 107:16-110:5; Exh. 3 at 40:14-41:21; 34:9-16).
13      Fenix Internet's processing of ▮▮▮ in revenue generated by its California-based
14 content creators, much of it deriving from payments ▮▮▮, means there
15 can be no doubt that this Court's exercise of personal jurisdiction is reasonable and comports with
16 fair play and substantial justice.
17      **C.   Radvinsky**
18  ▮▮▮ (Exh. 1 at 163:10-15) ▮▮▮
19  ▮▮▮ (Exh. 3 at 32:8-11). Radvinsky has the following connections with
20 California: he owns the website Suicide Girls, which is based in California (Dkt. 105-2 at ¶ 36); he
21 has an office in California (*Id.*); ▮▮▮ (Exh.
22 6, Radvinsky's Interrog. Resp. No. 9); ▮▮▮,

---

[4] (Exh. 3 at 39:12-24; 40:1-9; and 41:2-21). DMCA compliance was sufficiently important to OnlyFans' business that it dedicated an entire web page to the "DMCA Takedown Policy" on the OnlyFans' website. https://onlyfans.com/dmca (last visited Feb. 14, 2023).

[5] ▮▮▮. (Exh. 3, at 32:8-11; 33:7-17; 67:23-68:2; 66:25-67:3 and 76:19-77:2). ▮▮▮. (Exh. 3, at 34:9-16). ▮▮▮. (*Id.* at 36:5-11).

- 6 -

(Exh. 4); 

. (Exh. 3 at 33:7-17 and 157:12-21).

### IV. PLAINTIFFS ARE NOT REQUIRED TO PROVE BOTH THE EXISTENCE OF THE SCHEME AND ITS CONNECTION TO THE FORUM FOR THE PURPOSE OF PERSONAL JURISDICTION

From meet and confer discussions, and during the depositions, Fenix Defendants appeared to take the position that Plaintiffs must establish now that Fenix Defendants' contacts with California specifically concern the alleged anticompetitive scheme. Although the evidence supports a finding that the wrongful Fenix-Meta activities occurred in and impacted California, recent case law does not require such proof to satisfy the "arise out of or relate to" requirement.

The Supreme Court recently clarified that the terms "arise out of" refers to causation, but "relate to" **does not**. *Ford* 141 S.Ct. at 1026; *see also Ayla,* 11 F.4th at 983 n.5 ("our precedents permit but do not require a showing of but-for causation to satisfy the nexus requirement"). Accordingly, Plaintiffs are under no obligation to prove the existence of the anticompetitive scheme in order to show that their claims are connected to Fenix Defendants' forum-related activities. Rather, Plaintiffs must show that their claims "relate to" Fenix Defendants' conduct in California, which is fact specific. As one data point, in a product liability case, the test is met when "a company cultivates a market for a product in the forum State and the product malfunctions there." *Ford,* 141 S.Ct. at 1027. Where, as here, the litigation concerns business practices that injured competitors, the test is met where the business practices affected significant sales in the forum jurisdiction. *Ayla,* 11 F.4th at 983 ("[A]bout 10% of [Defendant's] total sales are to the United States. Each of these contacts relate to Ayla's claims because they are part of Alya Skin's attempts to serve and attract customers in the United States market . . ."); *SK Trading International Co. v. Superior Court of San Francisco,* 77 Cal.App.5th 378, 390 (2022) (personal jurisdiction found where "the People's claims arise from SK Trading's involvement in the decision-making that was undisputedly directed towards the California market. While SK Trading may not have directly engaged in specific trades on the California spot market, the evidence shows that its officers were directly involved in the

1 formulation of the policies that the complaint alleges constituted an anticompetitive scheme.").

2 Any argument that Plaintiffs must prove the actual existence of a scheme involving activities occurring in and purposefully targeting California is contrary to the process of conducting jurisdictional discovery without reaching the merits. *Lindora, LLC v. Isagenix Int'l, LLC* 198 F. Supp. 3d 1127, 1143 (S.D. Cal. 2016) ("To allow Isagenix to avoid jurisdiction simply by challenging the merits of the claim or by denying all jurisdictional facts would erect too high a barrier to the assertion of personal jurisdiction."). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" (Exh. 7 and 8, Fenix Defendants' Objections to the deposition notices), but they contend that Plaintiffs must prove the occurrence of wrongdoing in California – and do this based on a clearly deficient search for responsive communications with Meta Defendants related to whitelisting, blacklisting, or otherwise helping or hurting anyone's social media. The existence of the scheme itself, and in what forum particular acts, communications, and injuries occurred, is fact specific. If it turns out that personal jurisdiction does not exist, Fenix Defendants can continue to challenge it at any time, including summary judgment or trial. *Metropolitan Life Ins. Co. v. Neaves*, 912 F.2d 1062, 1064, n.1 (9th Cir.1990).

▮▮▮▮▮▮▮▮▮▮▮▮ (Exh. 1 at 172:24-173:3 ▮▮▮▮; Exh. 3 at 26:14-27:3 ▮▮▮.[6]

---

[6] ▮▮▮▮▮▮▮▮▮▮▮ E.g., Exh. 1 at 186:1-22 (▮); 193:11-19 ▮, 27:12-19 (▮).

- 8 -

1  ▮▮▮
2  ▮▮▮
3  ▮▮▮. (Exh. 9, Email from Sternberg
4  to Azar dated Feb. 7, 2023) *See also* Exh. 1 at 118:15-22; 150:16-177:10 ▮▮▮
5  ▮▮▮; Declarations of Alana Evans and Kelly Pierce, *passim*).) ▮▮▮
6  ▮▮▮
7  ▮▮▮
8  ▮▮▮
9  ▮▮▮(Ex. 1 at 113:17-22), and thus merits discovery of them is needed. ▮▮▮
10 ▮▮▮
11 ▮▮▮.

These failures to prepare witnesses or produce documents supports a finding of specific jurisdiction over these Defendants. For example, the Court may draw adverse inferences from the failure of a properly noticed 30(b)(6) witness to answer a question. *Louis Vuitton Malletier SA v. LY USA, Inc.*, 676 F. 3d 83, 103 (2d Cir. 2012) ("the court referred only to the failure of the corporate defendants to offer witnesses under Rule 30(b)(6), and suggested that it was that failure alone . . . that supported the adverse inferences").

Here, the 30(b)(6) notices asked for testimony about whether either entity had any communications with any Meta Defendant about positively or negatively affecting the social media traffic of anyone – and Plaintiffs allege that one or both of those were used to implement the scheme (e.g., helping/protecting people on Instagram who promoted OnlyFans, and negatively affecting Instagram traffic of people who promoted competing platforms).

The 30(b)(6) witness for Fenix International – one of its two directors, and the person who also directs Fenix Internet – testified that ▮▮▮
▮▮▮
▮▮▮. See, for examples, this excerpt:

▮▮▮

███████████████████████████

. . . .

███████████████████████████████████████

(Exh. 1 at 206:15-207:5.) Accordingly, the Court could reach an adverse inference from ███████████████████████. At minimum, ███████████████████████████████████████████████ So that is for merits discovery. In any event, it is not legally required for Plaintiffs to prove the merits of their case before merits discovery.

V. **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court exercise specific personal jurisdiction over the Fenix Defendants.

Dated: February 14, 2023                                         Respectfully submitted,

                                                                  By: /s/ David Azar

                                                                  MILBERG COLEMAN BRYSON
                                                                  PHILLIPS GROSSMAN, PLLC
                                                                  DAVID E. AZAR
                                                                  280 S. Beverly Drive, Suite PH
                                                                  Beverly Hills, California 90212
                                                                  Telephone: 1-866-252-0878
                                                                  dazar@milberg.com
                                                                  *Counsel for Plaintiffs*