<u>SCHEDULE A – DEPOSITION TOPICS AND INTEGRATED DOCUMENT REQUESTS</u>

**Subpoena For Deposition of Corporate Representative**

<u>**PREFACE / DESCRIPTION OF SUBPOENA / DEFINITIONS**</u>

On March 30, 2023, the Court in this action ordered Plaintiffs to subpoena the Federal Reserve regarding purported wire transactions evidenced by purported records from the FedPayments Manager tool, which are attached as Exhibits to this Subpoena. On April 5, 2023, Plaintiffs served a subpoena on the Federal Reserve through its Board of Governors, which objected and advised that the Fedwire Funds Service and the FedPayments Manager was administered collectively by the 12 Federal Reserve Banks and we needed to subpoena the individual bank(s) instead of the Board. We understand that each separate Federal Reserve Bank has separate search capabilities for those records. After investigation, we understand that your bank has the most robust search capabilities for the above records and were advised to start with you.

This Subpoena seeks information about the information in the Exhibits through testimony, documents, and electronically stored information.

<u>**INSTRUCTIONS**</u>

1.      Whether or not you intend to respond in full to each of the Requests, you are notified of pending litigation, and requested to put a litigation hold on, and do not delete, any DOCUMENTS or ELECTRONICALLY STORED INFORMATION associated with the transactions described in the Exhibits or others among or between any of the Originators and Beneficiaries listed in the Exhibits.

2.      YOU shall produce all DOCUMENTS and ELECTRONICALLY STORED INFORMATION in YOUR possession, custody, or control responsive to the Requests.

3.      If YOU contend that YOU are not required to produce certain DOCUMENTS  or ELECTRONICALLY STORED INFORMATION called for by these Requests on the grounds of a privilege or other objection that YOU do not waive, identify each such item, and provide the following information:

      (a)      the date and type of the DOCUMENT or ELECTRONICALLY STORED INFORMATION , the author(s), and all recipients;

      (b)      the privilege or objection that YOU claim permits YOU to withhold the DOCUMENT or ELECTRONICALLY STORED INFORMATION;

      (c)      the title and subject matter of the DOCUMENT or ELECTRONICALLY STORED INFORMATION; and

      (d)      the identity of the current custodian of the original and each copy of the . DOCUMENT or ELECTRONICALLY STORED INFORMATION

4.      DOCUMENTS and ELECTRONICALLY STORED INFORMATION should be produced in their complete and unaltered form – however, you may redact information from customers or accounts that are not specifically responsive to our requests, such as if information from others are in a responsive report/log/etc. Attachments to DOCUMENTS and ELECTRONICALLY STORED INFORMATION should not be removed. The DOCUMENTS and ELECTRONICALLY STORED INFORMATION should not be cut up, pasted over, redacted, or altered in any way for any reason, including alleged non-relevance. If emails are produced that had attachments, the attachments shall be attached when produced.

5.      DOCUMENTS and ELECTRONICALLY STORED INFORMATION should be produced in their native electronic format with all available metadata or in TIFF images with a load file with metadata.

6.      In the event that any DOCUMENT and/or ELECTRONICALLY SOTORED INFORMATION called for by these requests has been destroyed, lost, or discarded, that document should be identified by stating:

(a)      the date and type, the author(s), and all recipients;

(b)      the DOCUMENT's date, subject matter, number of pages, and attachments;

(c)      the date of destruction, loss, or discard; manner of destruction, loss, or discard; and the reason for the destruction, loss, or discard;

(d)      the persons or entities who have knowledge of the content, origins, distribution destruction, loss, or discard of the document; and

(e)      whether any copies of the document exist and, if so, the name of the custodian of each copy.

7.      If there are no DOCUMENTS or ELECTRONICALLY STORED INFORMATION  responsive to a Request, provide a written response so stating.

8.      The terms "DOCUMENT" and "ELECTRONICALLY STORED INFORMATION" used herein shall have the broadest meaning ascribed to the term under Federal Rules of Civil Procedure 34(a)(1)(A), and encompasses all information and data housed in payment systems and computer systems, including without limitation any information and data source files, backups, reports, writings, recordings, electronically stored information in any medium or format, structured data, paper, or hard copies, charts, phone records, videos, computer files, electronic mail or information, agreements, facsimiles, telexes, notes and other data compilations from which information can be obtained, translated, if necessary, through detection devices into reasonably usable form. A draft or non-identical copy of a DOCUMENT is a separate document.

9.      "YOU" means the Federal Reserve Bank of New York.

10.     Plaintiffs recognize that YOU may allege that YOU lack the functional ability to

search for and produce only the targeted information contemplated by the Requests, or that YOU

may refuse to do so because of alleged burden. Plaintiffs encourage YOU to meet and confer with

their counsel prior to YOUR response if this is the case. However, YOU may not refuse to fully

comply with and produce all information responsive to a Request, merely because YOUR

production, to be complete, would *also* encompass transactions and information other than what

is specifically requested.

## TIME PERIOD OF DOCUMENTS AND ELECTRONCIALLY STORED INFORMATION SUBJECT TO THIS SUBPOENA

The Subpoena requests the production of documents authored, generated, disseminated,

drafted, produced, reproduced, edited, modified, or otherwise created or distributed or relating to

the period of time from **January 1, 2018, through the date of the response** ("**Relevant Period**").

## DOCUMENT AND ELECTRONICALLY STORED INFORMATION REQUESTS

ALL TOPICS PERTAIN INDIVIDUALLY TO THE INFORMATION IN EACH OF THE
DOCUMENTS ATTACHED AS EXHIBITS 1-12; THUS, WE ARE ASKING FOR
DOCUMENTS AND ELECTRONICALLY STORED INFORMATION ABOUT
INFORMATION CONTAINED IN EACH EXHIBIT.

PLEASE SEE THE DEPOSITION TOPICS WHERE WE IDENTIFY WITH MORE
PARTICULARITY CERTAIN ASPECTS OF THE DOCUMENT REQUESTS.

1. Produce all DOCUMENTS and ELECTRONICALLY STORED INFORMATION
   associated with each transaction described in Exhibits 1-12.
2. To the extent not otherwise requested by a different Document Request, Produce all
   DOCUMENTS and ELECTRONICALLY STORED INFORMATION requested within
   the text of the Deposition Topics where it asks you to "produce" information.
3. Produce a copy of the manual for the FedPayments Manager applicable during the relevant
   time period, or provide secure access of it to review it.
4. Produce all DOCUMENTS and ELECTRONICALLY STORED INFORMATION
   associated with other wire transactions from the same Originator to the same Beneficiary
   as are listed in Exhibits 1-12.
5. Produce all DOCUMENTS and ELECTRONICALLY STORED INFORMATION,
   associated with any wire transactions from the same originating account number to the
   same receiving account number as are listed in Exhibits 1-12.

6. Produce all DOCUMENTS and ELECTRONICALLY STORED INFORMATION, associated with any wire transactions that involve the same OMAD or IMAD numbers as are listed in Exhibits 1-12.

7. . Produce all DOCUMENTS and ELECTRONICALLY STORED INFORMATION associated with any wire transfers from Smart Team International in Hong Kong to any trust account at the Philippine Bank of Communications ("PBCOM").

8. Produce all DOCUMENTS and ELECTRONICALLY STORED INFORMATION associated with any wire transfers from Smart Team International in Hong Kong to any account in the Philippines where the name "Clegg", "Mendelsohn", "Peralta", or "Perrella" are in the name of the account.

9. Produce all DOCUMENTS and ELECTRONICALLY STORED INFORMATION associated with wire transfers among or between, in any combination, any of the Originators and Beneficiaries listed in Exhibits 1-12.

## DEPOSITION TOPICS AND INTEGRATED DOCUMENT REQUESTS

ALL TOPICS PERTAIN INDIVIDUALLY TO EACH OF THE TRANSACTIONS DESCRIBED IN THE EXHIBITS; THUS WE ARE ASKING FOR TESTIMONY ABOUT INFORMATION COUNTAINED IN EACH EXHIBIT.

"Data" and "information" sometimes have a technical difference, and so we refer to "Data/Information" for the broadest meaning to cover both the raw facts and the meaning associated with them when data is processed, organized, structured, or presented in a given context. If you need any clarification about any request, please let us know.

For purpose of this subpoena, "genuine" means that the data/information (or a document) is what it purports to be. Thus, for the purpose of illustration, a wire transaction is "genuine" if there was a specific wire transfer, among the specified sender, receiver, originator, and beneficiary, on the specified dates, for the amount specified in the Exhibit, and the other data/information in the Exhibit is correct. Data/information *within* an exhibit is "genuine" if, for example, the "sender ABA" accurately reflects the ABA number and associated financial institution; the "identifier" number for the originator is accurate; and the other numbers, codes, and textual descriptions are what they purport to be.

We sometimes ask about the Exhibits themselves. And sometimes, we instead ask about data/information within the Exhibits.

Bank refers broadly to any financial institution.

We use the term "Wire transfer" because it appears that the Exhibits refer to wire transfers, but if they refer to a different kind of Electronic Funds Transfer (EFT), then the topic pertains to that method of EFT.

We use the term "transaction" in the broadest sense, mainly to refer to what we understand was an Electronic Funds Transfer (specifically wire transfers), but to include other terms you may use if applicable to a topic based on the context.

To assist you preparation and compliance, we identify general topics for testimony, followed by a preliminary list of specific topics that relate to the general topics.

Additionally, to assist your document production, we identify requested information within the scope of the Topics, so that you can understand what the Document request relates to. At times, we ask you specifically to "produce" certain Documents as well.

<u>General Topics</u>:

1. As to the transaction described in each Exhibit, is the <u>data/information</u> genuine? [Explanatory note: We ask if the "data/information" is genuine, instead of asking if the Exhibit itself is genuine, because it appears the FedPayments Manager tool is an interface that draws on data/information that may be stored in other databases, systems, tools, information and data source files, backups, reports, etc. Thus, the format of the printouts in the Exhibits may be just one version of an output option for data/information (e.g., these are summaries of individual transactions, but there may also be summaries in different formats or batch reports).]

2. Does the data/information in each of the Exhibits accurately represent transactions for which you have ELECTRONICALLY STORED INFORMATION?

3. Are each or any of the Exhibits a genuine copy of a printout from the FedPayments Manager tool for each Exhibit (if someone decided to print the information from the FedPayments Manager tool). If not, then please produce such a printout for each wire.

4. If you cannot locate data/information in your databases/systems/tools/ information and data source files/backups/reports/etc. about the genuineness of any electronic funds transfer (wire transfer) reflected in the Exhibits, please review your audit logs/ledger/source documents to make sure that your records were not altered or destroyed to make it appear that such electronic funds transfer transactions did not occur, and testify about that investigation, and whether you identified any such alteration or destruction, or whether it might have occurred and you are unable to make a definitive statement one way or the other.

5. If any of the electronic funds transfers (wire transfers) reflected in the Exhibits are not genuine, is any of the data/information in the Exhibits genuine?

   a. For example, do any of the IMAD or OMAD numbers refer to a different genuine transaction? If so, produce documents sufficient with the details of the data/information for each such genuine transaction.

   b. Were any of the IMAD or OMAD numbers completely made up?

   c. Same questions as to the data/information under the headings "Originator Information" and Beneficiary Information"– is any of that data/information genuine, even if any "Identifier" (which appears to be an account number) is associated with a different

"Name"? If so, please identify them, and produce documents sufficient with the details of the data/information for those genuine transactions.

6.   As to any electronic funds transfer (wire transfer) that is not genuine:

   a.   Please identify for each piece of data/information in each Exhibit: what is genuine;

   b.   what is false;

   c.   what data/information do you lack sufficient information to be able to say if it is genuine or not (and what data/information you would need to figure it out); and

   d.   anything for which you want to provide a more nuanced or different statement (for example, if something is partially true, but partially false if you assume xx).

7.   Same question as topic 4 about checking audit logs, etc., but this time about data/information in certain fields, specifically: If you cannot locate data/information in your databases/systems/tools/information and data source files/backups/reports/etc. about the genuineness of any of the data/information in each of the Exhibits in the following fields –IMAD, OMAD, Previous Message Identifier, Sender Reference, Reference for Beneficiary, Identifier (for Originator or Beneficiary), Name, Amount, Cycle Date, Service Unit, System Date/Time, Create Time, Sender ABA, Receiver ABA, F1 to F1 Information -- please review your audit logs/ledger/source documents to make sure that your records were not altered or destroyed to make it appear that such data/information does not exist, and testify about that investigation, and whether you identified any such alteration or destruction, or whether it might have occurred and you are unable to make a definitive statement one way or the other.

8.   Can you tell whether any of the Identifiers (under Originator or Beneficiary) are for accounts that are at not at the Sender ABA or Receiver ABA, but may be financial institutions that are not identified on the Exhibit but who use the Sender ABA or Receiver ABA as correspondent or intermediaries for wire transfers or other Electronic Funds Transfers? (For purposes of illustration, one example could be where the Identifier may be an account number for PBCOM at HSBC, and then PBCOM would internally allocate the funds from that account to its own customers using the data in the field "Reference for Beneficiary".)

9.   Can you tell anything about the kind of information someone would have had to have access to in order to create each of the Exhibits that are not genuine, or may not be genuine?

   a.   For example, if components of the IMAD or OMAD are genuine in that if a string of characters refer to a genuine transaction, or part of a genuine transaction, but not the one reflected in the Exhibit, who would have had access to that information? Someone from the sender? Receiver? Originator? Beneficiary? Someone within the Fed? Other?  Produce any documents with responsive information to this topic. (For purposes of illustration, say the IMAD referred to a wire to a vendor – and someone used information from that IMAD into an Exhibit – who would have had access to that IMAD for that other transaction?)

   b.   Also, as to any Exhibit that describes a transaction that is not genuine, can you tell if someone used an official system/template to create the exhibit (such as entering information, saving it, printing it, but deleting it before processing), or whether it was photoshopped/altered potentially by someone who is not (i) an insider as to the

sender, receiver, or fed, or (ii) as to the beneficiary or originator?

10. To the extent not covered above, we seek testimony about what each of the numbers, codes, and textual descriptions appearing on the Exhibits refer to.  So, for example, what does the field "Identifier" mean under Originator and Beneficiary, and what does the specific number listed on the Exhibit for Identifier refer to (e.g., to the originator listed on the form, to a different one, or do you show no record of such an originator number).

11. To the extent not covered above, what does each piece of information mean on the FedManager form?  How long is it kept? To what extent is it searchable.  For example, can you tell from any of the date fields who would have accessed the system at that time?  What does that cycle date mean?  What does the System Date/Time mean?  What does Create Time mean?  Can you infer anything by comparing the create times across exhibits – e.g., are there batch payments/processing for the particular sender, receiver, originator, or beneficiary?

12. What access level would be required in FedPayments Manager to input the kind of information in the Exhibits, or to access or print a form like that of the Exhibits , and the identity of those people from the sender, receiver, originator, beneficiary, and fed reserve who would have such access (we understand access levels include Funds Analyst, Funds Manager, Funds Supervisor, and Funds Transfer Specialist).

13. Do you have records of any transactions between Fenix and Smart Team as depicted in the Exhibits. If such transactions exist, produce those documents.

14. Are you able to search for whether there have been any wire transfers between Fenix, Fenix International, and Smart Team International (in Hong Kong)? If so, please do so, and produce any responsive documents sufficient to identify them and to provide the data/information about them for at least the same fields as are on the FedPayments Manager forms in the Exhibits.

15. Are you able to search for whether there have been any wire transfers Any wire transfers from Smart Team in Hong Kong to any trust account at the Philippine Bank of Communications ("PBCOM"). If so, please do so, and produce any responsive documents sufficient to identify them and to provide the data/information about them for at least the same fields as are on the FedPayments Manager forms in the Exhibits.

16. Are you able to search for whether there have been any wire transfers Any wire transfers from Smart Team to any account in the Philippines where the name "Clegg", "Mendelsohn", "Peralta", and/or "Perrella" is  in the "Name" field. If so, please do so, and produce any responsive documents sufficient to identify them and to provide the data/information about them for at least the same fields as are on the FedPayments Manager forms in the Exhibits.

17. Do you have records, from internal systems, of any other transactions from the same originator to the same beneficiary? If so, produce those documents.

18. What you did to search for documents responsive to this subpoena?

19. What the witness(es) did to prepare to testify as to the topics, including without limitation (a) who they communicated with and what each person told them, (b) the identity of anyone they were unable to communicate with or who they only partly communicated with (such as having an initial communication and being unable to obtain followup responses), and (c) related factual information about the communications or attempted communications.

20. The DOCUMENTS reviewed by the witness(es) in preparation for the deposition.

21. The identities of persons who have personal knowledge about information about any of the

topics (including without limitation current and former employees, independent contractors, and agents), and the extent to which YOU have a contractual or other ability to obtain information from them (such as due to severance or other agreement)

<u>Preliminary List Of Subtopics That Relate To The General Topics</u>

*FedPayments Manager forms*

1. Do the exhibits appear to be FedPayments Manager reports or forms?
2. Explain how/when forms of this kind are generated? At the time of a wire transfer initiation/completion? Can transactions be entered on these forms, printed, but cancelled or deleted before the transaction is processed?
3. Please walk us through the information on the form:
    a. Environment, Mode and Cycle date (top section)
    b. Next section, Status, Create Time (IMAD/OMAD)
    c. Basic Information section
    d. Originator information
    e. Beneficiary information
4. Are these records (or the information from which derived) maintained by you?
5. What is the retention period?
6. Where is this information maintained?
7. Are you able to search this information?
8. Does that system have an audit trail or log of any kind that provides information to identify who searched this information, reviewed it, changed it, or otherwise accessed it or did anything with it?
9. Does a search of this information require justification and/or authorization?
10. Who or at what level grants access?

*IMAD/OMAD (Input/Output Message Accountability Data)*

1. Please describe the IMAD and OMAD, its purpose and use by you.
2. Are IMADs/OMADs unique to a particular Electronic Funds Transfer, transaction, customer, account, etc.?
3. Is it possible for an IMAD or OMAD to contain the exact same sequence?
4. The IMAD/OMAD contains 4 groupings of numbers, letters, or combination of both. Please describe the various components of the IMAD and OMAD numbers. Describe in detail how the number is derived, the coding and sequence, and the significance of the various items, or what they represent? Produce any documents sufficient that might provide information responsive to this topic.
5. Where does the information contained in the IMAD/OMAD come from? Is it generated by the initiating customer, by the bank with assistance from the customer, or solely by the bank with information contained in the bank files related to the customer?
6. Can individual wire transfers be tracked by or though the IMAD/OMAD?
7. We understand you can locate transactions by date, amount, account number, etc. Could you verify if there are similar, identical, or additional transactions between these parties, using similar or same IMAD/OMAD information? If so, please attempt to do so and testify

about the results.  Produce documents as to the results of your search.

8. Based on the review of the exhibits, can you determine on its face if the IMAD/OMAD information is genuine?

9. Based on the review of the documents, are you able to determine if the IMAD/OMAD information was used on a prior Electronic Funds Transfer or other bank transactions (in the event that these documents are determined to be false, altered or otherwise not genuine?)

10. Sender/Receiver
   a. Is the sender in a particular transaction, an accountholder at the bank?
   b. What does the identifier number listed for the Originator (or Beneficiary) represent? (account number, customer number?)
   c. Is the identifier listed on each of the respective Exhibits a genuine bank number for the accountholder or customer of the bank?
   d. Is the identifier listed on the exhibit linked to the customer listed on the respective exhibits?

11. Who at the Fed was able to access these types of records?

12. Who, or at what lever at the sender or receiver bank, or the Fed bank, was able to make changes to these types of records?

13. Does the payment system have tools/processes or maintains an audit trail?

14. Can you check to see if your records related to the information in the Exhibits have been altered, destroyed, or deleted?

EXHIBIT 1

# EXHIBIT 2

EXHIBIT 3



EXHIBIT 4

# EXHIBIT 5

EXHIBIT 6

# EXHIBIT 7

EXHIBIT 8

EXHIBIT 9



# EXHIBIT 10

# EXHIBIT 11



# EXHIBIT 12