QUINN EMANUEL URQUHART & SULLIVAN, LLP
Shon Morgan (Bar No. 187736)
(shonmorgan@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Linda J. Brewer (Bar No. 217730)
(lindabrewer@quinnemanuel.com)
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

John F. O'Sullivan (Fla. Bar No. 143154)
(johnosullivan@quinnemanuel.com)
Jason D. Sternberg (Fla. Bar No. 72887)
(jasonsternberg@quinnemanuel.com)
2601 South Bayshore Drive, 15th Floor
Miami, Florida 33133
Telephone: (305) 402-4880

*Attorneys for Defendants Fenix International Limited, Fenix Internet LLC, and Leonid Radvinsky*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DAWN DANGAARD, a/k/a ALANA EVANS; KELLY GILBERT, a/k/a KELLY PIERCE; JENNIFER ALLBAUGH, a/k/a RUBY, and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>INSTAGRAM, LLC; FACEBOOK OPERATIONS, LLC; META PLATFORMS, INC.; FENIX INTERNATIONAL INC.; FENIX INTERNET LLC; LEONID RADVINSKY, and JOHN DOES 1-10,<br><br>Defendants. | Case No. 3:22-cv-01101-WHA<br><br>**FENIX DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**<br><br>Date:     May 11, 2023<br>Time:    8:00 a.m.<br>Courtroom: Courtroom 12, 19th Floor<br>Judge:   Hon. William Alsup<br><br>Trial Date:  None Set |

**TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................... 1

I. INTRODUCTION ................................................................................................................ 1

II. FACTUAL BACKGROUND ............................................................................................... 2

    A. Plaintiffs Sue for Alleged "Scheme-Facilitating" Bribe Payments. .......................... 2

    B. Plaintiffs Claim They Have "Evidence" of the Bribe Payments from HSBC to Avoid Dismissal. ................................................................................................. 3

    C. HSBC Confirms that It Has No Records of the Alleged Wire Transfers. ................. 5

    D. No Evidence of the Alleged Scheme or Wire Transfers Was Found During the Fenix Defendants' Jurisdictional Discovery. ....................................................... 6

III. COMPLIANCE WITH SAFE HARBOR ............................................................................ 7

IV. ARGUMENT ........................................................................................................................ 7

    A. Plaintiffs' Allegations Against the Fenix Defendants Lack A Factual Basis. .......... 8

    B. Plaintiffs Failed to Conduct a Competent Pre-Filing Investigation into Their Claims. ....................................................................................................................... 10

    C. The Court Should Strike Allegations Relating to the Fenix Defendants in Plaintiffs' Second Amended Class Action Complaint and Award Attorneys' Fees and Costs to the Fenix Defendants. ...................................................................... 11

V. CONCLUSION ................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Amorosa v. Ernst & Young LLP*,
    682 F. Supp. 2d 351 (S.D.N.Y. 2010) .................................................................................... 9

*Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*,
    498 U.S. 533 (1991) ............................................................................................................... 7

*Christian v. Mattel, Inc.*,
    286 F.3d 1118 (9th Cir. 2002) ............................................................................................... 7

*Cooter & Gell v. Hartmarx Corp.*,
    496 U.S. 384 (1990) ............................................................................................................. 10

*DNA Sports Performance Lab, Inc. v. Major League Baseball*,
    No. C 20-00546 WHA, 2020 WL 6290374 (N.D. Cal. Oct. 27, 2020) ...................... 8, 10, 12, 13

*In re Pfizer, Inc. Sec. Litig.*,
    538 F. Supp. 2d 621 (S.D.N.Y. 2008) ................................................................................. 10

*Ivanova v. Columbia Pictures Indus., Inc.*,
    217 F.R.D. 501 (C.D. Cal. 2003) ................................................................................. 12, 13

*Keister v. PPL Corp.*,
    318 F.R.D. 247 (M.D. Pa. 2015) ........................................................................................ 12

*Long Miao v. Fanhua, Inc.*,
    442 F. Supp. 3d 774 (S.D.N.Y. 2020) .................................................................................. 9

*Max Sound Corp. v. Google, Inc.*,
    No. 14-cv-04412, 2017 WL 4536342 (N.D. Cal. Oct. 11, 2017) ...................................... 12

*Nguyen v. Simpson Strong-Tie Co., Inc.*,
    No. 19-cv-07901, 2020 WL 5232564 (N.D. Cal. Sept. 2, 2020) ............................... 8, 11, 12

*PAE Gov't Servs., Inc. v. MPRI, Inc.*,
    No. 06-cv-00964, 2008 WL 11337998 (C.D. Cal. Oct. 24, 2008) ...................................... 8

*Pavelic & LeFlore v. Marvel Entm't Grp.*,
    493 U.S. 120 (1989) ............................................................................................................. 10

*Rider v. JPMorgan Chase Bank N.A.*,
    No. 20-cv-06888, 2021 WL 229308 (N.D. Cal. Jan. 22, 2021) ......................................... 13

*Snyder-Falkinham v. Stockburger*,
    No. 96-CV-83, 1996 WL 1171800 (W.D. Va. Aug. 5, 1996) ............................................ 10

*Walker v. S.W.I.F.T. SCRL*,
    517 F. Supp. 2d 801 (E.D. Va. 2007) ................................................................................... 9

**Rules and Regulations**

Fed. R. Civ. P. 11 ............................................................................................................... 7, 11
Fed. R. Civ. P. 11(b)(3) .......................................................................................................... 1, 7
Fed. R. Civ. P. 11(c) ............................................................................................................. 1, 13
Fed. R. Civ. P. 11(c)(1) ............................................................................................................. 8
Fed. R. Civ. P. 11(c)(2) ............................................................................................................. 7
Fed. R. Civ. P. 12(b)(2) ............................................................................................................. 7
Local Rule 5-1 .......................................................................................................................... 15

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that, on **May 11, 2023**, at 8:00 a.m., or as soon thereafter as the matter can be heard before the Honorable William Alsup in Courtroom 12, Nineteenth Floor, United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Fenix International Limited, Fenix Internet LLC, and Leonid Radvinsky (collectively, the "Fenix Defendants") will and hereby do move this Court for an order sanctioning Plaintiffs Dawn Dangaard, Kelly Gilbert, and Jennifer Allbaugh (collectively, "Plaintiffs") and their counsel for failing to conduct a reasonable investigation before filing claims against the Fenix Defendants. This Motion is supported by the following Memorandum of Points and Authorities, the accompanying Declaration of Jason Sternberg, and the evidence on file in this action.

**STATEMENT OF RELIEF REQUESTED**

The Fenix Defendants seek an order sanctioning Plaintiffs and their counsel pursuant to Rule 11(c) of the Federal Rules of Civil Procedure. Specifically, the Fenix Defendants request that the Court strike all of the frivolous allegations relating to the Fenix Defendants from the Second Amended Class Action Complaint. The Fenix Defendants also seek their attorneys' fees and costs incurred in defending against Plaintiffs' false allegations.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

This is an alleged bribery case in which there is no evidence of bribery. Because Plaintiffs and their counsel have presented this Court with "factual contentions" without "evidentiary support"—and without conducting "an inquiry reasonable under the circumstances"—they have violated Federal Rule of Civil Procedure 11(b)(3).

Plaintiffs' claims arise from their contention that the Fenix Defendants engaged in an alleged scheme to pay certain Meta executives to blacklist and otherwise harm competitors. When Plaintiffs were challenged by this Court to amend their First Amended Complaint and "plead their best case," Plaintiffs acknowledged that they lacked direct evidence of bribery, and instead based their

allegations on a single e-mail received through an anonymous tip line, from an unidentified person, with the subject line "Follow the money," that purported to show certain wire transfers. Recognizing the obvious defects in that basis for the claims, Plaintiffs represented to the Court that banking records from HSBC would prove that the alleged wire transfers occurred.

It is now clear that Plaintiffs' allegations against the Fenix Defendants have no factual support.  HSBC searched its records in response to a subpoena and informed the parties that it found no records supporting the alleged wire transfers identified in the "Follow the money" e-mail.  The Fenix Defendants likewise engaged in an extensive investigation and found zero evidence that the alleged wire transfers ever occurred or that the Fenix Defendants had any knowledge of or involvement in the alleged blacklisting scheme against Plaintiffs.  And Plaintiffs have now disclosed that the anonymous e-mail that served as the sole support for their allegations was sent from a "zero-access encryption" e-mail address, meaning that the sender will never be identifiable.[1]

At this point, Plaintiffs' pursuit of these factually baseless claims is nothing more than a vexatious and unreasonable conspiracy theory.  The Fenix Defendants therefore move for Rule 11(c) sanctions, ask the Court to strike all allegations in the Second Amended Class Action Complaint that relate to the Fenix Defendants, and request an award for attorneys' fees and costs that the Fenix Defendants have incurred in defending against these frivolous allegations.

## II.     FACTUAL BACKGROUND

### A.     Plaintiffs Sue for Alleged "Scheme-Facilitating" Bribe Payments.

Plaintiffs are adult entertainers who contract with competitors of "OnlyFans," an internet content subscription service associated with the Fenix Defendants.  According to Plaintiffs, the Fenix Defendants engaged in a scheme with Instagram, LLC; Facebook Operations, LLC; and Meta Platforms, Inc. (the "Meta Defendants") by paying certain executives of the Meta Defendants— allegedly documented by HSBC wire transfer records—to brand thousands of adult entertainers associated with OnlyFans' competitors as terrorists, and consequently "blacklist" them from social

---

[1]  Plaintiffs' claims have always been particularly frivolous with respect to Defendant Leonid Radvinsky, who did not even own the Fenix entities at the time of the first purported wire transfer identified in the anonymous and unverifiable e-mail.

media and negatively impact their competitors' performance.

Plaintiffs filed their initial complaint against the Fenix Defendants and the Meta Defendants on February 22, 2022 (ECF No. 1), and their First Amended Class Action Complaint ("FAC") the next day (ECF No. 4). The FAC vaguely alleges that the Meta Defendants "benefited economically in return for their participation in manipulating one or more individual databases" and that "the economic benefits included payments" to three specified executives of the Meta Defendants. (ECF No. 4 ¶¶ 75-76.) Plaintiffs allege that the Fenix Defendants used a company named Smart Team International Business Limited Hong Kong "to make the scheme-facilitating payments." (*Id.* ¶¶ 76, 82-85.)

### B. Plaintiffs Claim They Have "Evidence" of the Bribe Payments from HSBC to Avoid Dismissal.

At the hearing on the first round of motions to dismiss, Plaintiffs' counsel emphasized that he had a good faith basis for this case because the Fenix Defendants allegedly made illicit wire transfers in support of the alleged scheme through HSBC. Plaintiffs' counsel insisted that he had "transactions that went through HSBC USA" and requested that the Court "let HSBC produce that information. ***That's number one***." (ECF No. 67 at 32:1-16 (emphasis added).)[2] The Fenix Defendants' counsel raised concerns that this case was based on an "anonymous tip" and that they might be required to "do another several hundred thousand dollars of work" just to find out that the allegations are based on "some delusional person on a subreddit." (*Id.* at 43:6-11.) The Court responded, "Well, maybe you'll get some attorneys' fees from them, if it's that flimsy." (*Id.* at 43:12-13.) The Court observed that, where the FAC was concerned, "it is not clear that all the allegations on information and belief are based on facts peculiarly within defendants' possession." (ECF No. 71 at 2.) The Court therefore instructed that, in their repleaded complaint, "plaintiffs need to provide factual information that makes [their] inference[s] possible." (*Id.*) The Court gave Plaintiffs two weeks to "re-plead" their complaint to include all the "information outside the pleadings" in their possession and instructed Plaintiffs that they "must plead their best case." (*Id.*

---

[2] Plaintiffs' counsel also pleaded with the Fenix Defendants' counsel to allow a subpoena it issued to HSBC in a related Florida case to "play out" so that the parties did not unnecessarily "elongate the process," to which the Fenix Defendants' counsel agreed. (Sternberg Decl. ¶ 6 & Ex. 5.)

at 1.)

On September 28, 2022, Plaintiffs filed the Second Amended Class Action Complaint ("SAC"). (ECF No. 74.) The SAC alleges illicit "payments" or "transfers" in at least a dozen paragraphs in the SAC. (*See generally id.*) Nonetheless, the SAC includes only one factual assertion to support Plaintiffs' bribery claims: a redacted e-mail from an anonymous sender, titled "Follow the money," purporting to list payments that Defendant Fenix International sent—through an intermediary—to three Meta executives through alleged wire transfers to alleged trust accounts in the Philippines. (*Id.* ¶ 2(c) & Ex. D.)

Although Plaintiffs allege that the e-mail describes "genuine wire transfer[s]" (*id.* ¶ 77), the email does not contain actual bank records—just plain text purporting to describe wire transfers. Moreover, of the three trust accounts allegedly belonging to Meta executives or their family members, one misspells the executive's surname (the SAC calls the executive "Cristian *Perrella*;" the e-mail says "Cristian *Peralta*").

On March 3, 2023, after the Fenix Defendants' counsel's repeated requests, Plaintiffs' counsel finally shared an unredacted copy of this e-mail, which revealed that the sender was "SmartTIL" from the e-mail address SmartTIL@protonmail.com and that the e-mail was sent on March 2, 2022—*after* Plaintiffs filed their original two complaints. (Sternberg Decl. ¶ 4 & Ex. 3.) Proton Mail is based in Switzerland and states that it uses "zero-access encryption to secure [ ] communications," meaning that there is no way for a third party to verify whom the sender is or to have the sender appear in court to substantiate his allegations under oath. (Sternberg Decl. ¶ 5.) The e-mail does not otherwise contain any information about the name of the person sending the e-mail. No phone number, no address, no information about how the wire transfer information was obtained, and no indication or explanation of the motivation behind the e-mail. This revelation that Plaintiffs' allegations are based on hearsay from a nameless, faceless accuser flies in the face of the Court's admonition: "You can't have faceless people in the Philippines saying: They're guilty, and

therefore, let us go... It's got to be better than that." (ECF No. 100 at 18:8-14.)[3]

### C. HSBC Confirms that It Has No Records of the Alleged Wire Transfers.

The Fenix Defendants moved to dismiss the SAC, asserting that the allegations were insufficient, and again Plaintiffs claimed they had "new information" that they "could plead." (ECF No. 100 at 20:5-11.) The Court made clear that, "I've already done it once. I said: Plead your best case. And now you are saying -- giving me the same thing, like a broken record. You -- if I were to do that, you'd have to pay for their expenses and their attorneys' fees to do it all over again." (*Id.* at 20:13-19.) The Court emphasized that Plaintiffs' "whole theory" is "that somebody was taking bribes at Facebook to – to do damage to the plaintiffs" (*Id.* at 10:8-10.) During this hearing, the Fenix Defendants informed the Court that HSBC had searched for documents concerning the alleged bribes and found none, and Plaintiffs' counsel attempted to avoid the import of that finding by arguing that he could not verify whether HSBC had conducted a diligent search and did not have HSBC under subpoena power. (*Id.* at 38:17-19, 47:6-48:7; *see also* ECF No. 126-1 ¶ 3.)[4] The Court admonished Plaintiffs: "Why didn't you just serve the subpoena? Why were you trying to do it on the cheap? . . . *You were supposed to get the records, and you didn't.* You could have subpoenaed them." (ECF No. 100 at 46:15-25 (emphasis added).) To the best of the Fenix Defendants' knowledge, since then, Plaintiffs' counsel has declined to follow up with HSBC about the existing subpoena or attempt to issue a new subpoena. (ECF No. 126-1 ¶ 3.)

Applying the Rule 12(b)(6) motion standard that factual allegations must be accepted as true, and without the benefit of knowing that the sender of the anonymous e-mail can never be identified by a third party, the Court denied the second round of motions to dismiss, deciding that Plaintiffs'

---

[3]  Notably, Plaintiffs' counsel failed to ask the Fenix Defendants' corporate representatives—including the Chief Financial Officer of Fenix International Limited—any questions about the alleged wire transfers at their Rule 30(b)(6) depositions. (*See generally* ECF Nos. 127-3, 127-5.) The Fenix Defendants' counsel even asked Plaintiffs' counsel, "Do you have any questions that you haven't asked that relate to the bribe, blacklisting that you accused us of in this complaint and the payments that you listed in 2018 and 2019?" (ECF No. 127-3 at 209:21-210:3.) Plaintiffs' counsel responded, "No." (*Id.*)

[4]  The only reason there is not a conclusive, formal response from HSBC is because, despite the Court's November 16, 2022 reprimand, Plaintiffs' counsel still has not formally served a subpoena on HSBC in this case. (*See* ECF No. 112 at 21-22; ECF No. 126-1 ¶ 3.)

claims were sufficiently pled. (ECF No. 101 at 3-4.)

### D. No Evidence of the Alleged Scheme or Wire Transfers Was Found During the Fenix Defendants' Jurisdictional Discovery.

Plaintiffs have known for some time that HSBC does not have any records regarding the alleged wire transfers and that the sender of the "Follow the money" e-mail cannot be verified and subpoenaed by the Court. Nevertheless, Plaintiffs required the Fenix Defendants to engage in an expedited jurisdictional discovery process at great cost and expense to the Fenix Defendants. In response to Plaintiffs' jurisdictional discovery requests, the Fenix Defendants conducted a comprehensive search, collecting ESI from 38 custodians who could have had any involvement in the alleged scheme (including Mr. Radvinsky and key personnel involved in finance, technology, and operations), applying broad search terms—including all of the bank account numbers, payment amounts, and account holder names listed on the anonymous e-mail attached to the SAC—to capture any ESI related to the alleged misconduct, and employing a date range going back to January 1, 2018. (*See* ECF No. 126-1 ¶ 5; ECF No. 123-10.) The Fenix Defendants uploaded and searched 564,895 files and engaged a team of lawyers who spent over 1,000 hours processing and reviewing 39,245 documents while also confirming that certain custodians were unaware of any alleged scheme or illicit wire payments and directing those custodians to search additional sources where such evidence could theoretically appear (including personal devices and messaging applications). (ECF No. 126-1 ¶¶ 5-7.) At the conclusion of this process, the Fenix Defendants found (1) ***no evidence*** of wire transfers to Meta personnel, (2) ***no evidence*** of the provision of names for a purported blacklist, (3) ***no evidence*** of communications about blacklisting or illicit wire payments, and (4) ***no evidence*** of or reference to any "special relationship" with the Meta Defendants. (*Id.* ¶ 8.) Moreover, the Fenix Defendants have served sworn interrogatory responses stating that they are unaware of any communications supporting the existence of a blacklisting scheme and that no record of such communications has been found after a reasonable search. (*Id.* ¶¶ 9-11 & Exs. 2-4 at Resp. No. 8.)[5]

---

[5] Throughout the case, Plaintiffs have revealed that they have made assertions or taken positions based on erroneous allegations. For example, in one of their interrogatories, they asked the Fenix

As of the filing of this Motion, Plaintiffs and the Fenix Defendants have completed supplemental briefing on the Fenix Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), which is ripe for the Court's adjudication.

### III. COMPLIANCE WITH SAFE HARBOR

"A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). "The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." *Id*. The Fenix Defendants complied with this safe-harbor provision by serving Plaintiffs' counsel with a copy of this motion, in draft form, on March 8, 2023. (*See* Sternberg Decl. ¶ 3 & Ex. 1.)

### IV. ARGUMENT

Under Rule 11 of the Federal Rules of Civil Procedure, counsel for any party filing a complaint must certify that, after an inquiry reasonable under the circumstances, the factual contentions "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). To satisfy the affirmative duty imposed by Rule 11, counsel must conduct a reasonable inquiry into the facts before filing papers with the court. *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 542 (1991). "Where, as here, the complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (internal quotation marks and citation omitted).

"An attorney's signature on a complaint is tantamount to a warranty that the complaint is

---

Defendants about how independent contractors were paid, referencing a bank account number that Plaintiffs asserted was associated with the Fenix Defendants. In fact, the purported bank account number was actually the phone number for the bank's headquarters. (*Compare* ECF Nos. 127-4 & 127-7 at Interrogatory No. 4 (identifying the bank account number as "631-537-1000"), *with Dime Community Bancshares, Inc.*, Yahoo! Finance, https://finance.yahoo.com/quote/DCOM/profile (last visited Mar. 8, 2023) (identifying the bank's phone number as "631 537 1000").)

well grounded in fact . . . and that it is not filed for an improper purpose." *Id.* When "the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). "Sanctions do not require a finding of bad faith, but under Rule 11(c)(4) they are limited to what is sufficient to deter repetition of the sanctioned conduct." *DNA Sports Performance Lab, Inc. v. Major League Baseball*, No. C 20-00546 WHA, 2020 WL 6290374, at *5 (N.D. Cal. Oct. 27, 2020).

### A. Plaintiffs' Allegations Against the Fenix Defendants Lack A Factual Basis.

As the Court previously noted, the "whole theory" of Plaintiffs' case against the Fenix Defendants is that the Fenix Defendants paid certain Meta executives to blacklist competitor platforms and adult entertainers, thus causing harm to Plaintiffs. Plaintiffs refer to the alleged "payments" or "transfers" throughout the SAC and rely on them for naming the Fenix Defendants as defendants. These allegations are foundational: to prove their claims, Plaintiffs must show that the Fenix Defendants made actual payments to the Meta Defendants intending to interfere with Plaintiffs' business. *See, e.g.*, *PAE Gov't Servs., Inc. v. MPRI, Inc.*, No. 06-cv-00964, 2008 WL 11337998, at *3-5 (C.D. Cal. Oct. 24, 2008) (requiring "intentional interference" using "improper methods," including "bribery," to assert tortious interference claims). But Plaintiffs do not have, and have never had, any credible factual basis to make these claims.

Instead, Plaintiffs' first two attempts at a complaint contained only vagaries based on assertions alleged on information and belief. *See Nguyen v. Simpson Strong-Tie Co., Inc.*, No. 19-cv-07901, 2020 WL 5232564, at *5 (N.D. Cal. Sept. 2, 2020) (imposing Rule 11 sanctions after finding that "Counsel either failed to conduct a competent inquiry into the facts necessary to support their claims, or didn't bother including them in the [original complaint] or [first amended complaint]"). When the Court demanded that Plaintiffs plead their best case, Plaintiffs laid bare that the "factual information" that supported their "best case" was a single e-mail from an anonymous sender through an encrypted e-mail address, SmartTIL@protonmail.com. The e-mail did not contain any actual banking records, did not identify the source of the information contained therein, and did not explain why the banking information contradicted the allegations of the SAC,

such as the spelling of the name of one of the Meta executives. Those uninvestigated, uncorroborated allegations fall short of the minimal requirements of Rule 11. *See Amorosa v. Ernst & Young LLP*, 682 F. Supp. 2d 351, 371 (S.D.N.Y. 2010) ("While anonymous sources do not necessarily need to be identified, at a minimum, a plaintiff must provide descriptions of any unnamed sources sufficient to allow the court to infer that the witnesses are likely to possess the information contained in their statements." (internal quotation marks and citations omitted)).

Plaintiffs have also known for several months that their allegations of illicit wire transfers were rendered false by HSBC's search for records in response to Plaintiffs' subpoena. The bank reported to both Plaintiffs' counsel and the Fenix Defendants' counsel that it had no record of the wire transfers supposedly listed in the anonymous e-mail. Moreover, in response to jurisdictional discovery requests, the Fenix Defendants ran the details of the alleged wire payments through their records and found no evidence that the payments were ever made. The word that best describes Plaintiffs' continued reliance on the allegations of bribe payments in the face of this evidence is *frivolous*, especially after being admonished by the Court that they could not cut corners and do this case on the "cheap." *See Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 803-04 (S.D.N.Y. 2020) (dismissing complaint relying on five unnamed sources lacking sufficient "indicia of reliability" given the lack of an indication that counsel attempted to "corroborate these secondhand accounts").

The Fenix Defendants, on the other hand, have invested substantial time and effort in investigating Plaintiffs' claims, including by engaging in a detailed ESI search of more than half a million documents as part of jurisdictional discovery. After spending over 1,000 hours of attorney time reviewing nearly 40,000 documents and investigating Plaintiffs' claims, the Fenix Defendants have sworn that no blacklisting scheme occurred and that these alleged wire transfers never took place.[6]

---

[6] The rest of the SAC that attempted to show Plaintiffs were blacklisted from Meta also included references to anonymous sources and even rehashed a news article based on even more anonymous sources—a practice courts have found would allow parties to circumvent the duty to conduct "an inquiry reasonable under the circumstances" in violation of Rule 11. *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801 (E.D. Va. 2007) (holding that "allow[ing] parties to fill gaps in their factual allegations by reference to unnamed or anonymous sources in a newspaper article" violated Rule 11).

Although convenient to blame the Fenix Defendants for whatever alleged economic harm Plaintiffs claim to have suffered, there are plausible, benign explanations for why Plaintiffs' content was removed from Meta's websites (like Plaintiffs' violations of Meta's policies). Plaintiffs' allegations of a bribery scheme are factually baseless. Plaintiffs never had any factual information that the Fenix Defendants paid the Meta Defendants to unfairly influence web traffic. Their allegations to the contrary were and are frivolous.

### B. Plaintiffs Failed to Conduct a Competent Pre-Filing Investigation into Their Claims.

Plaintiffs failed to conduct an adequate pre-filing investigation into their bribery claims and instead engaged in a cursory review of information provided by anonymous sources. "To assess whether an attorney has conducted an adequate pre-filing investigation, courts must consider factual questions regarding the nature of the inquiry and must determine whether the legal issues raised were warranted." *DNA Sports Performance Lab*, 2020 WL 6290374, at *7 (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 399 (1990)).

Here, the lack of a competent investigation is apparent. First, Plaintiffs filed two complaints apparently without any evidence, anonymous or not, to support their bribery allegations. Then, Plaintiffs filed the SAC relying exclusively on an anonymous e-mail received *after* filing the first complaints, rather than actually serving a subpoena on HSBC or otherwise establishing the existence of the wire transfers from a verifiable source. This anonymous email is entitled to no weight at all: from an evidentiary perspective, it is indistinguishable from an anonymous post on an Internet forum, as there is no way to verify the identity of the Proton Mail sender. *See In re Pfizer, Inc. Sec. Litig.*, 538 F. Supp. 2d 621, 630 (S.D.N.Y. 2008) (finding an allegation based on an anonymous blog post insufficient where plaintiffs failed to show the writer was likely to have known the relevant facts and did not elaborate on their "investigation" into the writer's identity). Rule 11 requires more. *See Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S. 120, 126 (1989) (holding that under Rule 11(b), an attorney has a "nondelegable responsibility" to "personally . . . validate the truth and legal reasonableness of the papers filed"); *see also Snyder-Falkinham v. Stockburger*, No. 96-CV-83, 1996 WL 1171800, at *1 (W.D. Va. Aug. 5, 1996) (awarding Rule 11 sanctions because

"[u]ncorroborated, fanciful assertions of an allegedly anonymous tipster do not replace informed judgment based upon reasonable inquiry"), *aff'd*, 53 F. App'x 243 (4th Cir. 2002).

In *Nguyen v. Simpson Strong-Tie Co., Inc.*, this Court awarded Rule 11 sanctions after plaintiffs failed to conduct a reasonable investigation before asserting factually baseless claims in the original and first amended complaints. 2020 WL 5232564, at *9. The court concluded that "Counsel had to have reached the conclusion that [certain evidence] seriously negated a core allegation of the FAC . . . . But instead of withdrawing this assertion after [defendants] raised the possibility of a Rule 11 violation, or alleging other facts to beef up the allegations . . . , they doubled down and instead resorted to selectively citing the [positive evidence] while ignoring the [negating evidence]." *Id.* at *5. Ultimately, the court concluded that "the largest problems with the FAC were that Counsel did no competent investigation, and as a result the FAC was legally and factually baseless, and what little investigation they did do . . . actually discredited the FAC's allegations." *Id.* at *8. The court awarded Rule 11 sanctions because "Counsel demonstrated an abuse of the judicial process and indifference toward judicial resources, and unnecessarily drove up litigation costs." *Id.* at *9.

Likewise, here, any reasonable investigation into the alleged HSBC wire transfers would have revealed that these claims are frivolous. Instead of withdrawing their baseless allegations, Plaintiffs persist after (1) HSBC found no wire transfer records supporting their core bribery allegations and (2) the Fenix Defendants' comprehensive jurisdictional discovery confirmed no evidence of wire transfers or a blacklisting scheme. As a result, Plaintiffs violated and continue to violate Rule 11 by failing to provide a factual basis to support their allegations where a reasonable investigation would have uncovered that the allegations are baseless—and in fact newly discovered evidence has negated the core allegations of their claims.

### C. The Court Should Strike Allegations Relating to the Fenix Defendants in Plaintiffs' Second Amended Class Action Complaint and Award Attorneys' Fees and Costs to the Fenix Defendants.

When Rule 11 has been violated, sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11 (c)(4). "The sanction may include nonmonetary directives; an order to pay a penalty into court; or,

if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Id*. For example, this Court has awarded attorneys' fees where the plaintiff "initiated th[e] suit without adequately investigating" the facts and "insisted on maintaining th[e] suit despite mounting evidence" that its claims were unsupported by evidence. *Max Sound Corp. v. Google, Inc.*, No. 14-cv-04412, 2017 WL 4536342, at *11 (N.D. Cal. Oct. 11, 2017). "Fee awards, if awarded pursuant to Rule 11, are subject to two conditions. The award must be limited to fees directly resulting from the violation and the fees awarded must be reasonable." *Nguyen*, 2020 WL 5232564, at *9. Additionally, courts have stricken false allegations and references in complaints that are "contrary to known facts" as a sanction under Rule 11. *Ivanova v. Columbia Pictures Indus., Inc.*, 217 F.R.D. 501, 512 (C.D. Cal. 2003), *aff'd*, 116 F. App'x 100 (9th Cir. 2004).

Here, Plaintiffs leveled baseless bribery allegations in all versions of their complaint. As a result, Plaintiffs' pleadings contain false material allegations of bribery that have "necessarily tainted the entire litigation as a whole from beginning to end." *Keister v. PPL Corp.*, 318 F.R.D. 247, 270 (M.D. Pa. 2015) ("In the Court's view, an award of reasonable attorney's fees for the entirety of this litigation is the least severe means necessary here to forestall [plaintiff's counsel's] consistently vexatious litigation tactics."). Worse, even after the Fenix Defendants conducted extensive and costly jurisdictional discovery and found no evidence of the wire transfers or the blacklisting scheme, Plaintiffs continue to stand on these frivolous allegations for which there can be no good faith basis. *See Nguyen*, 2020 WL 5232564, at *9 (awarding attorneys' fees as a "necessary deterrence" when plaintiff's counsel had "multiple opportunities and ample time in which they could have remedied these shortcomings" and demonstrated an "indifference toward judicial resources, and unnecessarily drove up litigation costs").

Plaintiffs' counsel evidently do not intend to change their course of conduct and must be stopped from continuing to make baseless accusations in this Court as well as in the other courts where they have filed suit, using different plaintiffs to make the same baseless accusations against the Fenix Defendants. *See DNA Sports Performance Lab*, 2020 WL 6290374, at *7-8 ("Given [plaintiffs'] persistence, it may be that no amount of sanctions will deter it from continuing its

-12-                               Case No. 3:22-cv-01101-WHA
FENIX DEFENDANTS' MOTION FOR RULE 11 SANCTIONS

crusade. The requested amount of fees, however, will at least compensate the [defendants] for the harm done here."); *Ivanova*, 217 F.R.D. at 514 ("Unfortunately, sanctions are necessary to deter counsel from wasting resources of the Court."). Consistent with these considerations, the Fenix Defendants respectfully ask that the Court strike the allegations in the SAC against the Fenix Defendants and order Plaintiffs and their counsel to reimburse the Fenix Defendants for their attorneys' fees and costs reasonably incurred in defending against these frivolous claims and bringing this Motion. *See DNA Sports Performance Lab*, 2020 WL 6290374, at *5, *8 (granting the defendants' request to award Rule 11 sanctions in the form of attorneys' fees and costs incurred from the filing of the complaint in January 2020 through the plaintiffs' voluntarily dismissal with prejudice in August 2020); *Rider v. JPMorgan Chase Bank N.A.*, No. 20-cv-06888, 2021 WL 229308, at *4 (N.D. Cal. Jan. 22, 2021) (granting the defendant's request for Rule 11 sanctions for defending against the frivolous action from its filing in August 2020 through the filing of the sanctions motion in December 2020); *Ivanova*, 217 F.R.D. at 512 (striking false allegations from the complaint and awarding attorneys' fees and costs as a sanction under Rule 11).[7]

## V.     CONCLUSION

The Fenix Defendants respectfully request that their motion for sanctions be granted pursuant to Rule 11(c) of the Federal Rules of Civil Procedure. The Court should strike all allegations in the Second Amended Class Action Complaint that relate to the Fenix Defendants and order Plaintiffs and their counsel to pay the Fenix Defendants' attorneys' fees and costs incurred in defending against these claims.

---

[7] If this Motion is granted, the Fenix Defendants' counsel will file a separate motion for attorneys' fees and costs with detailed billing entries and expenses in support of the Rule 11 award the Court finds reasonable.

| | |
|---|---|
| DATED:  March 8, 2023 | Respectfully submitted,<br><br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br><br>By  /s/ Jason D. Sternberg<br>    Shon Morgan (Bar No. 187736)<br>    (shonmorgan@quinnemanuel.com)<br>    865 South Figueroa Street, 10th Floor<br>    Los Angeles, California 90017<br>    Telephone: (213) 443-3000<br>    Facsimile: (213) 443-3100<br><br>    Linda J. Brewer (Bar No. 217730)<br>    (lindabrewer@quinnemanuel.com)<br>    50 California Street, 22nd Floor<br>    San Francisco, California 94111<br>    Telephone: (415) 875-6600<br>    Facsimile: (415) 875-6700<br><br>    John F. O'Sullivan (Fla. Bar No. 143154)<br>    (johnosullivan@quinnemanuel.com)<br>    Jason D. Sternberg (Fla. Bar No. 72887)<br>    (jasonsternberg@quinnemanuel.com)<br>    2601 South Bayshore Drive, 15th Floor<br>    Miami, Florida 33133<br>    Telephone: (305) 402-4880<br><br>*Attorneys for Defendants Fenix International Limited, Fenix Internet LLC, and Leonid Radvinsky* |

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule 5-1, I hereby certify that, on March 8, 2023, all counsel of record are being served with a copy of the foregoing via e-mail.

DATED: March 8, 2023

By:    */s/ Jason D. Sternberg*
       Jason D. Sternberg