Michael P. Esser (SBN 268634)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: +1 415 439 1400
Facsimile: +1 415 439 1500
michael.esser@kirkland.com

K. Winn Allen, P.C. (admitted *pro hac vice*)
Devin S. Anderson (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: +1 202 389 5000
Facsimile: +1 202 389 5200
winn.allen@kirkland.com
devin.anderson@kirkland.com

*Attorneys for Defendants Instagram, LLC,*
*Facebook Operations, LLC, and Meta*
*Platforms, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| DAWN DANGAARD, *et al.*, | CASE NO. 3:22-CV-01101-WHA |
| Plaintiffs, | **META'S STATUS REPORT ABOUT** |
| v. | **ORDERED DISCOVERY AND** |
| | **REQUEST FOR AN EXPEDITED** |
| INSTAGRAM, LLC, *et al.*, | **SUMMARY JUDGMENT BRIEFING** |
| | **SCHEDULE** |
| Defendants. | |

Defendants Instagram, LLC, Facebook Operations, LLC, and Meta Platforms, Inc. (collectively "Meta") submit this status report and a request for the Court to set an expedited schedule for briefing a motion for summary judgment. Now that the discovery process that the Court ordered is complete, it has become apparent that plaintiffs are advancing this case on the basis of documents that appear to be fabricated and fraudulent. It is time to bring this case to a swift conclusion.

The Court held a status conference with the parties on March 29, 2023, at which time it became apparent that plaintiffs were dramatically changing their theory of the case and the allegations that enabled them to overcome a motion to dismiss. As the Court recognized, plaintiffs' case against Meta rises and falls on the veracity of their allegations that OnlyFans paid bribes to specified Meta executives to execute the alleged "blacklisting" scheme described in the complaint. When the Court correctly recognized that plaintiffs were "trying to run away from" the "alleged bribe" that "got them past the 12(b)(6)," it ordered the parties to conduct targeted discovery into the alleged bribes. 3/29/23 Hr'g Tr. 61:21–62:5. The Court's order required plaintiffs to (1) subpoena the banks involved in the alleged wire-transfers via which the bribes were purportedly paid; and (2) depose reporters from *WIRED* Magazine, which provided plaintiffs with a "transcript" of an alleged internal Facebook document that plaintiffs have cited as support for their claims. 3/29/23 Minute Order, ECF No. 143. The Court also allowed plaintiffs to depose the Meta executives who allegedly received these bribes and permitted the parties to serve reasonable sets of reciprocal document requests regarding the alleged bribes. *Id.* That discovery period closed yesterday, July 5, 2023. 6/8/23 Order re Status Report, ECF No. 159.

With the benefit of that discovery, it is now painfully obvious that plaintiffs' allegations of bribery, and the alleged scheme that bribery allegedly facilitated, are categorically false and without any evidentiary support whatsoever.

- The three individuals at Meta who are alleged to have received payments from OnlyFans—Sir Nicholas Clegg, Lady Nicola Mendelsohn, and Cristian Perrella—repeatedly and categorically denied receiving any such payments. They further denied any knowledge of or involvement in any aspect of the alleged "scheme."

- Although plaintiffs were permitted by the Court to serve document requests on Meta, they never did.

- The representative for *WIRED*'s parent company, Condé Nast, testified that it has no evidence of bribes.

- No bank has produced any evidence that corroborates the purported wire transfers that form the basis of plaintiffs' claims.

- In response to Meta's requests for production, plaintiffs simply produced 13 pages of unverified documents and communications with reporters and anonymous sources that they previously attached to or described in their complaint.

Given the complete absence of evidence supporting the bribery allegations, and the wealth of evidence refuting those allegations, the next proper case-management step is a briefing schedule for a motion for summary judgment. The undisputed facts are that the named Meta executives or employees did not take bribes and did not perform any of the actions alleged in the complaint. Meta respectfully requests that the Court set an expedited briefing schedule for Meta to file a motion for summary judgment.

I.     **Procedural Background**

This Court allowed plaintiffs to "re-plead their complaint" after plaintiffs' counsel represented at a September 2022 hearing that they had additional information that supported plaintiffs' claims. 9/13/22 Order re Mots. to Dismiss, ECF No. 71 at 1. The Court expressly ordered plaintiffs to "plead their best case." *Id.* Plaintiffs then filed a second amended complaint that added specific allegations that the Fenix Defendants paid bribes to three Meta executives to further the alleged scheme of blacklisting accounts of adult entertainers who worked for competitors of OnlyFans: Sir Nicholas Clegg (Meta's President of Global Affairs), Lady Nicola Mendelsohn (Head of Meta's Global Business Group), and Cristian Perrella (Meta's Director of Law Enforcement Outreach for EMEA (Europe, Middle East, and Africa)). Second Am. Compl. ("SAC"), ECF No. 105 at ¶¶ 80–83. Plaintiffs pointed to two pieces of "evidence" to support their bribery allegations: (1) an email from an anonymized sender with the subject line "Follow the Money" that purports to show several wire transfers the Fenix Defendants made from an account at HSBC Bank through an intermediary to trust accounts in the Philippines allegedly associated with the three Meta executives and employees, and (2) a whistleblower report made anonymously through a publicly available Facebook website that alleges "[c]ertain employees are taking bribes to protect OnlyFans on [Facebook]."

1  11/30/22 Order Denying Mot. to Dismiss, ECF No. 101, at 4–5; ECF No. 105-4 (SAC Ex. D) ECF No.

2  105-13 (SAC Ex. M).

3   Based on the "allegation that Meta defendants' employees accepted bribes from Fenix defendants

4  in late 2018 to blacklist competitors of OnlyFans," this Court denied Meta's motion to dismiss.  11/30/22

5  Order Denying Mot. to Dismiss, ECF No. 101, at 3–4.  This Court later reiterated that the specific bribery

6  allegations were essential to that decision: "the bribe was a big deal.  The alleged bribe . . . got [plaintiffs]

7  past the 12(b)(6)."  3/29/23 Hr'g Tr. at 61:21–62:5.

8   At the case-management conference on March 29, 2023, it became clear that plaintiffs were losing

9  confidence in their bribery allegations and did not want to take discovery.  Among other things, the Court

10  observed the following of plaintiffs' case:

11  - "[Y]ou're changing your tune.  Yes, you are.  Shifting sands.  Last time, the bribe and Philippines

12   and HSBC was big in your argument.  And now you're making it sound like you never -- those are

13   just throw-away arguments."  *Id.* at 47:2–7.

14  - "You sound very much like a lawyer who's running away from the bribe allegation . . . It was your

15   -- it was your big deal. You have made this -- come on. We could go back and look at the prior

16   transcripts and see how many times you mention the bribe."  *Id.* at 55:4–5, 55:12–15.

17  - "[Y]ou, yourself, made the bribe center -- centerpiece of your case.  Now you're backing away

18   from that, but if it's no good, then -- but you keep handing me things even today that suggest there

19   was a bribe.  So let's find out." *Id.* at 63:17–23.

20   The Court then instructed the parties that it was setting a "case management plan" to determine if

21  plaintiffs could put forward "a plausible case for a bribe" that they made the "centerpiece of [their] case."

22  *Id.* at 60:12–15, 63:17–23.  The Court ordered plaintiffs to serve subpoenas no later than April 5, 2023,

23  on an array of third parties who might have knowledge of the alleged wire transfers—including certain

24  banks, the Federal Reserve, and *WIRED* Magazine.  3/29/23 Minute Order, ECF No. 143.  Beyond the

25  mandatory third-party discovery, this Court authorized, but did not require, plaintiffs and Meta to serve

26  limited discovery consisting of (1) depositions of the Meta employees who submitted sworn declarations

27  denying every single allegation in the federal plaintiffs' amended complaint, and (2) reasonable sets of

28  reciprocal document requests regarding the alleged bribes.  *Id.*  Plaintiffs' counsel served the required

third-party subpoenas and deposed the Meta employees named in the complaint. But plaintiffs declined

the Court's invitation to serve any written discovery or document requests on Meta. Meta promptly served

plaintiffs with document requests for any evidence of bribes. Plaintiffs produced a mere 13 pages. This

discovery unearthed no admissible evidence that OnlyFans paid bribes to Meta employees to execute the

alleged scheme.

## II.     Discovery Has Produced No Admissible Evidence of Bribes

No evidence supports plaintiffs' central allegation that individuals associated with OnlyFans paid

bribes to certain Meta executives or employees to execute the alleged "blacklisting" scheme described in

the complaint. SAC ¶¶ 71–86.

Discovery from Meta. The Court's order permitted, but did not require, plaintiffs to depose

Nicholas Clegg, Nicola Mendelsohn, and Cristian Perrella—the three named individuals who are alleged

to have received payments from OnlyFans—and serve reasonable document requests related to the

depositions. 3/29/23 Minute Order. Despite initially saying they planned to send Meta document requests,

plaintiffs never did and have therefore forfeited their right to take document discovery of Meta. They did,

however, proceed with the depositions of Sir Clegg, Lady Mendelsohn, and Mr. Perrella.

All three flatly denied plaintiffs' bribery allegations. In his sworn deposition, Sir Clegg testified

that neither he nor any member of his family has an offshore trust or bank account in the Philippines and

that "[n]ot a single word or number in this [the purported wire transfer records] is recognizable to me or

conceivable." Anderson Decl., Ex. 1 (6/8/23 Clegg Dep. Tr.) 109:11–110:2, 111:21–24. Sir Clegg also

testified that he has never had any communications with anyone from OnlyFans and has not discussed the

activity of any adult performer or adult platform on the Meta platforms outside this litigation. *Id.* at 60:22–

61:10, 62:8–16. Lady Mendelsohn likewise testified that she has no knowledge of the alleged wire

transfers and has never had any communications with anyone from OnlyFans, period. Anderson Decl.,

Ex. 2 (5/24/23 Mendelsohn Dep. Tr.) 42:7–15, 50:4–6. She also testified that she does not own and has

no knowledge of the "Nicola Mendelsohn Trust" that purportedly received wire transfers. *Id.* at 42:17–

23. Lady Mendelsohn testified that she does not have any bank accounts in the Philippines, has never

been to the Philippines or had any communication with a bank in the Philippines, and does not have any

foreign trusts. *Id.* at 40:21–22, 73:3–17. Finally, Mr. Perrella testified that he has no knowledge of the

1    alleged wire transfers and has not ever had any communications with anyone from OnlyFans.  Anderson

2    Decl., Ex. 3 (5/30/23 Perrella Dep. Tr.) 36:11–37:10.  Mr. Perrella testified that he does not have any bank

3    accounts in the Philippines, does not have any foreign trusts, and has never been to the Philippines or had

4    any communication with a bank in the Philippines.  *Id.* at 34:9–23.  Mr. Perrella also has no knowledge

5    of whether adult-content platforms have a presence on Instagram as part of their business and explained

6    that "adult content is not allowed on Instagram."  *Id.* at 32:2–16.  The testimony from the named

7    individuals at Meta completely refutes the claims in the complaint.

8    Discovery from *WIRED*.  The Court's order required plaintiffs to serve deposition subpoenas on

9    *WIRED* magazine concerning bribes and the identities of anyone providing information to *WIRED*.

10   3/29/23 Minute Order.  This discovery was in response to a document that purported to be a "transcript"

11   of an alleged "internal Facebook document" that plaintiffs submitted, which showed that they were

12   working in close coordination with a *WIRED* reporter, Dell Cameron.  *WIRED* did not provide any

13   evidence or information about the alleged bribes.  In response to plaintiffs' request for "documents relating

14   to bribery of any kind . . . related to the" exhibits and allegations in this case, *WIRED*'s corporate parent

15   responded that it "has conducted a reasonable search and diligent inquiry for responsive materials within

16   its possession, custody or control and has been unable to locate any responsive documents, nor does it

17   believe any such responsive documents were once in its possession custody or control but have since been

18   lost."  Anderson Decl., Ex. 4 (4/19/23 Advance Resp. to RFP 2).  Mr. Cameron testified as the corporate

19   representative and affirmed that this statement was accurate.  Anderson Decl., Ex. 5 (5/24/23 D. Cameron

20   Dep. Tr.) at 163:25–164:11, 165:3–8.

21   The depositions of Mr. Cameron and his editor, Andrew Couts, did not provide any admissible

22   testimony supporting the bribery allegations, either.  Both witnesses refused to answer almost any

23   substantive questions about the allegations or sources of information on the grounds of reporter's

24   privilege.  In total, Mr. Cameron invoked the reporter's privilege and refused to answer at least 72 times.

25   Mr. Couts invoked the privilege 31 times.  These included refusals to provide "the date of a

26   communication, who made the statement, to whom and in whose presence the statement was made, other

27   persons to whom the contents of the statement have been disclosed, and the general subject matter of the

28   statement," which is information that the witness must provide under this Court's Supplemental Order.

Supp. Order to Order Setting Initial Case Mgmt. Conf. (updated Feb. 12, 2018); *see* Anderson Decl., Ex. 6 (5/25/23 A. Couts Dep. Tr.) at 11:11–14; 12:11–13 ("Q: Have you discussed with Mr. Cameron his research regarding allegations that OnlyFans has received special treatment on Instagram and Facebook?... [objection reporter's privilege] … I decline to answer that question."); *Id.* at 19:25; 20:1–10 ("Q: Mr. Couts, did you discuss at any time with Mr. Cameron whether the transcript, Exhibit 22, was newsworthy? . . . [objection reporter's privilege] . . . Q: Mr. Couts, are you going to follow counsel's advice and decline to answer? A: I am."); Anderson Decl., Ex. 5 (5/25/23 D. Cameron Dep. Tr.) at 127:8–13 ("Q. On what date did you receive the whistleblower report? . . . [objection reporter's privilege] . . . A. I decline to answer that."); *Id.* at 143:7–14 ("So has anyone else employed by WIRED, to your knowledge, seen the original copy of the report that you reviewed in January of 2023? . . . [objection reporter's privilege] . . . A. I decline to answer that."). The *WIRED* testimony provides no support for the bribery allegations whatsoever.

    <u>Discovery from Banks.</u>  The Court's order also required plaintiffs to serve subpoenas on the Federal Reserve, HSBC Bank, and any other banks involved in the chain of the alleged bribes purportedly shown in the wire-transfer documents plaintiffs provided the Court at the March 29, 2023 hearing.  3/29/23 Minute Order.  This discovery has not produced any evidence supporting plaintiffs' allegations that individuals affiliated with OnlyFans bribed Meta employees Sir Nick Clegg, Lady Nicola Mendelsohn, and Cristian Perrella to blacklist plaintiffs or "whitelist" OnlyFans on Meta's platforms.  In April, HSBC Bank formally responded to plaintiffs' subpoena with various objections and did not agree to provide any documents. Anderson Decl., Ex. 7 (4/28/23 HSBC Objs. to Subpoena).  Plaintiffs have repeatedly refused defendants' requests to be copied on or provided with plaintiffs' correspondence with the third-party subpoena recipients.  But from plaintiffs' May 31, 2023 status report and the limited information plaintiffs provided defendants about scheduling, defendants understand that the Federal Reserve Bank of New York, HSBC Bank, and the Barclays Bank entities plaintiffs subpoenaed have not produced any documents nor provided any testimony supporting plaintiffs' allegations.  The clock has now run out on those efforts.[1]

---

[1]  Plaintiffs even asked the Court for "direction" regarding the scope of their subpoena to the Federal Reserve Bank of New York.  Pls.' Resp., ECF No. 157, at 3.  In response, the Court noted "It is odd for plaintiffs' counsel to ask the Court how to solve their problems," and declined to further extend the discovery period.  June 8, 2023 Order re Status Report, ECF No. 159, at 2.

<u>Discovery from Plaintiffs.</u>  The Court's order also allowed Meta to serve plaintiffs with a reasonable set of document requests regarding evidence supporting their bribery allegations.  3/29/23 Minute Order.  In response to Meta's document requests, plaintiffs agreed to produce any nonprivileged "'evidence' of a bribe," defining evidence broadly as "[s]omething. . . that tends to prove or disprove the existence of an alleged fact."  Anderson Decl., Ex. 8 (5/9/23 Plaintiffs' Resps. & Objs.).  Plaintiffs' entire production consists of a mere 13 pages of documents, none of which contained any actual evidence that anyone at Meta received bribes.  Anderson Decl., Ex. 9 (Plaintiffs' production).

Plaintiffs' 13-page production comprises documents plaintiffs previously provided or described to the Court.  These documents include the anonymous whistleblower report that plaintiffs attached to their amended complaint, correspondence with an anonymous email account, and correspondence with Mr. Cameron about other alleged documents that plaintiffs attached to their amended complaint or referred to at hearings.  *Id*. at 1–2, 8–13.  The production also includes a series of texts between plaintiffs' counsel David Azar and someone named Scott Stedman that contains no additional information about the alleged wire-transfer payments.  SAC ¶ 84; Anderson Decl., Ex. 9 (Plaintiffs' production) at 3–5.  Finally, plaintiffs' production includes a purported memo from a Connecticut attorney that makes similar anonymous claims as those in the complaint, but the memo provides no factual support for those claims and no references to the alleged bribes.  Anderson Decl., Ex. 9 (Plaintiffs' production) at 6–7.  Plaintiffs' production offered no admissible evidence that supports the bribery allegations.

**III.    Discovery Has Produced No Admissible Evidence of the Alleged Scheme**

Plaintiffs also lack any admissible evidence of other aspects of the purported scheme.  Plaintiffs used discovery to explore the allegations in the purported whistleblower report plaintiffs submitted as an exhibit to their complaint and the purported "transcript" of an alleged internal Facebook document plaintiffs provided at the March 29 case management conference.   SAC, ECF No. 105-12, Ex. L; 3/28/23 Exhibit A to Plaintiffs' Application for Leave to File Supplementation, ECF No. 138-3.  No evidence emerged to authenticate or support the reliability of these documents.

Plaintiffs' May 31, 2023 status report tries to suggest that Mr. Cameron provided testimony that somehow justifies additional discovery into the authenticity of the "transcript" of the alleged "internal report."  Pls.' Resp., ECF No. 157, at 8–9.  That is decidedly not the case.  As Meta's pending motion to

maintain this document under seal explains, this document bears no indicia of authenticity, reliability, or credibility, and there are several aspects of the document that strongly suggest that it is not an authentic Meta document.  *See* 4/4/23 Resp. to Pls. Admin. Mot. to Consider Whether Certain Materials Should be Sealed, ECF No. 145.  Meta has conducted a thorough search and has found no evidence of the document that is purported to be transcribed in the "transcript" or the investigation it purports to describe.  Anderson Decl., Ex. 13 (S. Mannai Decl.) ¶¶ 4–5, 7.  The targeted discovery conducted pursuant to this Court's March 29, 2023 order only confirms that the document is not authentic, and plaintiffs failed to develop any evidence to argue to the contrary.

    Discovery from Meta.  Plaintiffs questioned Sir Clegg, Lady Mendelsohn, and Mr. Perrella at length about the details of the "scheme" alleged in this complaint and the allegations in the "transcript" of the likely fabricated "internal Facebook document."  3/28/23 Exhibit A, ECF No. 138-3.  Sir Clegg testified that he has no knowledge of content from any adult performer being added to the GIFCT database or specific content enforcement action against any adult performer.  Anderson Decl., Ex. 1 (6/8/23 Clegg Dep. Tr.) at 62:22–25, 67:5–11.  Sir Clegg has never heard of an allegation that anyone at Meta took money to manipulate content moderation treatment of an individual or an entity outside this litigation, is "unaware of anyone being accused of abusing the [content moderation] system for personal gain," and believes that an allegation of that kind "would definitely be escalated to senior executives" due to its gravity.  *Id.* at 30:3–23.

    As for the alleged "transcript," Sir Clegg testified that it "seems from top to bottom to be a wholly fictional artifact," *id.* at 80:5–11, and an "an elaborate fictitious account with no grounding in reality whatsoever," *id.* at 99:17–100:7.  With respect to alleged details of purported actions and statements attributed to Sir Clegg in the "transcript," he testified that the allegations are "Totally comprehensively false and some of the detail -- alleged false detail alleged here is also insulting." *Id.* at 102:25–103:12.  Sir Clegg emphasized that "since all of the events here described are false, my responses are consistently going to say that they're false because they are."  *Id.* at 102:4–16.  Regarding the transcript's account of actions taken in the London office, Sir Clegg testified, "I literally have no idea what this is about because it's false, so I'm not -- I'm not likely to have known."  *Id.* at 106:10–18.

1        Lady Mendelsohn also testified that she has no knowledge of the alleged manipulation of the

2    shared hash database or any scheme to action content to benefit OnlyFans.  Anderson Decl., Ex. 2 (5/25/23

3    N. Mendelsohn Dep. Tr.) at 88:2–6, 154:8–16.  Lady Mendelsohn testified that if she had heard of *anyone*

4    accepting bribes in exchange for misusing content moderation and that if such conduct came to Meta's

5    attention, that person would be fired.  *Id.* at 36:17–22, 154:18–155:21, 157:10–17.  On the alleged

6    "transcript," Lady Mendelsohn testified that her "personal impression was that the overall take was

7    ludicrous. . . . Ludicrous because the different allegations that I can recall seem so implausible that -- as I

8    said, the use of my word was I could never have imagined such a thing having taken place."  *Id.* at 83:7–

9    15, 83:25–84:3.  Similarly, when asked if he has heard of anyone at Meta accepting money in exchange

10    for affecting content moderation or whitelisting an organization, Mr. Perrella testified that he had "never

11    heard of anything like that" and that such conduct would be a "serious violation" of Meta's policies.

12    Anderson Decl., Ex. 3 (5/30/23 C. Perrella Dep. Tr.) at 25:24–26:11.

13        <u>Discovery from *WIRED*.</u>  Nothing in the testimony from *WIRED* shores up the authenticity or

14    reliability of this purported document.  Mr. Cameron and Mr. Couts steadfastly refused to answer whether

15    anyone at *WIRED* had conveyed concerns about the authenticity of the alleged internal report and what

16    steps anyone at *WIRED* took to try to corroborate the information in the alleged internal report, beyond

17    asking Meta for comment.  Anderson Decl., Ex. 5 (5/24/23 D. Cameron Dep. Tr.) at 153:20–155:8; *see*

18    *also* Anderson Decl., Ex. 6 (5/25/23 A. Couts Dep. Tr.) 24:6–12, 27:9–17 (declining to answer questions

19    about the identity of the source who authored the alleged internal report and what steps he took to confirm

20    or deny the allegations therein).  And what testimony Mr. Cameron did give casts tremendous doubt on

21    the authenticity of the document.  Mr. Cameron admitted that he only reviewed the alleged original copy

22    of the internal report one time for two hours and that his notes from his review have been destroyed.

23    Anderson Decl., Ex. 5 (5/24/23 D. Cameron Dep. Tr.) 136:5–137:3, 152:5–25.  Mr. Cameron also testified

24    that he took no steps to verify the statements he made to plaintiffs' counsel that Meta "was looking to find

25    employees who had had anything to do with [the alleged internal report] . . . to keep them from

26    communicating about the document" and that "Meta had approached the author of the report and asked

27    that individual to sign a sworn statement that it was just a draft."  *Id.* at 156:24–158:6.  In fact, Mr.

28    Cameron made a point of clarifying that he did *not* say he believed those statements.  *Id.*

1        <u>Discovery from Plaintiffs.</u>  Plaintiffs' production offered no additional information about the

2    authenticity or source of the "transcript" of the likely fabricated "internal Facebook document."  As

3    discussed above, plaintiffs' tiny production contained only two documents that Plaintiffs had not already

4    provided or alluded to before the Court.  Neither of those documents provides any information whatsoever

5    about the provenance, reliability, or authenticity of the alleged report.

6    **IV.    Next Steps**

7        The discovery period has closed, and plaintiffs have no evidence supporting their core bribery-for-

8    blacklisting allegations.  Plaintiffs now have a failure of proof on the central pillar of their claim, and the

9    next step is summary judgment.  Meta respectfully requests that this Court set an expedited summary-

10   judgment briefing schedule to resolve this case.

DATED:  July 6, 2023                           KIRKLAND & ELLIS LLP

                                               Respectfully submitted,


                                               /s/ K. Winn Allen
                                               K. Winn Allen, P.C. (admitted *pro hac vice*)
                                               Devin S. Anderson (admitted *pro hac vice*)
                                               KIRKLAND & ELLIS LLP
                                               1301 Pennsylvania Avenue, N.W.
                                               Washington, D.C. 20004
                                               Telephone: +1 202 389 5000
                                               Facsimile: +1 202 389 5200
                                               winn.allen@kirkland.com
                                               devin.anderson@kirkland.com

                                               Michael P. Esser (SBN 268634)
                                               KIRKLAND & ELLIS LLP
                                               555 California Street
                                               San Francisco, CA 94104
                                               Telephone: +1 415 439 1400
                                               Facsimile: +1 415 439 1500
                                               michael.esser@kirkland.com

                                               *Attorneys for Defendants Instagram, LLC,*
                                               *Facebook Operations, LLC, and Meta*
                                               *Platforms, Inc.*

**CERTIFICATE OF SERVICE**

On July 6, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all persons registered for ECF. All copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-1 have been so served.

*/s/ K. Winn Allen*
K. Winn Allen, P.C.