UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAWN DANGAARD, KELLY GILBERT, and JENNIFER ALLBAUGH,<br><br>  Plaintiffs,<br><br>  v.<br><br>INSTAGRAM, LLC, FACEBOOK OPERATIONS, LLC, FENIX INTERNET LLC, FENIX INTERNATIONAL LTD., META PLATFORMS, INC., LEONID RADVINSKY, and JOHN DOES 1–10,<br><br>  Defendants. | No. C 22-01101 WHA<br><br>**ORDER RE FENIX DEFENDANTS' FRCP 12(B)(2) MOTION TO DISMISS AND RELATED MOTIONS TO SEAL** |

**INTRODUCTION**

This diversity and putative class action concerns claims of unfair competition and tortious interference with contracts and business relationships. A prior order held defendants' motion to dismiss under FRCP 12(b)(2) in abeyance pending jurisdictional discovery (Dkt. No. 65). A period of supplemental jurisdictional discovery was then permitted (Dkt. No. 159). With the granted window for jurisdictional discovery now closed, defendants' motion to dismiss under FRCP 12(b)(2) is **GRANTED**.

**STATEMENT**

Our prior order laid out the facts underlying this action in detail (Dkt. No. 101). In short, plaintiffs Dawn Dangaard, Kelly Gilbert, and Jennifer Allbaugh are adult entertainment performers who utilize various online platforms to promote themselves and to disseminate the

1  content they create, including the website "OnlyFans." Defendants Fenix International
2  Limited, Fenix Internet LLC, and Leonid Radvinsky (collectively, "Fenix defendants") own
3  and operate OnlyFans. Defendant Meta Platforms, Inc., owns and operates defendants
4  Instagram, LLC, and Facebook, LLC (collectively, "Meta defendants"). John Does One
5  through Ten were employees of Meta defendants when the claims arose.

6  Plaintiffs allege that defendants conspired in an anticompetitive scheme to boost the
7  popularity of OnlyFans. In addition to OnlyFans, plaintiffs utilize other websites that compete
8  with OnlyFans. The alleged scheme involved Meta defendants reducing web traffic to those
9  OnlyFans competitors, in part by suppressing the online visibility of those who do not
10 exclusively use OnlyFans. This involved blacklisting users such as plaintiffs that utilize
11 competitor websites from Meta defendants' social media platforms. Plaintiffs allege that Fenix
12 defendants paid Meta defendants to demote or delete plaintiffs' accounts and posts on
13 Instagram and Facebook, and to label them terrorists such that they were blacklisted from other
14 social media platforms. As such, plaintiffs assert claims of unfair competition and tortious
15 interference with plaintiffs' contracts and business relationships (with competitors of
16 OnlyFans), as the scheme increased OnlyFans' revenue while reducing plaintiffs' overall
17 viewership and revenue.

18 Our prior order denied both Meta and Fenix defendants' FRCP 12(b)(6) motions to
19 dismiss. Fenix defendants' FRCP 12(b)(2) motion, however, was held in abeyance pending
20 jurisdictional discovery. That jurisdictional discovery window closed on January 31, 2023
21 (Dkt. No. 65). A round of supplemental briefing on jurisdiction followed. At the jurisdictional
22 hearing on March 29, 2023, plaintiffs' counsel produced new evidence that purported to show
23 FedPayments Manager printouts reflecting wire transfers facilitating bribery. Plaintiffs'
24 counsel had also filed a document the day before the hearing purporting to show evidence of an
25 internal Meta investigation regarding the alleged scheme. Because these developments
26 potentially weighed on plaintiffs' jurisdictional theory, another two months was given to
27 depose various witnesses and allow a full investigation (Dkt. No. 143). That discovery period
28 was extended yet another month to allow the Federal Reserve to be properly subpoenaed such

1   that it may verify the purported FedPayments Manager printouts of bribe wire transfers (Dkt.
2   No. 159). A further round of supplemental briefing ensued. Significantly, plaintiffs have
3   recently noticed withdrawal of the paragraphs in their operative complaint and the original
4   whistleblower evidence that relate to bribery by Fenix defendants (Dkt. No. 172). With
5   jurisdictional discovery finally closed, this order follows full briefing and oral argument.

**ANALYSIS**

To set the scene, only specific personal jurisdiction is at issue here, as plaintiffs do not assert general jurisdiction. The latter refers to the ability of a court to exercise jurisdiction outright, including when claims for relief are otherwise untethered to a defendant's relationship with the forum. The former by contrast exists when a suit arises out of or is related to the defendant's contacts with the forum. *See Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 261–62, (2017). This order assesses the sufficiency of plaintiffs' asserted basis for jurisdiction: specific personal jurisdiction.

In determining whether specific jurisdiction exists over a nonresident defendant, our inquiry "focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U. S. 770, 775 (1984)). FRCP 4(k)(2), the federal long-arm statute, is inapplicable here because there are no federal claims. *See Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007). Because no federal statute otherwise authorizes personal jurisdiction, California law determines personal jurisdiction in this action, and California's long-arm statute "is coextensive with federal due process requirements." *See Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). For a court to exercise specific jurisdiction over a nonresident defendant, three requirements must be met:

> (1) the defendant must either "purposefully direct his activities" toward the forum or "purposefully avail[] himself of the privileges of conducting activities in the forum"; (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Dole*

3

*Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).  The burden is on plaintiff to satisfy the first two prongs of the test.  If plaintiff is able to do so, the burden then shifts to defendant to "present a compelling case" that exercising jurisdiction would be unreasonable. *Id.* at 1068–69 (citations omitted).

The first prong contains two distinct concepts:  availment and direction.  The former usually applies to suits sounding in contract, while the latter applies most readily to suits sounding in tort, such as the instant action.  *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citations omitted).  "In tort cases, we typically inquire whether a defendant 'purposefully direct[s] his activities' at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum."  *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006); *see also Freestream Aircraft (Berm.) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 606 (9th Cir. 2018) (clarifying application of effects test "when dealing with out-of-forum tortfeasors").  This effects test, based on *Calder v. Jones*, 465 U.S. 783 (1984), comprises of three elements:  "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  *AMA Multimedia, Ltd. Liab. Co. v. Wanat*, 970 F.3d 1201, 1208–09 (9th Cir. 2020) (quoting *Mavrix*, 647 F.3d at 1228).

Our complaint largely treats the three Fenix defendants as one, although "each party's 'contacts with the forum [s]tate must be assessed individually.'"  *Boon Glob. Ltd. v. U.S. Dist. Ct. (In re Boon Glob., Ltd.)*, 923 F.3d 643, 651 (9th Cir. 2019) (alteration in original) (quoting *Calder*, 465 U.S. at 790).  Considering the first prong of the effects test, the relevant intentional act for all Fenix defendants would have been the alleged payments to Meta employees in furtherance of the scheme.  However, plaintiffs have since withdrawn their allegations of specific bribery in the complaint.  It is still vague at this point what intentional act plaintiffs are asserting forms the first element of the *Calder* effects test, which plaintiffs agree applies (Further Suppl. Br. 5–6, Dkt. No. 167).  Nevertheless, paragraph 118 of the complaint was not withdrawn, and it asserts that a common question of fact supporting class

4

certification exists as to "[w]hether there was any direct or indirect payment of money or other consideration" to Meta defendants by Fenix defendants. Plaintiffs' latest brief (filed before withdrawal of bribery allegations) likewise asserts: "[T]he allegations are not limited to the wire transfers in the email attached to the complaint or that have been the subject of subpoenas. Any form of consideration or quid pro quo is a form a [sic] bribe or benefit" (Further Suppl. Br. 2). The parties have deferred alter-ego jurisdictional discovery pursuant to stipulation, and plaintiffs have never specified who or which one of the Fenix defendants made unspecified quid pro quos. For purposes of this analysis, this order finds that the allegation of a quid pro quo satisfies the first prong of the effects test as to all three Fenix defendants.

Where plaintiffs more clearly fall short is the second prong. Plaintiffs argue that they "have alleged a wide-ranging anti-competitive scheme which occurred, in part, in California," but only cite two paragraphs in their complaint which explain that the scheme required action by Meta defendants (Resp. to Order to Show Cause 5 (citing Second Amd. Compl. ¶¶ 65–66), Dkt. No. 122-3). Meta being headquartered in California does not automatically mean that the Fenix defendants' intentional conduct in question was expressly aimed at California. "California courts applying both California and federal due process have held that personal jurisdiction does not lie over an out-of-state defendant merely because of the residence or acts of a co-conspirator." *Wescott v. Reisner*, No. 17-CV-06271-EMC, 2018 WL 2463614, at *4 (N.D. Cal. June 1, 2018) (Judge Edward M. Chen).

Ultimately, the goal of this alleged scheme was to suppress accounts of adult entertainers who utilized *any* adult entertainment platform that competes with OnlyFans (Second Amd. Compl. ¶¶ 56–58). By plaintiffs' own description, the alleged scheme was meant to be "wide-ranging," not limited to any geographic region or subset of adult entertainers or platforms. Accounts would be suppressed merely by their association with competing adult entertainment platforms. The effect of the scheme would be to direct internet traffic at large to OnlyFans at the expense of competing platforms.

Plaintiffs' only argument connecting any alleged quid pro quo to California is that "[a]s a result of this scheme, California creators, including Plaintiffs, were harmed" (Resp. to Order to

5

Show Cause 5). While the third prong of the effects test contemplates where the alleged harm is suffered, the second prong must still be met before those considerations are relevant. *See Schwarzenegger*, 374 F.3d at 807 n.1. Tying the two prongs together,

> Express aiming requires more than the defendant's awareness that the plaintiff it is alleged to have harmed resides in or has strong ties to the forum, because "the plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014). "'[S]omething more'—conduct directly targeting the forum"—is required to confer personal jurisdiction. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011) (quoting Rio Props., 284 F.3d at 1020).

*Ayla, Ltd. Liab. Co. v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 980 (9th Cir. 2021). Armed with the benefit of seven months of jurisdictional discovery, plaintiffs remain unable to articulate that "something more." Instead, plaintiffs continue to assert that "if there was wrongdoing by Fenix aimed at manipulating Instagram and Facebook, defendants' actions had an impact in this forum, making jurisdiction proper" (Further Suppl. Br. 7). Not so.

The upshot of the foregoing inquiry is that when claims are premised on specific actions alleged to be tortious, the jurisdictional analysis is likewise premised on those specific actions. In other words, "[f]or a State to exercise jurisdiction consistent with due process, the defendant's *suit-related conduct* must create a substantial connection with the forum State." *Walden*, 571 U.S. at 284 (emphasis added). This is why plaintiffs' focus on purposeful availment is inapposite, leaving aside that alleged torts here require a purposeful *direction* analysis. Statistics regarding California's impact on OnlyFans' revenue and customer base are orthogonal to whether the alleged conduct here ties to California. Illustratively, all discussions in our complaint of how the alleged conduct affected OnlyFans' revenue and market share are on a generalized basis, and not California-specific. Plaintiffs also assert various vendors and bank accounts that Fenix defendants maintain in California, but do not explain how those third-party relationships are implicated in the alleged scheme (Resp. to Order to Show Cause 4–6). That explanation is necessary, because "the minimum contacts analysis examines 'the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there,'" and thus "a defendant's relationship with a plaintiff or third party, standing

alone, is an insufficient basis for jurisdiction." *Axiom Foods, Inc.*, 874 F.3d at 1068 (quoting *Walden*, 571 U.S. at 284–86).

Decisions cited by plaintiffs do not contradict this fundamental principle. While the availment analysis took center stage in those decisions, that is because such analysis was relevant to the claims in the first place, even if implicitly. For example, *Ayla* involved claims of trademark infringement and other business torts against an Australian beauty and skincare brand. In that circumstance, the Australian brand's domestic business activities — in other words, its availment of the forum of the United States — were precisely the conduct accused as infringing. The inquiry into "something more" under prong two of the effects test thus elided into an availment analysis. *Ayla, Ltd. Liab. Co.*, 11 F.4th at 979–82. Likewise, forum business activities of defendants in *D.light Design, Inc. v. Boxin Solar Co.* were implicated in patent and trademark infringement claims. No. 13-CV-05988-EMC, 2015 WL 7731781, at *2 (N.D. Cal. Dec. 1, 2015) (Judge Edward M. Chen). The same was true for *DFSB Kollective Co. v. Tran*, where an interactive website's connection to California was relevant because the website itself was accused of infringement for hosting copyrighted media. No. 11-CV-01049-LHK, 2011 WL 6730678, at *3 (N.D. Cal. Dec. 21, 2011) (Judge Lucy H. Koh). And plaintiffs' most recent case asserted to be on point is the same: *Herbal Brands, Inc. v. Photoplaza, Inc.* is a trademark infringement action where the online "sale of products to Arizona residents is an intentional act" accused under the effects test. 2023 WL 4341454, at *5 (9th Cir. July 5, 2023).

Here, plaintiffs assert no claims derived from Fenix defendants' operation of their OnlyFans platform. Merely establishing that OnlyFans has reached out to exploit a market in the forum state independent of the claims has never been enough:

> Specific jurisdiction is different: It covers defendants less intimately connected with a State, but only as to a narrower class of claims. The contacts needed for this kind of jurisdiction often go by the name "purposeful availment." . . . *Yet even then* — because the defendant is not "at home" — the forum State may exercise jurisdiction in only certain cases. The plaintiff's claims, we have often stated, "must arise out of or relate to the defendant's contacts" with the forum. . . . Or put just a bit differently, "there must be 'an affiliation between the forum and the underlying

7

> controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024–25 (2021) (emphasis added) (alteration in original) (quoting *Bristol-Myers Squibb Co.*, 582 U.S. at 262). With jurisdictional discovery in the past, plaintiffs remain unable to articulate what activity or occurrence of the Fenix defendants in the alleged scheme took place in California. In fact, plaintiffs have stepped backwards and withdrawn their bribery allegations altogether. At this point, there are no factual averments tying any conduct by Fenix defendants to California. "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co.*, 582 U.S. at 264 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 931 n.6 (2011)).

Plaintiffs appear to have focused their jurisdictional discovery towards any contacts or interactions that Fenix defendants had with California, irrespective of their relationship to the alleged scheme (Resp. to Order to Show Cause Azar Decl. Exs. 2, 5–8, 14). For example, out of fourteen noticed deposition topics for Fenix Internet, only one inquired about the alleged scheme. At the deposition for Fenix International employee Lee Taylor, plaintiffs' counsel stated in response to objections from Fenix defendants' counsel that they "disagree about whether the contacts, legally, have got to relate to the actual scheme alleged or not," and that plaintiffs' "position is that the law changed and there does not have to be a nexus necessarily" (Resp. to Order to Show Cause Azar Decl. Ex. 1, at 67:23–69:16). However plaintiffs made their bed in jurisdictional discovery, they must now lie in it.

Plaintiffs' arguments regarding the inadequacy of produced jurisdictional discovery are likewise unavailing. The alleged inadequacies all concern Fenix defendants' connections with California generally, which miss the mark as this order explains (Resp. to Order to Show Cause 8–9). Furthermore, plaintiffs' depositions both occurred in February 2023, when the order granting jurisdictional discovery on September 8, 2022, advised that the discovery period would close on January 31, 2023. That discovery period was then extended two times, with the order granting the second extension advising that such discovery be used to shore up

8

1    plaintiffs' jurisdictional theory.  Any opportunity to further demand discovery and develop

2    jurisdictional theories was squandered by plaintiffs' own lack of diligence.

3          Contrary to plaintiffs' argument, requiring them to connect the alleged scheme to

4    California does not mean that they must prove the existence of the scheme.  True, the ultimate

5    veracity of facts alleged as well as mechanical details for how the scheme functioned may

6    properly manifest at a later stage.  The issue, however, is that plaintiffs' theory of how "a wide-

7    ranging anti-competitive scheme . . . occurred, in part, in California" is insufficient (Resp. to

8    Order to Show Cause 5).  Plaintiffs' accusations of a hidden, difficult-to-prove scheme cuts

9    both ways: if discovery is solely aimed at a scheme that may not exist, then plaintiffs cannot

10   rely on unfruitful production to excuse their jurisdictional showing.  Plaintiffs can target

11   discovery to develop their theory of how the scheme could exist, such as understanding what

12   channels of communications with Meta were available to the Fenix defendants' and whether

13   these channels connect to California.  With the benefit of seven months of discovery, plaintiffs

14   nevertheless advance no factual averments for how Fenix defendants reached out to California

15   as part of their scheme.  Instead, "Plaintiffs can no longer certify that the particular factual

16   contentions in the withdrawn paragraphs and exhibit will likely have evidentiary support after

17   a reasonable opportunity for further investigation or discovery" (Dkt. No. 172).  Plaintiffs have

18   utterly failed to demonstrate that Fenix defendants are subject to specific personal jurisdiction.

19        *     *     *

20         In connection with briefing on jurisdiction, both plaintiffs and Fenix defendants reference

21   information designated confidential by Fenix defendants, and thus Fenix defendants move to

22   seal and redact filings from both parties.  Plaintiffs generally oppose sealing.  There is a strong

23   public policy in favor of openness in our court system and the public is entitled to know to

24   whom we are providing relief (or not).  *See Kamakana v. City & Cnty. Of Honolulu*, 447 F.3d

25   1172, 1178–80 (9th Cir. 2006).  "Unless a particular court record is one 'traditionally kept

26   secret,' a 'strong presumption in favor of access' is the starting point."  *Ibid.* (quoting *Foltz v.*

27   *State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)).  Access to motions and

28   their attachments that are "more than tangentially related to the merits of a case" may be sealed

1  only upon a showing of "compelling reasons" to do so.  *Ctr. for Auto Safety v. Chrysler Grp.,*

2  *LLC*, 809 F.3d 1092, 1101–02 (9th Cir. 2016).  Here, the briefings are for a dispositive

3  jurisdictional issue, so the "compelling reasons" standard applies.

4        To meet that standard, "the party seeking to seal must 'articulate[ ] compelling reasons

5  supported by specific factual findings,' . . . that outweigh the general history of access and the

6  public policies favoring disclosure."  *Kamakana*, 447 F.3d at 1178–79 (alteration in original)

7  (quoting *Foltz*, 331 F.3d at 1135).  Fenix defendants largely seek to seal information regarding

8  revenue and user base statistics, third parties they engage for business services, and general

9  business structure.  In doing so, Fenix defendants assert competition concerns generally, citing

10 decisions granting sealing of trade secrets and other "proprietary information about . . .

11 business operations and technology."  *Transperfect Glob., Inc. v. Motionpoint Corp.*, No. C 10-

12 2590 CW, 2013 WL 209678, at *1 (N.D. Cal. Jan. 17, 2013) (Judge Claudia Wilken).  True,

13 exact numbers and statistics derived from internal records are proprietary and may be properly

14 sealed.  *See McKinnon v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-CV-04457-SC, 2015 WL

15 1800445, at *1 (N.D. Cal. Apr. 20, 2015) (Judge Samuel Conti).  But no showing is made as to

16 why statements that Fenix defendants derive revenue from California described in generalized,

17 ballpark numbers harm their ability to compete, for example.  Likewise, Fenix defendants do

18 not explain why the identities of Fenix defendants' contractors or the fact that certain Fenix

19 entities operate in California are proprietary information worthy of sealing.

| DOCUMENT SOUGHT TO BE SEALED | RULING | PORTION TO BE SEALED |
|---|---|---|
| **Administrative Motion to File Under Seal filed by Plaintiffs re: Plaintiffs' Response to Show Cause Order (Dkt. No. 122).** | | |
| Taylor Deposition Transcript (Dkt. No. 122-4). | **DENIED WITHOUT PREJUDICE**. Plaintiffs appear to have filed an already-redacted version under seal, making it impossible to evaluate this request.  Within **SEVEN DAYS** of the filing of this order, plaintiffs shall resubmit a revised request of only the relevant portions of the transcript excerpted with defendants' sought redactions highlighted. | |

United States District Court
Northern District of California

| | | |
|---|---|---|
| Fenix International Limited's Interrogatory Responses (Dkt. No. 122-5). | **GRANTED IN PART** and **DENIED IN PART**. Fenix defendants seek redactions of portions that "discuss specific bank account information and other exact monetary figures" and constitute "confidential business information and personal banking information" (Resp. 3–4). Denied redactions do not fall under that description, such as the name of a contractor or the fact that no payments were made by Fenix International to independent contractors or California tax authorities. Those facts are generalized and thus distinct from detailed documents such as actual invoices or tax filings, respectively. | As marked in Dkt. No. 127-4 for Interrogatories: 1 and 2 only. |
| Beeby Deposition Transcript (Dkt. No. 122-6). | **DENIED WITHOUT PREJUDICE**. Plaintiffs appear to have filed an already-redacted version under seal, making it impossible to evaluate this request. Within **SEVEN DAYS** of the filing of this order, plaintiffs shall resubmit a revised request of only the relevant portions of the transcript excerpted with defendants' sought redactions highlighted. | |
| Consulting Agreement (Dkt. No. 122-7). | **GRANTED IN PART** and **DENIED IN PART**. Fenix defendants seek to redact specific provisions of their consulting agreement citing competitive harm. The specific terms underlying defendants' engagement of contractors are not pertinent to the merits of jurisdiction, and thus public interest in the information is relatively low. However, defendants also seek to redact all identifying information of their contractors. No reason is given as to sealing the identity of this particular consultant. Defendants cite their independent contractor agreement as containing "an express provision concerning the non-disclosure of the independent | As marked in Dkt. No. 127-6, *except* identifying information of consultant. |

11

| | | | |
|---|---|---|---|
| | | contractor's engagement" (Resp. 4). That agreement specifies that the *contractor* shall not disclose their retention without consent of defendants.  In any event, the location of defendants' contractors—which is a part of identifying information—is relevant to plaintiffs' merits argument, so those portions shall not be sealed. | |
| | Fenix Internet's Interrogatory Responses (Dkt. No. 122-8). | **GRANTED IN PART** and **DENIED IN PART**.  For reasons stated above. *See entry for Dkt. No. 122-5*; *entry for Dkt. No. 122-7*. | As marked in Dkt. No. 127-7 for Interrogatories: 4 regarding exact dollar figure (not including sentence indicating "none"), and 7 only. |
| | Leonid Radvinsky's Interrogatory Responses (Dkt. No. 122-9). | **DENIED**.  Contrary to containing bank account numbers, this is a generalized description of banks used and the addresses of those institutions.  *See entry for Dkt. No. 122-5.* | |
| | Email from Sternberg to Azar (Dkt. No. 122-12). | **GRANTED IN PART** and **DENIED IN PART**.  For reasons stated above. *See entry for Dkt. No. 122-7.* | As marked in Dkt. No. 127-9, *except* redactions to contractor names. |
| | Email from Sternberg to Azar (Dkt. No. 122-13). | **GRANTED**.  For reasons stated above. *See entry for Dkt. No. 122-5.* | As marked in Dkt. No. 127-10. |
| | Contractor Agreements (Dkt. No. 122-14). | **GRANTED IN PART** and **DENIED IN PART**.  For reasons stated above. *See entry for Dkt. No. 122-7.* | As marked in Dkt. No. 127-11, *except* redactions to contractor identity and dates. |
| | Plaintiffs' Response (Dkt. No. 122-3). | **GRANTED IN PART** and **DENIED IN PART**.  For reasons stated above. *See entry for Dkt. No. 122-5*; *entry for Dkt. No. 122-7*. | As marked in Dkt. No. 127-12 for pages: 3, 4 regarding balance amount, 5 in last paragraph regarding numbers (but not use of California bank), and 8 only. |

12

| **Administrative Motion to File Under Seal filed by Defendants re: Defendants' Supplemental Brief (Dkt. No. 125).** | | |
|---|---|---|
| Supplemental Brief in Support of Motion to Dismiss (Dkt. No. 125-2). | **GRANTED IN PART** and **DENIED IN PART**. For reasons stated above. *See entry for Dkt. No. 122-5; entry for Dkt. No. 122-7.* | As marked for pages: 2 regarding percentages, and 4 regarding exact percentages and footnote 6 only. |
| Taylor Declaration (Dkt. No. 125-3). | **GRANTED IN PART** and **DENIED IN PART**. For reasons stated above. *See entry for Dkt. No. 122-5; entry for Dkt. No. 122-7.* | As marked for paragraphs: 5, 6, 11 regarding exact percentage, and 14 regarding exact number only. |
| **Administrative Motion to File Under Seal filed by Plaintiffs re: Plaintiffs' Reply to Show Cause Order (Dkt. No. 131).** | | |
| Plaintiffs' Reply (Dkt. No. 131-3). | **GRANTED IN PART** and **DENIED IN PART**. For reasons stated above. *See entry for Dkt. No. 122-5; entry for Dkt. No. 122-7.* | As marked in Dkt. No. 133-2 for pages: 5 regarding dollar amount only. |
| Davies Declaration (Dkt. No. 131-4). | **GRANTED IN PART** and **DENIED IN PART**. For reasons stated above. *See entry for Dkt. No. 122-7.* | As marked in Dkt. No. 133-3 as to email addresses only. |

## CONCLUSION

For the foregoing reasons, defendants Fenix International Limited, Fenix Internet LLC, and Leonid Radvinsky's motion to dismiss for lack of jurisdiction is **GRANTED**. The motions to file under seal are granted to the extent described above, and revised materials shall be filed within **TWENTY-ONE DAYS** of this order.

**IT IS SO ORDERED.**

Dated: July 31, 2023.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

13