**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
David E. Azar, Esq. (SBN 218319)
280 S. Beverly Drive, Suite PH
Beverly Hills, California 90212
Telephone: 1-866-252-0878
dazar@milberg.com

**ALGER LAW APC**
Timothy L. Alger (SBN 160303)
233 E. Carillo St., Suite C
Santa Barbara, California 93101
Telephone: 805-245-8215
tlalger@algerlawapc.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAWN DANGAARD, a/k/a ALANA EVANS, KELLY GILBERT, a/k/a KELLY PIERCE, and JENNIFER ALLBAUGH, a/k/a RUBY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FENIX INTERNET LLC, FENIX INTERNATIONAL INC., META PLATFORMS, INC., INSTAGRAM, LLC, FACEBOOK OPERATIONS, LLC, LEONID RADVINSKY, and JOHN DOES 1-10,<br><br>Defendants. | Case No. 3:22-cv-01101-WHA<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION (CAFA); DECLARATION OF DAVID E. AZAR**<br><br>Judge: Hon. William Alsup<br>Location: Courtroom 12, 19th Floor<br>Date: April 9, 2024<br>Time: 8:00 a.m. |

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 9, 2024 at 8:00 a.m., or as soon thereafter as this matter may be heard by the Honorable William Alsup of the United States District Court for the Northern District of California, in Courtroom 12, 19th Floor, 450 Golden Gate Avenue, San Francisco, California, Plaintiffs will and hereby do move the Court, pursuant to Federal Rule of Civil Procedure 12(h)(3), for an order dismissing Plaintiffs' claims for lack of federal jurisdiction on the grounds that:

(i) Plaintiffs are unable to move for certification of the class defined in the operative complaint based on new information received from Defendants this past Friday, March 8, 2024;

(ii) absent a class action, the Court no longer has jurisdiction under the Class Action Fairness Act; and

(iii) no other basis for subject matter jurisdiction exists.

Plaintiffs base their motion on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, all pleadings and papers filed in this action, oral argument of counsel, and any other matters that may come before the Court.

Respectfully submitted,

DATED: March 11, 2024

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**

/s/ David E. Azar
David E. Azar

**ALGER LAW APC**
Timothy L. Alger

*Attorney for Plaintiffs and Proposed Class Counsel*

# TABLE OF CONTENTS

STATEMENT OF THE ISSUE TO BE DECIDED ............................................................. 5

INTRODUCTION ................................................................................................................ 5

RELEVANT BACKGROUND ........................................................................................... 6

ARGUMENT AND CITATION TO AUTHORITY ......................................................... 10

CONCLUSION ................................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Doe v. First Financial Security, Inc.*,
  2017 WL 11634363 (C.D. Cal. Nov. 2, 2017) .......................................................................... 10

*McCauley v. Ford Motor Co. (In re Ford Motor Company/Citibank (S.D.) N.A.)*,
  264 F.3d 952 (9th Cir. 2001) .................................................................................................. 11

*Missouri ex rel. Koster v. Harris*,
  847 F.3d 646 (9th Cir. 2017) .................................................................................................... 6

*Rockwell Int'l Corp. v. United States*,
  549 U.S. 457, 127 S. Ct. 1397, 167 L. Ed. 2d 190 (2007) ....................................................... 11

*United Steel, Paper & Forestry, Rubber Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*,
  602 F.3d 1087 (9th Cir. 2010) ................................................................................................ 10

*Wood v. City of San Diego*,
  678 F.3d 1075 (9th Cir. 2012) ............................................................................................ 6, 11

**Statutes**

28 U.S.C. § 1332 ........................................................................................................................ 5, 11

California Business & Professions Code § 17200 ......................................................................... 6

**Rules**

Fed. R. Civ. P. 12 ...................................................................................................................... 6, 11

4
PLAINTIFFS' NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION (CAFA)
Case No. 3:22-cv-01101-WHA

# MEMORANDUM OF POINTS AND AUTHORITIES

# STATEMENT OF THE ISSUE TO BE DECIDED

Without jurisdiction under the Class Action Fairness Act, or any other basis for subject matter jurisdiction, should the Court dismiss Plaintiffs' remaining state law claims (which were filed originally in federal court, and not removed)?

# INTRODUCTION

Plaintiffs brought a putative class action and identified 28 U.S.C. § 1332(d) (the Class Action Fairness Act or "CAFA") as the sole basis for the Court's jurisdiction. (SAC (Doc. 74) ¶ 29.)

During the Court-ordered in-person meeting to confer about discovery disputes this past Friday, March 8, 2024, Plaintiffs learned from the Meta Defendants that they lack the data or documents with necessary evidence of the following key element of Plaintiffs' case theory and class definition: whether any of the listed competitor plaintiffs or lead plaintiffs were treated as a dangerous organization or individual in the key 2018-2019 time period due to improper manipulation of Meta's system (as opposed to a corporate decision falling within the scope of good-faith publisher discretion). (*E.g.*, SAC ¶¶ 58, 60, 56; *see also, e.g.,* ¶¶ 2(e), 64, 65, 73, 88.)

Meta Defendants said they found no evidence that any competitor platform or named plaintiff was currently on the list or had been nominated for inclusion or removal as part of the normal process for administering the DIO/DOI ("Dangerous Individual or Organization" later renamed "Dangerous Organizations and Individuals") list.  Meta Defendants informed Plaintiffs they were unable to determine whether or not the list was manipulated in the 2018-2019 time frame as alleged by Plaintiffs.

Prior to the meeting of counsel on March 8, 2024, Plaintiffs intended to advise the Court of these issues in the context of the discovery dispute statement that Court ordered to be filed after the meet-and-confer process.  However, based on the information Meta Defendants provided, the

information essential to Plaintiffs class allegations is not available, and thus discovery motion practice would be futile.  As explained below, due to this lack of data, along with the interrogatory responses Meta Defendants provided, Plaintiffs are unable to move for certification of the class defined in the operative complaint.  (SAC ¶ 113.)

A "class" that satisfies the elements of CAFA is the only basis Plaintiffs alleged for federal jurisdiction. No other basis exists for federal jurisdiction.

Accordingly, Plaintiffs bring this motion to dismiss their claims without prejudice for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Wood v. City of San Diego*, 678 F.3d 1075, 1082 (9th Cir. 2012) (a Rule 12(h)(3) motion to dismiss for lack of subject matter jurisdiction may be raised at any time throughout the course of litigation); *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 ("In general, dismissal for lack of subject matter jurisdiction is without prejudice.").

Plaintiffs have advised counsel for Meta Defendants that Plaintiffs are seeking dismissal, given the information provided on March 8.  As of the time of finalization of this motion, Meta Defendants have not responded.

**RELEVANT BACKGROUND[1]**

Plaintiffs initiated a putative class action in this Court on February 23, 2022 (Doc. 1, 4), and filed their operative Second Amended Complaint on September 28, 2022 (Doc. 74), asserting state law claims for tortious interference with contract, tortious interference with business relationships, and violation of California's Unfair Competition Law ("UCL"), Business & Professions Code § 17200 et seq.

After various motions, certain targeted discovery, and competing proposals by the parties about case management and phasing of discovery, at the Case Management Conference on October 3, 2023, the Court provided its directions and set a case management schedule.  Since then, "the

---

[1] All statements not cited to the record are part of the concurrently filed Declaration of David Azar.

parties have been actively involved in document discovery and depositions, along with multiple oral and written communications to meet and confer about the discovery and a mediation on December 18, 2023," as detailed in their Joint Stipulated Request For An Order Modifying The Case Schedule (Doc. 223).  On February 24, 2024, the Court ordered the parties to meet in person to confer on all discovery issues, exhaust efforts to resolve those issues, and each submit a list of outstanding discovery disputes. (Doc. 224.)

Counsel met in person last Friday, March 8, 2024.  Of most relevance to this motion, the parties conferred about Plaintiffs' position that Meta Defendants provided ambiguous and incomplete responses to interrogatories regarding whether any of the competing platforms or named plaintiffs had ever been designated as a dangerous organization or individual.  The information obtained during this discussion prompted the instant motion.

For background, prior to serving the interrogatories for which certain responses were in dispute, Plaintiffs requested data (for a statistical analysis) and documents in their second request for production of documents.  Plaintiffs sought this evidence with the goal of determining past categorization of the competing platforms and named plaintiffs.  After obtaining a three-week extension from the Court, Meta Defendants made their full production on November 21, 2023, the week before Thanksgiving.  It took Plaintiffs a few weeks to analyze the production and determine that it did not contain the data or documents needed to answer these essential questions or for Plaintiffs' expert to prepare an updated report, including the statistical analysis discussed at the last hearing.  These issues were one topic Plaintiffs raised at the December 18, 2023 mediation.

Plaintiffs then posed the DIO/DOI questions to Meta Defendants in several interrogatories to obtain from Meta a definitive answer based on a review of its own data.[2]  Those responses were due on February 12, 2024, and were preliminarily discussed during a telephone conference on January 30, 2024, after which Plaintiffs' counsel wrote: "In reflecting on our discussion just now

---

[2] Interrogatories were more appropriate for these questions than a deposition that would involve asking a witness about 95 platforms, three named plaintiffs and either thousands of union members or a subset that Meta sampled.  The witness would be less likely to testify from memory about the specifics.

7

about your searches of the DIO lists/etc., please clarify the time period for which Meta has data that it searched/is searching." (Azar Decl.¶ 10.)

On February 12, 2024, the deadline for Meta Defendants to respond to the interrogatories and requests for admission, Meta Defendants requested a two-week extension.  Plaintiffs rejected a blanket extension and urged Meta to respond "today" to at least some of the interrogatories and RFAs.  (Azar Decl. ¶ 11.) Plaintiffs wrote:

> At minimum, we expect that Meta should be able to respond today to the interrogatories referencing the dangerous organizations and individuals (DIO/DOI).  In other words, by this point in the case, Meta should be able to provide authoritative answers to interrogatories such as whether any of the platforms referenced were designated as dangerous organizations during any part of the entire time period in the interrogatory, whether anyone was impacted because of such linkage, the related hashing questions, etc.

(Azar Decl. ¶ 12 (2/12/204 email 3:56 p.m.).)

Meta Defendants then provided initial responses that did not provide an authoritative answer and were not verified.  Plaintiffs' counsel followed up by email on February 15, 2024:

> [[I]t appears from the attached declarations that the DOI list was searched as of November 13, 2023, and perhaps one more time since then, perhaps on February 7, 2023.  But Mr. James is not making any statement about what was on or not on the list at prior points in time, including the later 2018 and 2019 time periods. See Decl. of Patrick James, META000087240 (named plaintiffs and platforms on Exhibit C do not "currently appear on the DOI list," with currently referring to November 13, 2023))  Decl. of Patrick James February 7, 2024 , META000119919 ("no names from the randomized sample appears on the DOI list on the day that I conducted the review").

(Azar Decl. ¶ 13.)

On February 19, 2024, Meta Defendants served their amended responses to Plaintiffs' interrogatories and requests for admission, which were still not verified (and thus not technically a response).  On February 20, 2024, Meta's counsel confirmed that the searches referenced in the James declarations "were performed on November 10, 2023, and January 23, 2024," and noted that "[t]he interrogatory responses we recently served also address other searches undertaken by Meta related to other time periods."  (Azar Decl. ¶ 14.)

Meta's counsel was referencing a new statement in Meta Defendants' amended, still unverified interrogatory responses, that repeated verbatim or some variation of the following statement: "

8

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION (CAFA)
Case No. 3:22-cv-01101-WHA

1  ███████████████████████████████████████████████████████████
2  ███████████████████████████████████████████████████████████."
3  (Emphasis added).³ *See, e.g.*, Responses to Interrogatories 10." (The interrogatory responses were
4  finally verified on March 5, 2024).

As Plaintiffs' counsel explained by phone on Tuesday, February 27, and then by email the following Thursday, March 7, 2024, the new sentence did not cure the deficiencies. Plaintiffs' counsel wrote, in part:

> First, the response does not state what "time period" was searched, and as you know, the parties disagree about what the "relevant" period is. And Meta's production reflects that disagreement. For example, as we previously wrote, Meta's production is extremely limited for the key 2018-2019 period. Plaintiffs electronic analysis of the fields in Meta's first two productions shows only 2 documents with a date created or modified in 2018 and only 153 in 2019 (with isolated months). Meta produced 798 document[s] for 2020, 1,386 document for 2021, 26 document for 2022, and 28 documents for 2023. So we need that time period from Meta's responses about the DOI search specified.
>
> Second, this statement does not disclose whether any of the platforms had in fact ever been on the list. It introduces a new concept of ███████, which is not responsive to Plaintiffs' interrogatories. Whether the platforms were "██████" or not does not indicate whether any of the platforms were ever in fact designated or treated by your system as a dangerous organization. The complaint alleges that the competitor platforms and the performers were wrongfully designated by people associated with Meta, not that there was a considered corporate action. If the normal process would be to ███████ an organization, but that process was bypassed, then a platform or performer could have been treated as designated by your system, without being formally "█████" for inclusion. It is expected, of course, that that designations would have been removed by now, and the complaint alleges a coverup occurred of the original wrongdoing, so it is not surprising that Meta found no evidence in November 2023 or January 2024 that any of the competing platforms on Exhibit C were then designated.
>
> Does Meta know whether, in fact, any of the platforms were ever treated as a dangerous organization for any period of time? Or does it not have the data to know? Same question about the performers.. . .
>
> These are threshold factual issues that underly most of Meta's objections since it maintains that due to the above, other responses are not relevant, or not necessary, or the efforts to obtain the information or response is not proportional.

(Azar Decl. ¶ 16.)

---

³ Plaintiffs have redacted this statement because Meta Defendants designated their entire set of interrogatory responses as "Highly Confidential," which Plaintiffs have challenged and Meta has not yet agreed to modify.

Plaintiffs also wrote that "Meta has not produced any Data for the platforms from which we can do the statistical analysis (not even from our reduced, compromise list) . . . and provided only limited information for the named Plaintiffs." (Azar Decl. ¶ 17.)

During the in person meet and confer on March 8, 2024, counsel for Meta Defendants explained their responses, which Plaintiffs' counsel then summarized in an email the next day and asked Meta's counsel to advise if Plaintiffs' counsel "misunderstood anything or missed writing down anything material." (Azar Decl. ¶ 18.) Plaintiffs' counsel wrote the following points that they understood from the in-person meeting:

> There is no archived version of the DOI list. It changes over time. Therefore, the only way to search that database is as of a particular date, which provides a contemporaneous snapshot as of that date. . . . [t]here is no automated process for making additions to the DOI list; it occurs through a nomination process that goes through a review process. "Tasks" are used by Meta for nominations, additions and subtractions as to the DOI list. Meta thus ran search terms associated with the named plaintiffs' names and IG accounts to see whether there were "tasks" (which is an ESI source) associated with adding or subtracting them from the DOI list starting from October 1, 2018.. . . .
>
> I asked whether there were any reasonably accessible audit logs of Meta's system, or other means, that might show whether there were any changes to the DOI list outside of the normal process, such as by a computer programmer or engineer. You said that you were unaware of any such reasonably available functionality, and the above (searching on a date and searching the tasks) are the only two ways to determine if anyone is or was ever on the DOI list with the data currently available.

(Azar Decl. ¶ 18.)

Plaintiffs are filing this motion the next business day.

## ARGUMENT AND CITATION TO AUTHORITY

This case was filed originally in federal court. For the reasons explained in *Doe v. First Financial Security, Inc.*, 2017 WL 11634363 (C.D. Cal. Nov. 2, 2017), federal courts lose jurisdiction if CAFA does not apply to a case filed in federal court, and the potential exception for removed cases in *United Steel* is inapplicable. *Doe v. First Fin. Sec., Inc.*, 2017 WL 11634363, at *5 (C.D. Cal. Nov. 2, 2017) ("*United Steel[ v. Shell Oil*, 602 F.3d 1087, 1091 (9th Cir. 2010)] was a removal case where jurisdiction is determined at the time of removal; [here] the Plaintiffs initiated this case in federal court and the Court has a duty to dismiss such an action whenever it

10

appears the Court lacks jurisdiction. As the Supreme Court noted, 'removal cases raise forum-manipulation concerns that simply do not exist when it is the plaintiff who chooses the federal forum.' *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 n.6 (2007).").

As noted above, pursuant to Rule 12(h)(3), a court must dismiss the action if, at any time, the court determines that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). *Wood v. City of San Diego*, 678 F.3d at 1082 (a Rule 12(h)(3) motion to dismiss for lack of subject matter jurisdiction may be raised at any time throughout the course of litigation). The party asserting federal jurisdiction bears the burden of proving the case is properly in federal court. *McCauley v. Ford Motor Co. (In re Ford Motor Company/Citibank (S.D.) N.A.)*, 264 F.3d 952, 957 (9th Cir. 2001).

CAFA is the only basis for subject matter jurisdiction pled in the Plaintiffs' Second Amended Complaint. (SAC ¶ 29.)

Under CAFA, "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which" there is minimal diversity. 28 U.S.C. § 1332(d)(2) (emphasis added).

In light of information obtained this past Friday, March 8, 2024, Plaintiffs are unable to move for certification of the class defined in the operative complaint. Plaintiffs defined the class as follows:

> 113. The Class Plaintiffs bring this action on behalf of themselves and the members of the following class (the "Class"):
>
> All Adult Entertainment Providers, regardless of the label they use, such as performer, influencer or artist, who suffered economic injury *because* they either (i) used their Instagram or Facebook account to link to, promote, or demonstrate praise, substantive support, or representation of any competitor of OnlyFans *at a time* when those businesses were falsely designated as a Dangerous Individual or Organization ("DIO") under any past or present version of Meta's DIO policy, or that of Facebook or Instagram or any of their predecessor or subsidiary entities or technologies, or (ii) were *themselves falsely designated* as a DIO; the class includes anyone who suffered damages from any shift in the scheme beyond the initial DIO tactic, such as suffering continuing effects through other computerized systems." (Emphasis added).

1          Plaintiffs' class definition requires either the performers to be designated as DIO (what Meta now calls DOI, Dangerous Organizations and Individuals), or that a competitor platform is first designated as DIO/DOI, and that the performers are damaged as a result.  That showing is needed for class certification before other evidence of the "shift in the scheme" (last clause of the class definition) becomes relevant for class certification.

           Plaintiffs have always alleged—consistent with information from media sources who spoke with one or more alleged whistleblowers, and the report filed on Facebook's whistleblower system—that the misuse of the DIO/DOI designation was not a benign corporate decision within the scope of an on-line publisher's good-faith discretion, but that it resulted from a manipulation of the Meta system, such as by an engineer or programmer who concealed the scheme. (Azar Decl. ¶ 19.)

           As discussed in the background section above, during the Court-ordered in-person meeting to confer about discovery disputes, Plaintiffs learned that Meta Defendants do not have data necessary to determine whether that alleged past false designation of platforms and performers in 2018 and 2019 as dangerous organizations and individuals occurred.  Meta Defendants' counsel explained that there is no archived version of the DOI list.  Instead, the list has changed over time.  Therefore, searches of the database can only provide only a contemporaneous snapshot as of the date of a particular search.  Meta Defendants' searches of the DOI list this past November 2023 and in January 2024 are therefore unhelpful in determining whether the competing platforms and plaintiffs were miscategorized in late 2018 and in 2019.  After Plaintiffs met and conferred with Meta about the inadequacy of searches of the database in 2023 and 2024 and pressed for data regarding Meta's actions in 2018 and 2019, Meta Defendants searched their internal electronically stored information for "tasks" (an ESI source term) associated with adding or subtracting the competitor platforms or named plaintiffs from the DOI list starting from October 1, 2018.  Based on those two searches, Meta Defendants' counsel informed Plaintiffs' counsel on March 8 that Meta found no evidence that the competing platforms or named plaintiffs were ever included on the DIO/DOI list.  (Azar Decl. 20).

Plaintiffs' counsel asked Meta Defendants' counsel whether there were any reasonably accessible audit logs of Meta's system, or other means that might show any changes to the DOI list outside of the normal process, such as by a computer programmer or engineer. Meta's counsel responded that he was unaware of any such reasonably available functionality, and the above (searching on a particular date and searching "tasks") are the only methods of researching possible miscategorization of persons and platforms as dangerous individuals and organizations.

Accordingly, based on the representations of their counsel and their verified interrogatory responses, Meta Defendants lack the data necessary for Plaintiffs to determine whether any of the platforms or named plaintiffs were on the DIO/DOI list during the key time period of late 2018 and 2019. As a result, Plaintiffs cannot obtain information necessary to establish class certification.

## CONCLUSION

For the foregoing reasons, the Court should dismiss this action without prejudice for lack of subject matter jurisdiction.

Respectfully submitted,

DATED: March 11, 2024

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**

/s/ David E. Azar
David E. Azar

**ALGER LAW APC**
Timothy L. Alger

*Attorney for Plaintiffs and Proposed Class Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 11, 2024, the foregoing was electronically filed with the Clerk of the U.S. District Court, Northern District of California, using the CM/ECF system, which will send notification of such filing to all parties.

/s/ David E. Azar
David E. Azar