K. Winn Allen, P.C. (admitted *pro hac vice*)
Devin Anderson (admitted *pro hac vice*)
Mary Elizabeth Miller (admitted *pro hac vice*)
Yaffa A. Meeran (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 389-5000 / Fax: (202) 389-5200
Email: winn.allen@kirkland.com
Email: devin.anderson@kirkland.com
Email: mary.miller@kirkland.com
Email: yaffa.meeran@kirkland.com

Stephen Tensmeyer (SBN 312030)
KIRKLAND & ELLIS LLP
95 South State Street
Salt Lake City, UT 84111
Tel: (801) 877-8119 / Fax: (801) 877-8101
Email: stephen.tensmeyer@kirkland.com

Michael P. Esser (SBN 268634)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Tel: (415) 439-1400 / Fax: (415) 439-1500
Email: michael.esser@kirkland.com

*Attorneys for Defendants Instagram LLC,*
*Facebook Operations, LLC, and Meta Platforms, Inc.*

David Azar (SBN 218319)
MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, PLLC
280 South Beverly Dr., Suite PH
Beverly Hills, CA 90212
Tel: (212) 594-5300 / Fax: (212) 868-1229
dazar@milberg.com

*Counsel for Plaintiffs Dawn Dangaard, Kelly*
*Gilbert, and Jennifer Allbaugh*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| DAWN DANGAARD, *et al.*, <br><br>    Plaintiffs, <br><br>v. <br><br>INSTAGRAM, LLC, *et al.*, <br><br>    Defendants. | CASE NO. 3:22-cv-01101-WHA <br><br> The Honorable William Alsup <br><br> **SUPPLEMENTAL [PROPOSED] JOINT PRE-TRIAL ORDER** <br><br> Complaint Filed Date:  September 28, 2022 <br><br> Trial Date:  October 15, 2024 <br> Time:    7:30 a.m. |

Pursuant to the Guidelines for Trial and Final Pretrial Conference in Civil Jury Cases Before the Honorable William Alsup (revised 5/15/2024) ("Guidelines") and the Court's July 2, 2024 Order (ECF No. 273), plaintiffs Dawn Dangaard, Kelly Gilbert, and Jennifer Allbaugh (collectively, "plaintiffs") and defendants Instagram, LLC, Facebook Operations, LLC, and Meta Platforms, Inc.'s (collectively, "Meta") submit the following supplemental proposed joint pretrial order.

## V.  JOINT EXHIBIT LIST

The parties' amended joint exhibit list is attached as **Appendix 1**.

**Meta:**

With respect to plaintiffs' exhibits, Meta renews its objections to plaintiffs' failure to properly and specifically identify the documents they are proposing as exhibits for trial, which has substantially prejudiced Meta in its efforts to indicate objections to specific exhibits.  For example, plaintiffs (1) identify documents by broad categories, rather than specifying the proposed exhibit individually; (2) include screenshots and excerpts of documents often with no identifying information; and (3) include extremely lengthy documents purportedly as individual exhibits.  Meta reserves all rights to supplement or modify its objections to the extent necessary as a result of these failures by plaintiffs, based on any future developments, including the resolution of Meta's motions *in limine* or other Court orders, and to the extent foundation is not properly laid for admission at trial.  Moreover, any failure to object to an exhibit, either at all or on a specific ground, does not constitute a concession by Meta that such an exhibit can be used with any witness or for any purpose.

The parties have met and conferred regarding Meta's objections to plaintiffs' exhibit list and will continue to do so.  Thus far, the issues identified above remain unresolved.  To the extent any of the issues Meta has identified are resolved through further meet-and-confer efforts, the parties will apprise the Court and withdraw objections as appropriate to reduce the burden on the Court.

**Plaintiffs:**

Meta fails to convey the status of the meet and confer communications and raises issues that it has not addressed thus far in the meet and confer.  The parties anticipated continuing to meet and confer, and thus this is Plaintiffs' response and summary of that status as to this issue.  First, as to screenshots from Meta's production, Plaintiff agreed to provide the full documents that Meta produced instead of just the

relevant excerpts, even when doing so will include many pages of irrelevant information.  Meta knew those full documents anyway because the description of the screenshots in the exhibit list had bates numbers from Meta's own production except for two of them, and Plaintiffs believe those two were clear to Meta and it could have located those two easily from its production.  Plaintiffs are not sure which documents Meta refers to as ones without identifying information such that Meta cannot locate the document, and they did not identify them during the meet and confer (unless they mean the two screenshots indicated above, which Plaintiffs are providing with bates numbers), so Plaintiffs are happy to address those with Meta.  In any event, Plaintiffs anticipate providing tomorrow electronic copies of all of their exhibits, and to receive from Meta's its proposed exhibits, which will facilitate further discussion.  Second as to Meta's objection that Plaintiffs grouped documents by broad categories or include lengthy documents as individual exhibits, Meta appears to refer to the following three exhibits, all of which grouped/labeled in the way that they are relevant, and there is no ambiguity about what they refer to.

Tr. 66 refers to the "Dropbox transfer of the data that John Hochman received.: Data included in hyperlink in the email of David Azar to Devin Anderson on February 22, 2024."  There is no ambiguity about which data that refers to: Meta's own expert Mr. Bania reviewed the Hochman report and the data and other documents relied on by Hochman, and Bania lists three pages of them by file name provided on pages 35-37 of his own expert report for Meta.  Those documents are relevant for trial as the group of material relied upon by Hochman and provided to and analyzed by Bania.  Thus the present exhibit description is the relevant description, not the individual file names.  Plaintiffs are, nonetheless, sub-numbering within Exhibit 66 each of the subfiles.

The next is Tr. 79, which is called "The documents that were newly produced on June 14, 2024, including each of the three spreadsheets produced by Meta on June 14, 2024."  Again, there is no ambiguity – Meta knows the content of its own production.  Further, Meta already added to the previously filed Joint Trial Exhibit List (Doc 289-1) each of the subdocuments  from its June production with Bates numbers, and began that listing by stating: "Meta identifies the following documents below, which Meta understands are the  documents to which plaintiffs are referring."

Finally, Tr. 96 states "Meta's July 9, 2024 Production (Meta009.zip), with Its Translations (intended to be submitted as one Exhibit, and identified as this set of documents)" citing "Meta

000119941" to "Meta 000120156."  Again, Meta knows what is in its own zip file Meta009, and we can include the component documents as sub-exhibits or separate exhibits if needed.  But from Plaintiffs' perspective for trial, those documents are relevant together as Meta's (late) July production.

Plaintiffs intend to continue to meet and confer with Meta, including about Plaintiffs' objections to Meta's exhibits.

## VI.    SEPARATE WITNESS LISTS

Plaintiffs' witness list for their case-in-chief witnesses is attached as **Appendix 2**, which Appendix starts with plaintiffs' original witness list, and the last two pages of the Appendix contain Plaintiffs' Amendment to Their Witness List per the Court's July 2, 2024 Order.  Certain exhibits attached to plaintiffs' original witness list for their case-in-chief witnesses were filed under seal with the parties' July 17, 2024 [Proposed] Joint Pre-Trial Order and are available at ECF No. 288-1.  Meta's second amended witness list for its case-in-chief witnesses is attached as **Appendix 3**.

**Meta**:

Meta objects to plaintiffs' existing and supplemental witness lists on multiple grounds, which are described below.  Meta has expressed these objections to plaintiffs on numerous occasions, including (1) on July 11, 2024, when Meta notified plaintiffs that their original witness list—which lists thousands of potential witnesses—does not comply with this Court's standing order or with Federal Rule of Civil Procedure 26(a)(3), *see* ECF No. 300; (2) in meet-and-confer discussions on September 11 and September 13, 2024; and (3) in correspondence exchanged on September 16, 2024, with respect to plaintiffs' supplemental witness list.  Specifically, Meta states:

**Noncompliance with Rule 26(a)(3):** The purpose of a witness list is to "provide[] notice to the court and to opposing counsel of the witnesses who may be presented at trial," *United States v. Bond*, 552 F.3d 1092, 1097 (9th Cir. 2009), and to "allow the opposing party to properly prepare to examine those witness." *Quesenberry v. Volvo Grp. N. Am., Inc.*, 267 F.R.D. 475, 480 (W.D. Va. 2010).  Plaintiffs' witness list violates this requirement and does not represent a reasonable effort to identify to Meta or to the Court the witnesses that plaintiffs actually expect to offer at trial.

As one court has noted, "providing a pre-trial witness list with 173 names is absurd and cannot have been done in good faith." *Zucchella v. Olympusat, Inc.*, 2023 WL 2633947, at *10 (C.D. Cal. Jan.

10, 2023).  Yet plaintiffs' witness list includes **thousands** of potential witnesses and consists of over 190 **pages** of names.  *See* ECF No. 288-1.  For example, plaintiffs' witness list includes reference to over 3,000 stage names and social-media accounts—rather than legal names associated with individual people—any or all of which plaintiffs claim they may present at trial.  *Id.* at 8 (referring to a list of "3,234 Instagram handles").  Plaintiffs also list more than 30 witnesses who are current or prior Meta personnel, but they do not make clear which witnesses they may call.  Indeed, plaintiffs' "witness list" is not even clear that the listed personnel are meant to be witnesses.  Instead, it simply states that "[a]ttached is a list of Meta personnel on Meta documents Plaintiffs attached or referred to in Plaintiffs' MSJ opposition papers."  *Id.* at 4.  Plaintiffs' witness list is vastly overbroad, does not give reasonable notice to Meta or the Court of the witnesses plaintiffs may actually call, substantially prejudices Meta's ability to prepare to examine them, and unnecessarily burdens the Court.  *See Murdaugh v. City of New York*, 2011 WL 4001011, at *2 (S.D.N.Y. Sept. 1, 2011); *Tavres v. Barnes & Noble, Inc.*, No. 3:19-cv-07655-EMC, ECF No. 85 at 1 (N.D. Cal. July 26, 2021).[1]

Plaintiffs also do not sufficiently identify the witnesses they purport to list.  Plaintiffs include on their witness list "[p]ersons who have the Instagram and social media accounts in the file 'Union Complaint List'" which "contains 3,234 Instagram handles used by performers."  ECF No. 288-1 at 8.  As plaintiffs' description acknowledges, this is a list of thousands of people, which provides only performer names (not legal names) and Instagram handles.  Plaintiffs' witness list also includes dozens of "platforms" that have no individual names associated with them and in some cases do not even clearly identify a specific platform.  *Id.* at 9.  For example, they list, among others, "amateurporn," "tushy," and "Vixen Network?"  *Id.* (question mark in original).  Plaintiffs similarly identify other "witnesses," including "witnesses plaintiffs expect to present," by company affiliation only and not by name.  *Id.* at 2-3 (identifying Alphabet Inc. and Visa Inc.); *cf. Benjamin v. B & H Educ., Inc.*, 877 F.3d 1139, 1150 (9th

---

[1] Plaintiffs allude to an offer they made in meet-and-confer discussions regarding a stipulation that might obviate the need to call some of these witnesses.  Plaintiffs were never clear on what this proposed stipulation would be or which witnesses it would apply to.  However, plaintiffs seemed to suggest a stipulation that would go well beyond resolving hearsay or foundation objections and would essentially amount to Meta stipulating to the truth of the statements in question, without an opportunity for further explanation.

Cir. 2017) (holding that a "catchall reference" to employees of an entity "does not satisfy the requirements for a Rule 26 disclosure").  Plaintiffs also identify certain supposed witnesses by first name only, such as "Mitch" or "Anna (NA) Task Manager".  ECF No. 288-1 at 3-4.  And Plaintiffs fail to provide contact information for the vast majority of the witnesses on their list, in violation of Rule 26(a)(3)(A)(i).

Plaintiffs state that these 3,234 additional witnesses need not be called if plaintiffs are permitted to testify as "experts" about the experiences of these absent witnesses, but this argument only reinforces the arguments in Meta's motion to exclude plaintiffs' proffered experts, plaintiffs Dawn Dangaard and Kelly Gilbert.  *See* ECF No. 238.  As explained in that motion, plaintiffs offer no expert testimony or analysis, but instead "act as mere conduits for hearsay" from other adult performers who are not part of this case.  *Williams v. Illinois*, 567 U.S. 50, 80 (2012).  Plaintiffs' statement that their "expert" testimony will "summarize[]" and substitute for live testimony of these thousands of witnesses merely confirms this and supports granting Meta's *Daubert* motion.

Plaintiffs also claim in conclusory terms that they are entitled to introduce evidence regarding notice to Meta, knowledge of interference with plaintiffs' contracts, wrongfulness, or oppressive behavior. But plaintiffs offer no explanation of how the testimony of any adult performers other than the plaintiffs— let alone the testimony of thousands of such witnesses—would shed light on such issues with respect to *plaintiffs'* claims.  Knowledge of other contracts, alleged harm to others, or alleged wrongful or unfair conduct as to others have no bearing on whether those elements have been established as to the *plaintiffs'* claims.  The introduction of these witnesses would thus not only be irrelevant under Federal Rule of Evidence 402, it would also pose a grave risk of prejudice, confusion of the issues, and waste of time under Federal Rule of Evidence 403. *See Shoraka v. Bank of Am., N.A.*, 2024 WL 3468756, at *3 (C.D. Cal. Jan. 18, 2024) (excluding testimony from third party about "similar experiences as Plaintiff with the Bank," and rejecting argument that such testimony was relevant to notice or objective unreasonableness of the bank defendant's actions); *Calloway v. Hayward*, 2016 WL 8730847, at *2 (E.D. Cal. Dec. 9, 2016) ("Plaintiff seeks to bring nine inmate witnesses to trial . . . to testify about [defendants'] conduct as correctional officers. . . . . Plaintiff only indicates that they will testify about their own experiences, not their personal knowledge of incidents concerning Plaintiff or specific acts against Plaintiff by Defendants in this action. . . . Such testimony is not relevant to Plaintiff's claims.").

Moreover, plaintiffs' suggestion that the "conduct that is the basis of this case" is that certain adult performers have had their "visibility on Instagram . . . reduced or eliminated for anti-competitive reasons"—without any tethering to the alleged misuse of anti-terrorism tools—merely confirms that plaintiffs intend to turn the trial into an opportunity to air grievances that have nothing to do with the claims they actually alleged in this case. *See* ECF No. 282 (Meta's Motion *in Limine* No. 1). For these reasons, the Court should grant Meta's motion to exclude plaintiffs' proffered experts, ECF No. 238, and preclude plaintiffs from calling any of the 3,234 additional witnesses for their continued refusal to specifically identify the individuals they actually intend to call at trial. At the very least, the Court should allow Meta to depose any individuals from the 3,234 that plaintiffs are permitted to call.

**Violation of Standing Order:** This Court's standing order requires that the parties provide, for each witness listed, "a statement of the substance of his/her testimony and, separately, what, if any, non-cumulative testimony the witness will give (to be used to set time limits)." Guidelines ¶ 2(a). In violation of this requirement, plaintiffs do not include individualized statements of the testimony to be given by each witness. To the extent that plaintiffs do provide such statements, they are often vague and include descriptions such as, "[f]acts about the industry and platforms related to the allegations in the SAC." *See* ECF No. 288-1 at 6-7. The descriptions also make clear that many of the witnesses' testimony will be cumulative. For instance, a number of the witnesses are described as being an "alternative/supplemental source of the data, documents, and subjects" that will be presented otherwise. *See id.* at 2-4. Other descriptions make clear that the testimony to be offered is irrelevant to plaintiffs' claims. *See, e.g., id.* at 8 (listing by reference 3,234 individuals who are not plaintiffs in this action and claiming their testimony is "non-duplicative and non-cumulative because each person has their own data," including data regarding "liability, causation and damages").

**Inclusion of Attorneys:** Meta also specifically objects to plaintiffs' inclusion of a number of Meta's attorneys on their September 13 supplement to the witness list. The listed attorneys include three members of Meta's outside counsel team and one member of its in-house counsel team on this case. This is wholly inappropriate. "There is a general presumption that lawyers should not be called to testify in cases where their client is a party." *Fausto v. Credigy Servs. Corp.*, 2008 WL 4793467, at *1 (N.D. Cal. Nov. 3, 2008) (quoting *Mustang Mktg., Inc. v. Chevron Prods. Co.*, 2006 WL 5105559, at *3 (C.D. Cal.

Feb. 28, 2006)), *objections overruled by* 2008 WL 5158915 (N.D. Cal. Dec. 9, 2008); *see also*, *e.g.*, *Mass. Mut. Life Ins. Co. v. Cerf*, 177 F.R.D. 472, 479 (N.D. Cal. 1998).  Such testimony is inappropriate except in the extraordinary circumstance that the attorney has non-privileged information that is crucial to the case and cannot be obtained from any other source.  *Fausto*, 2008 WL 4793467, at *1; *Sussex Fin. Enters., Inc. v. Bayerische Hypo-UND Vereinsbank*, 2010 WL 11610269, at *3 (N.D. Cal. Jan. 28, 2010) ("These independent and alternative prerequisites to the deposition of a party's lawyer apply with equal force to a party's in-house counsel.").  None of those circumstances are present here.  *Cave Consulting Grp., Inc. v. OptumInsight, Inc*., 2017 WL 5078436, at *8 (N.D. Cal. Nov. 6, 2017) (denying request to take attorney deposition because movant had not established that there were "no other means" to obtain the information, including a 30(b)(6) deposition).  The Court should not permit plaintiffs to call these witnesses.

Plaintiffs appear to claim that these attorneys' testimony may be relevant to a request for evidence preclusion under Federal Rule of Civil Procedure 37.  As Meta explained in its Response to Plaintiffs' Supplemental Brief Regarding Summary Judgment, there is no motion for sanctions properly before the Court and sanctions are not warranted in any event.  *See* ECF No. 307-3 at 31-32; *Sharpe v. Cryer*, 2023 WL 3726145, at *2 (E.D. Cal. May 30, 2023) (noting that preclusive sanctions require "bad faith or willfulness").  Meta has fully complied with its discovery obligations in this case.  It followed a thorough and thought-out discovery process that was designed to locate and produce documents relevant to plaintiffs' claims and involved close engagement between outside counsel, in-house litigation counsel, and Meta's e-discovery team.  *See* ECF No. 307-3 at 17-22.  When Meta discovered that the previously produced actioning records for the named plaintiffs were not complete, it acted quickly and responsibly to provide complete records and understand why the prior production had been incomplete.  *Id.* at 3-7.  Meta also fully complied with the Court's July 2, 2024 Order regarding the belated production, including by submitting four declarations from "the law firm personnel and Meta personnel most knowledgeable about how the documents were overlooked in the first place and how it came to Meta's recent attention," ECF No. 273 ¶ 2, and making five of its personnel available for depositions as "to why how and how Meta's supplemental productions were not previously produced as well as the merits issues raised by the documents," ECF No. 298.

Plaintiffs appear to claim that they need attorney testimony to prove that Meta had a "culpable state of mind" in not producing the complete actioning records earlier in the case. *See infra* (citing *Lakes v. Bath & Body Works, LLC*, 2019 WL 2124523, at *3 (E.D. Cal. May 15, 2019)). But the sworn testimony that Meta provided during the supplemental discovery period made clear that the error in production was *inadvertent* and the result of a misunderstanding between Meta's e-discovery team and its CES team, which collected the records. *See* ECF No. 307-3 at 4-6; ECF Nos. 275-1 to 275-4. And it was an error that Meta promptly disclosed, corrected, and provided further discovery on when uncovered. There is zero evidence of a "culpable state of mind." It was an error, and that error has been fully explained. No adverse inference or evidence preclusion is warranted here.

In any event, plaintiffs' witness list should be for a trial on the merits, not a discovery proceeding. Plaintiffs offer no explanation for why a topic like "how [Meta's counsel] interpreted Plaintiffs' discovery requests" would be relevant to any of the elements of plaintiffs' claims.[2] And plaintiffs do not even try to defend the idea of calling Meta's lead outside counsel in this matter to testify about "Technical Feasibility" issues related to the DOI list, especially when Meta's witness list includes individuals who can and will testify as to the DOI list. Contrary to plaintiffs' claims, Meta did not "refuse[] to provide a witness to testify" about this topic. Rather, Meta proposed a witness to testify on this topic pending the Court's guidance on the scope of the supplemental depositions. Following the Court's July 25, 2024, Order Regarding Scope of Supplemental Depositions, which stated that "[t]he scope of the depositions is limited to why how and how Meta's supplemental productions were not previously produced as well as the merits issues raised by the documents," ECF No. 298, plaintiffs did not pursue the topic further. Plaintiffs therefore have not established that these attorneys have *any* relevant information, let alone information

---

[2] Plaintiffs also make a number of other arguments—including the argument that plaintiffs "should be permitted access to fact/ordinary work product including from the internal investigation"—which are irrelevant to trial issues and are instead restatements of arguments made in plaintiffs' supplemental summary judgment briefing. Because these arguments are irrelevant to the propriety of plaintiffs' witness list and because Meta addressed these arguments at length in its Response to Plaintiffs' Supplemental Brief Regarding Summary Judgment, ECF No. 307-3, Meta does not repeat its responses to these arguments here.

uniquely in their possession and so crucial to the case that an exception to the ordinary rule against calling counsel as witnesses is justified.[3]

Nor have plaintiffs established any legal basis for overcoming the strong presumption against lawyers testifying in cases where their client is a party. *Fausto*, 2008 WL 4793467, at *1. Plaintiffs claim that *Shelton* (cited by the *Fausto* court) "is not universally accepted," but they propose no alternative standard. *See infra* (citing *In re Allergan, Inc,* 2016 WL 5922717, at *3 (C.D. Cal. Sept. 23, 2016)). Nor do plaintiffs acknowledge that the very case they cite declined to apply *Shelton* because the discovery sought there was regarding a "prior, concluded case," and not a situation in which "discovery is sought from opposing counsel regarding the case that is being actively litigated before the court." *In re Allergan*, 2016 WL 5922717, at *3. That is precisely what plaintiffs seek to do here. Indeed, they seek not only discovery, but *trial testimony* from most of Meta's own trial team. These tactics merely confirm that plaintiffs would rather flood this trial with irrelevant sideshows regarding discovery than present a case actually focused on the merits of their claims.

**Reservation of Rights:** Plaintiffs' witness list is sufficiently vague, overbroad, and inappropriate that it prejudices not only Meta's ability to prepare for trial, but even Meta's ability to lodge specific objections. Given the length of plaintiffs' witness list and its extensive deficiencies, the objections discussed above are necessarily only examples of such deficiencies. Meta has met and conferred with plaintiffs on multiple occasions regarding the deficiencies in its witness list, but plaintiffs have thus far declined to make any changes. Meta is willing to continue to meet and confer, but given the pervasive issues with plaintiffs' witness list, Meta requests that the Court order plaintiffs to revise their witness list. *See Tavres*, ECF No. 85 at *1; *Murdaugh*, 2011 WL 4001011, at *2. Meta reserves all rights to further supplement its objections.

**<u>Plaintiffs</u>**:

---

[3]   Plaintiffs also fail to point out that in another case they cite, *Creighton v. Allstate Northbrook Indemnity Co.*, 2021 WL 698203, at *3-4 (Jan. 25, 2021), the Court also held that "because opposing attorney depositions are disfavored, it is this Court's view that plaintiff's counsel should be permitted to avoid being deposed if he is willing to stipulate to the authenticity of documents and agree that he will not testify at trial." This general principle counsels strongly against plaintiffs' improper attempt to obtain trial testimony from counsel in this case.

Meta's portion does not include/address the information or proposals that Plaintiffs provided thus far in the Parties' meet and confer efforts about these issues. The Parties anticipated continuing to meet and confer, and thus this is Plaintiffs' response and summary of that status as to this issue.

**Witnesses – Overview:**

Plaintiffs have 10 primary witnesses for trial.

- The three named Plaintiffs, two of whom are also testifying as experts.
- The union (Adult Performance Artists Guild (APAG)), primarily through its general counsel James Felton (and secondarily by Plaintiffs, as its officers).  Mr. Felton, among other things, communicated with Meta starting in April 2019 about complaints by the named Plaintiffs and the union members.
- Three platforms that compete with OnlyFans, the representatives of two of which have already submitted detailed declarations in this case, and Meta chose not to depose them.
- For authentication/foundation, the employee of Plaintiffs' counsel who created the videos of the engineering workaround to Instagram that favors OnlyFans.  Meta could also stipulate to the admissibility of the videos and screenshots from them.
- Two potential third party witnesses, Google (Alphabet) and Visa, the scope of which will depend on the resolution of the pending motions, but we list subject of testimony in the meantime.

Beyond that, everyone else is a "potential" witness depending on (1) the resolution of the pending motions, and (2) the extent to which Meta agrees to stipulate admissibility of evidence versus raising various challenges.

**Legal Arguments Added By Meta Generally on the Last Turn of this Document:**

After Plaintiffs wrote their section of this submission, Meta amended its sections above to preempt and respond to much of what Plaintiffs write below, but there is no time before the filing deadline to provide a complete response.  Plaintiffs believe all of Meta's substantive points are already addressed in some manner by their other filings pending before the Court, including Plaintiffs' original Summary Judgment Opposition papers, supporting declarations, their Supplemental Briefing, Daubert opposition, responses to Meta's Motions in Limine, and Plaintiffs' portion of the original [Proposed] Joint Pre-Trial

Order.  The text below does not repeat those foundational arguments and is made within that existing context, including the elements of causes of action and what points would need to be proven and for what purpose (including Plaintiffs longstanding argument of excluding alternative explanations leaving an inference of anti-competitive conduct).  As one finite example, Plaintiffs explain in their Supplemental Briefing per the July 2 Order why they want to introduce the admission of Mr. Allen that Meta's DIO systems can be manipulated from his June 7, 2024 declaration: "12. Technical Feasibility. Knowledgeable Meta employees believe it is technically possible, but also technically difficult, to bypass the nomination process to add names to the DOI list."  Meta does not appear to have offered to stipulate to that fact, despite Mr. Allen's admission of it at the last hearing and in his declaration.  And Meta refused to provide a witness to testify about that statement during the supplemental discovery process, and asked the Court to rule on the issue. *See* Topic 4, from July 8, 2024 Email from Azar to Meta team (submited with Supplemental Briefing), to which Meta objected ("4. The person(s) referenced in paragraph 12 of the June 7, 2024, Declaration of K. Winn Allen who can testify about both sentences in that paragraph -- the "knowledgeable employees" and whoever conducted the "reasonable investigation." I'm referring to this language: "12. Technical Feasibility. Knowledgeable Meta employees believe it is technically possible, but also technically difficult, to bypass the nomination process to add names to the DOI list. After a reasonable investigation, Meta found no evidence that such a bypass occurred here."). Meta states that Plaintiffs did not pursue the issue further after the Court ruled that it was not part of the scope of the supplemental discovery but that is incorrect.  The Cout stated in its July 25. 2024 Order that Plaintiffs "may explain why more discovery was needed" in their supplemental briefing, and in Section V of Plaintiffs' opening supplemental brief, Plaintiffs do just that.  See, e.g., Plaintiffs' Supplemental Brief at Secttion V, page 24:18-22 ("First, this Court should order Meta to produce for deposition witnesses with knowledge of topics identified by Plaintiffs on Monday, July 8, 2024, prior to receiving the July production and certification, Azar Declaration Exhibit 23, to the extent not already provided by the existing testimony, see Azar Declaration paragraph 36 (excerpt of email from Azar to Meta's counsel on August 5, 2024 at 4:08 p.m.).

**Denying the Daubert Motion Resolves Most of Meta's Objections:**

1       Plaintiffs Dangaard and Pierce provided expert reports and detailed expert testimony about the

2  effects on non-OnlyFans exclusive performers and competing platforms, including from their detailed

3  review of the approximately 3,234 individuals who filed complaints with the union.  Thus, as explained

4  to Meta's counsel during the meet and confer, if the Court rules in favor of Plaintiffs on the pending

5  *Daubert* motions, the experts will testify and these witnesses will not be needed unless something

6  unexpected occurs, whereby maybe a limited number would be called.  Conversely, if the Court  does not

7  permit expert testimony on that compilation of data from the union complainants, the only means to put

8  this relevant information before the jury and the Court (for the bench trial) will be to call enough of the

9  performers who had submitted the complaints to testify about their own experiences to allow Plaintiffs to

10  establish what they otherwise would establish through their experts.  The number of witnesses that would

11  be enough to establish the sample size would need to be discussed, unless the Court denies the Daubert

12  motion and thus moots this issue.  Meta has contact information for those performers since the union list

13  has the performers' Instagram account information, which was provided to Meta years ago (starting in

14  2019) and Meta conducted analyses of all of the union accounts because Plaintiffs will testify that they

15  would check in with Meta personnel from time to time about the status of their analysis, and those

16  personnel never told Plaintiffs that an account did not exist/that they could not identify the person (and

17  Meta has failed to produce those analyses in discovery).  Also, Meta did not take their depositions or seek

18  any discovery from them.  The same rationale about the Daubert motion applies to the list of potential

19  competing platforms, since the expert testimony addresses the impact on them as a group and other factual

20  matters relevant to Plaintiffs' claims (as reflected in Plaintiffs' submissions and the expert testimony). As

21  to Meta's claim that Plaintiffs' experts would be a conduit for hearsay, Plaintiffs refer the Court to their

22  opposition to Meta's Daubert motion, which responds and explains why Plaintiffs' expert testimony is

23  admissible.

24       Finally, more generally, the vast majority of individuals on Plaintiffs' witness list are adult

25  performers who submitted complaints to their union regarding Meta's conduct that is the basis of this case:

26  their visibility on Instagram had been reduced or eliminated for anti-competitive reasons (the scope and

27  description of which are in other pending briefs). Their testimony (directly or as summarized through the

28  experts) will be relevant to prove among other things:

(1)     that Meta received notice of the harm it was causing from the communication of these witnesses' complaints to Meta;

(2)     that Meta had sufficient information from the complaints of other performers to be "substantially certain" that its actions were causing interference with contracts of the plaintiffs as well. See *Korea Supply Co. v. Lockheed Martin Corp.,* 63 P.3d 937, 949-50 (Cal. 2003) ("the tort of intentional interference with  prospective economic advantage does not require a plaintiff to plead that the defendant acted with the specific intent, or purpose, of disrupting the plaintiff's prospective economic advantage. Instead, , , , it is sufficient to plead that the defendant knew that the interference was certain or substantially certain to occur as a result of its action.");

(3)     that Meta's conduct was wrongful, an element of the tort of interference with prospective business relationships; *see id.* and

(4)     to demonstrate that the harm caused by Meta's acts were "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," which some courts have required to find liability under the unfairness prong of the UCL claim. *Drum v. San Fernando Valley Bar Association*, 182 Cal. App. 4th 247, 257 (2010).

### **Potential Witnesses From Meta**

Meta also complains about a table in which we list the names of Meta personnel on specific Meta documents.  We explained to Meta that almost all of them are included for evidentiary purposes.  We asked Meta if they would stipulate to the admissibility of the documents and treat the statements by Meta personnel in those documents as if the person were in present in court.  It seems to Plaintiffs that Meta was partially receptive to the approach, but some details/nuances had to be clarified.  It seemed to Plaintiffs that Meta wanted the option of impeaching their own people but to not allow Plaintiffs then to call the person.  Plaintiffs said that for any such Meta employees where Meta wants to factually attack their statements, then Plaintiffs needed to reserve the option of calling them, since we did not want to be prejudiced from a one-sided attack.  Plaintiffs said they were open to a compromise.  Plaintiffs' counsel thought we left it that Meta would reflect on this, and that Plaintiffs would also attempt to refine which Meta employees they would most likely want to call anyway.  One example Plaintiffs gave was Stephanie Otway, who was involved with the meetings/communications with Plaintiffs/APAG starting in

Spring/Summer 2019 about the inexplicable mass actioning. Meta acknowledges in a footnote above that Plaintiffs suggested a compromise to explore, and it sounds like more discussion may be productive. Plaintiffs are not saying that Meta needs to "stipulate[e] to the truth of the statements in question, without an opportunity for further explanation;" Plaintiffs say that they need to reserve the ability to call Meta's witnesses if Meta offers further explanation, so that Plaintiffs have the option to respond.

There is one person identified from Meta's documents where Plaintiffs apparently only have that person's first name, Mitch.  It is only one name, and he is one of Meta's personnel in a document that Meta produced, and we identified the MSJ exhibit number of the document where their name appears.  So Meta knows who the person is, and we provided the only information we had to identify that person at this point.

Finally, aside from the Daubert issue, many of the "potential" witnesses are more likely potential rebuttal witnesses, but could be witnesses in Plaintiffs' case in chief (depending on what is decided as to the pending motions and in the trial), and thus are disclosed in an abundance of caution.

**Evidence Preclusion and Adverse Inference Arguments, and Its Connection to Testimony of Meta's Counsel and Other Personnel Engaged with Evidence Preservation and Production**

Plaintiffs have since December 2023 made plain to Meta that they will argue for evidence preclusion and/or adverse inferences for its failures to produce documents and information.  While Meta's position is that they can stonewall and Plaintiffs need to move to compel, Plaintiffs' position is that Meta takes the risk of preclusion and adverse inferences from its stonewalling – which puts the incentives more aligned with the goals of the discovery.  And as Plaintiffs argued in their supplemental brief, Meta has now violated the Court's July 2, 2024 Order by failing to make the required certification that it made a "complete and accurate" production of "anything else possibly material to the summary judgment motion."

Fed. R. Civ. P. 37 provides that "where a party fails to obey an order to provide or permit discovery," a court may "prohibit[ ] the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(ii); *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (federal courts have authority under Rule 37(b)(2)(A) to sanction a party who fails to obey a discovery order). Courts have found evidence preclusion to be an appropriate sanction where a party fails to comply with a discovery order. *See Sas v. Sawabeh Information*

*Services*, 2015 WL 12711646, at *11 (C.D. Cal. Feb. 6, 2015) (finding it "entirely reasonable" to preclude defendants from presenting evidence on damages at trial which were not timely provided during discovery).

In determining whether to preclude introduction of evidence pursuant to FRCP 37, courts consider factors including "the ***nondisclosing party's explanation for [its] failure to disclose the evidence***." *Dey, L.P v. Ivax Pharm., Inc*., 233 F.R.D. 567, 571 (C.D.Cal.2005) (emphasis added).

When a party seeks an adverse inference instruction on the grounds that evidence was not produced in time for use at trial, that party must show: "(1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had 'a ***culpable state of mind***'; and (3) that the missing evidence is 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Lakes v. Bath & Body Works, LLC*, 2019 WL 2124523, at *3 (E.D. Cal. May 15, 2019) (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp*., 306 F.3d 99, 106 (2d Cir. 2002)) (emphasis added).

Based on the deposition testimony and declarations submitted during the supplemental discovery process, as more fully summarized in Plaintiffs' supplemental memos, at least one of the elements of each argument, and potentially more, are within the personal knowledge of certain of Meta's in-house and external counsel and their staff.

Accordingly, Plaintiffs' inclusion of Meta's attorneys on their September 13 supplement to the witness list is not improper.  Those attorneys have relevant factual information about the above point; employees at Meta have pointed to the attorneys for relevant information about the collection and production; and Plaintiffs have also established that they should be permitted access to fact/ordinary work product including from the internal investigation.  Under these circumstances, the Plaintiffs should be entitled to obtain testimony from the Meta attorneys on Plaintiffs' supplemental witness list.

Meta cites to *Shelton* as the governing standard, but the Ninth Circuit has noted that it "has never adopted the *Shelton* framework, although several district courts in this circuit have applied *Shelton* at various times," and "[e]ven so, Shelton is not universally accepted." *In re Allergan, Inc*., 2016 WL 5922717, at *3 (C.D. Cal. Sept. 23, 2016) However, even if the *Shelton* criteria applies, Plaintiffs have met them.

In *Shelton v. Am. Motors Corp.*, the Eighth Circuit established that a party seeking to depose opposing counsel must show that (1) the information cannot be obtained by any other means; (2) the information is relevant and non-privileged; and (3) the desired information is crucial to the preparation of the case. *Massachusetts Mutual Life Ins. Co. v. Cerf*, 177 F.R.D. 472, 479 (N.D. Cal. 1998) (citing *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)).

First, Plaintiffs cannot obtain the information sought by any other means. Meta's attorneys reviewed Plaintiffs documents requests, and unilaterally decided what to request from Meta in terms of documents. Plaintiffs have no other way to obtain information about this aspect of Meta's insufficient document collection, other than through the testimony of Meta's attorneys.  The same point applies to written discovery (and the third set of requests for production specifically requests documents relied on for responses to the interrogatories).  *See* Dep. Ex. 7 (RFP 83) ("DOCUMENTS that contain the facts and other information to support your responses to Plaintiffs' Interrogatories (i.e., the backup for your responses).").

Second, Plaintiffs are only seeking relevant, non-privileged information to establish evidence preclusion and/or adverse inferences based on failure to retain, search for, and produce documents.

Third, if, and to the extent, ordered by the Court, those attorneys can testify about aspects of the internal investigation.

Courts have permitted opposing counsel testimony where "the knowledge of [ ] counsel is unique and may be important in preparing a defense." *Creighton v. Allstate Northbrook Indemnity Co.*, 2021 WL 698203, at *3-4 (Jan. 25, 2021) (permitting defendant to re-serve a deposition notice on plaintiff's counsel for the limited purpose of eliciting testimony on the topic of delays in settling insurance claim). In this case, Meta's counsel has unique knowledge in how it interpreted Plaintiffs' discovery requests and what it decided to transmit to Meta employees responsible for the document collection. There is simply no other way to obtain this information. *See Dragon Jade Int'l., Ltd. v. Ultroid, LLC*, 2018 WL 11409669, at *4 (S.D. Cal. Nov. 29, 2018) (allowing deposition of opposing counsel who had unique knowledge of the factual circumstances surrounding negotiations and interactions that took place). Accordingly, even if *Shelton's* strict criteria applies, Plaintiffs satisfy them.

**Description of Testimony**

As to providing a more definite description of testimony, Meta did not raise that issue yet in the meet and confer communications.  If there is a need to provide more specificity we will, though the specifics will depend substantially on resolution of the pending motions.  Plaintiffs have already made their arguments in the extensive pending briefing, and all of that combined with the existing descriptions provide sufficient fair notice of what people will testify about, particularly of the witnesses Plaintiffs "expect to present" in their case in chief.  Meta's examples of objectionable descriptions appear in places to refer to descriptive section headings, before specifics are provided.  For example, Meta quotes Plaintiffs as saying "[a]ttached is a list of Meta personnel on Meta documents Plaintiffs attached or referred to in Plaintiffs' MSJ opposition papers" – as if that is the description -- but Meta ignores that after that topic sentence is a table of people that identifies the Meta documents from Plaintiffs' MSJ opposition in which the people are mentioned.  Following the table is a sub-heading "Subject of Information" for their testimony, that states the subject as being "the information related to the document referenced where their name appears and/or as that document/statement is used/referenced in Plaintiffs' prior summary judgment opposition" (akin to saying someone is going to testify about the matters in their declaration).  Meta is not entitled to a summary of the conclusions of their testimony such as would be required of an expert relaying their bottom line opinions, which is what Meta seems to be requiring. For all of Meta's complaints about Plaintiffs not taking the depositions of their staff during merits discovery, Meta did not take the depositions of any of the non-parties on Plaintiffs' disclosures, and did not subpoena them for documents.  Plaintiffs are happy to meet and confer further with Meta on this issue.  Many of these issues will be resolved as well when the Court rules on the pending motions, which will resolve whether there will be a trial and its parameters.

DATED: September 18, 2024

*/s/ Devin S. Anderson*

K. Winn Allen, P.C. (admitted *pro hac vice*)
Devin S. Anderson (admitted *pro hac vice*)
Mary Elizabeth Miller (admitted *pro hac vice*)
Yaffa A. Meeran (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 389-5000 / Fax: (202) 389-5200
Email: winn.allen@kirkland.com
Email: devin.anderson@kirkland.com
Email: mary.miller@kirkland.com
Email: yaffa.meeran@kirkland.com

Stephen Tensmeyer (SBN 312030)
KIRKLAND & ELLIS LLP
95 South State Street
Salt Lake City, UT 84111
Tel: (801) 877-8119 / Fax: (801) 877-8101
Email: stephen.tensmeyer@kirkland.com

Michael P. Esser (SBN 268634)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Tel: (415) 439-1400 / Fax: (415) 439-1500
Email: michael.esser@kirkland.com

*Attorneys for Defendants Instagram LLC,
Facebook Operations, LLC, and Meta
Platforms, Inc.*

DATED: September 18, 2024

*/s/ David Azar*

David Azar (SBN 218319)
MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, PLLC
280 South Beverly Dr., Suite PH
Beverly Hills, CA 90212
Tel: (212) 594-5300 / Fax: (212) 868-1229
dazar@milberg.com

*Attorney for Plaintiffs Dawn Dangaard, Kelly
Gilbert, and Jennifer Allbaugh*

## SIGNATURE ATTESTATION

I, Devin S. Anderson, attest that all signatories listed above, on whose behalf the filing is submitted, concur in the filing's content and have authorized the e-filing of the foregoing document.

*/s/ Devin S. Anderson*
Devin S. Anderson

**CERTIFICATE OF SERVICE**

I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all persons registered for ECF.  All copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-1 have been so served.

*/s/ Devin S. Anderson*
Devin S. Anderson
